1

```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION


  ERICH SPECHT, et al.,           )
                                  )
            Plaintiffs,           )
                                  )
       vs.                        )  No. 09 C 2572
                                  )
  GOOGLE, INC., et al.,           )  Chicago, Illinois
                                  )  May 7, 2009
            Defendants.           )  9:30 o'clock a.m.


            TRANSCRIPT OF PROCEEDINGS - MOTION
        BEFORE THE HONORABLE HARRY D. LEINENWEBER

APPEARANCES:


  For the Plaintiffs:      LAW OFFICE OF MARTIN J. MURPHY
                           MR. MARTIN J. MURPHY
                           2811 RFD
                           Long Grove, Illinois 60047
                           847-540-8899


  For the Defendant,       GREENBERG TRAURIG, LLP
  Google, Inc.:            MR. JEFFREY P. DUNNING
                           MR. HERBERT H. FINN
                           MR. RICHARD D. HARRIS
                           77 West Wacker Drive
                           Chicago, Illinois 60601
                           312-456-8400


  For the Defendant,       MR. JOHN CYRLUK
  Motorola, Inc.:
```

1 | Court Reporter:                     FEDERAL OFFICIAL COURT REPORTER
                                        MS. KRISTA BURGESON
2                                       219 South Dearborn Street
                                        Chicago, Illinois 60604
3                                       312-435-5567
                                        Krista_Burgeson@ilnd.uscourts.gov

1  THE CLERK:  09 C 2572, Specht versus Google.
2  MR. MURPHY:  Good morning, your Honor.  Martin Murphy
3  on behalf of plaintiffs.
4  MR. HARRIS:  Good morning, your Honor.  Richard
5  Harris, H-a-r-r-i-s, Herb Finn, F-i-n-n, and Jeff Dunning,
6  D-u-n-n-i-n-g, on behalf of defendant, Google, Inc.
7  MR. FINN:  Good morning, your Honor.
8  MR. DUNNING:  Good morning.
9  MR. HARRIS:  We filed our appearance this morning.
10  We understand several of the 47 or 48 defendants have
11  not yet been served.  Others have not been served with this
12  motion and the like.  We do contemplate and we do anticipate
13  that we will be filing appearances for a good number of those
14  defendants in the near future.
15  We are hear though today solely and exclusively on
16  behalf of Google, Inc.
17  MR. CYRLUK:  Good morning, your Honor.  John Cyrluk,
18  C-y-r-l-u-k, on behalf of Motorola, Inc.
19  I have not entered my appearance yet.  I was formally
20  retained this morning.  I was contacted last night around 9:20
21  to be retained by Motorola.  I will be entering my appearance
22  on behalf of Motorola.
23  THE COURT:  Is that everybody?  Is everybody
24  accounted for?  I think I only have four names, and there are
25  five of you.

1  MR. HARRIS:  I gave three names.
2  THE COURT:  I have Murphy, Harris, Dunning, and
3  Cyrluk.
4  MR. FINN:  Finn, Herbert Finn, your Honor, F-i-n-n.
5  THE COURT:  You are the missing party.
6  MR. HARRIS:  The missing link.
7  THE COURT:  All right.
8  This is a motion for a TRO brought by Mr. Specht.
9  MR. MURPHY:  That is correct, your Honor.
10  THE COURT:  This morning I was handed, and I don't
11  see the person here, a proposed motion to intervene by a
12  person by the name of Kenneth Robblee.  I don't see him in
13  court.  He is apparently from the State of Washington, Tacoma,
14  or at least that is where his current lawyer lives, and that
15  is according to his proposed motion.
16  Has anybody seen this?
17  MR. MURPHY:  No, your Honor.
18  MR. HARRIS:  We have not.
19  MR. FINN:  No, your Honor.
20  THE COURT:  Well, he claims to have entered into
21  negotiations with Mr. Specht to buy the Android Data Company,
22  but it fell through.  I am not sure if -- obviously it is not
23  in order, the motion to intervene as an additional plaintiff,
24  it is not in order.
25  Was this filed electronically, Wanda?

1           THE CLERK: Yes, they filed it electronically.
2           THE COURT: So it should be available to everybody
3 then?
4           THE CLERK: Actually, he just put it through this
5 morning.
6           MR. MURPHY: I haven't seen it this morning, your
7 Honor. If I can look at it?
8           THE COURT: You might want to take a look at it.
9           MR. MURPHY: Okay.
10          MR. HARRIS: Very well, your Honor.
11     Is your Honor going to want some kind of position or
12 response this morning, because we will need to consider this
13 and we will need an opportunity to respond.
14          THE COURT: I don't know. I was presented with it
15 last night. I read through what he wrote.
16     How emergent is the emergency?
17          MR. MURPHY: I think it is emergent, however, your
18 Honor, there is one issue where I will stipulate that we have
19 weaknesses, which is basically the balance of harms issue,
20 because Google, obviously being what Google is, and all the
21 parties, they have expended a tremendous amount of money on
22 this product.
23     So, I think although it is basically a reverse
24 confusion case, I do concede the fact that that may be an
25 issue with respect to the four-prong test on the injunction.

1          So, your Honor, I would look for guidance on which
2    way the Court is leaning on that issue.
3          I think that the rest is clear cut.  We have a valid
4    trademark.  We have --
5          THE COURT:  Well, unless Google concedes, I would
6    assume that it would take some time to -- at least to obtain a
7    response from them.
8          That is what I am inquiring, I guess.
9          MR. MURPHY:  Well, your Honor, I did put in there an
10   alternative, which is basically they do have posted on their
11   web site a statement to the effect that Android is their
12   trademark, and I have asked that it at least be disclosed that
13   Android is the subject of litigation, so they don't claim
14   ownership to something we have got ownership of, we have prima
15   fascia ownership by virtue of the fact that we are on the
16   register.
17         MR. HARRIS:  Your Honor, that would constitute parts
18   of a grant of a temporary restraining order, the imposition of
19   some acknowledgment that simply is not true here.
20         And while I don't intend to give counsel guidance on,
21   you know, Google's position on irreparable harm, there are
22   other prongs of the four-prong test that once the Court hears
23   and sees the documentation in this case, this is a clear case
24   of four to five years ago a mark being abandoned by an
25   individual who simply wasn't in business.  So right off the

1 bat we are getting into the likelihood of success on the
2 merits.
3 　　　　We have 18 months of use with dozens of major trade
4 publications identifying repeatedly the software operating
5 platform, operating system nature, of the particular products
6 and software involved here.
7 　　　　We concede, as well, that plaintiff has a significant
8 problem with irreparable harm.
9 　　　　Now, if I can make a suggestion to the Court, because
10 none of us --
11 　　　　THE COURT: I am always looking for suggestions.
12 　　　　MR. HARRIS: If I can, your Honor, maybe this would
13 serve as a platform for enabling Google as well as most, if
14 not all, of the other defendants to come back to the Court.
15 　　　　We don't believe that there is an emergency here, and
16 we don't believe that potentially changing notice criteria on
17 the web site of one of America's largest companies is really
18 the kind of concession that is suggested by what this case
19 really involves.
20 　　　　Can we suggest, your Honor, that instead of even
21 addressing the TRO here today that we put that away, that we
22 go past that, and we look at plaintiff's desire to have a
23 preliminary injunction, which would enable the defendants to
24 be able to respond, be able to show the Court the
25 documentation.

1    I can tell the Court right now, Judge, we are
2 prepared to elicit testimony today if you want an evidentiary
3 hearing, we are prepared to go through the documentation with
4 the Court, but then, again, we lose the advantage of having
5 any briefing opportunity here.
6    So, if we can put it off 60, 90 days.  Frankly, this
7 individual is -- so far as we know, is not really selling the
8 kinds of things or doing the kinds of things that are claimed,
9 especially since most of these things were resurrected within
10 days of his filing of the complaint in an effort to make it
11 appear as though he is in this business.
12    But without going into that yet, if we can have a
13 date, a return date 60 to 90 days out, with a briefing
14 schedule.  I believe the defendants would really appreciate
15 the opportunity to have a briefing opportunity to show you the
16 documents and then come before the Court.
17    We can work out, I am sure counsel and I, an
18 appropriate date for a hearing, and then we can entertain the
19 Court's thoughts on whether it wants an evidentiary hearing or
20 pure argument.
21    I think that would be more relevant, more reasonable,
22 in view of the real circumstances behind this case.
23    MR. MURPHY:  Your Honor, we do have -- we have a
24 prima fascia case.  We have a trademark, it is registered, and
25 it is in good standing.

1    In their documents, their applications for the
2 trademark, they acknowledged my client. They acknowledged
3 that there was confusion.
4    We have the trademark, Android Data. The term data
5 was disclaimed. Basically we have Android for the use of
6 E-commerce software. They are trying to trademark Android
7 basically for software.
8    It is the same product. It is basically for
9 E-commerce. It is to be used -- they call theirs a mobile --
10 I think it is a mobile phone or platform, something along
11 those lines, used for basically computer software to perform
12 applications on a phone.
13    So, I think that we need to preserve our trademark
14 rights. We own the trademark, we have the rights, and that is
15 clear.
16    They have never sought to have our trademark
17 canceled. They could have easily gone to the Trademark Office
18 and said, This trademark is not in existence. Instead, they
19 chose to sit by the sidelines and say, Well, you know what?
20 We think it is abandoned, and we will go on that assumption.
21 So, never having contacted my client they are going off
22 circumstantial evidence that they deem appropriate.
23    THE COURT: Well, from what you told me, though, it
24 would seem to indicate to me that you would probably not be
25 entitled to a TRO if there is a substantial question of

1  balance of harm. That implies a rather lengthy, I think,
2  proceeding, at least evidentiary proceeding, that I suppose
3  you could scratch it together.
4          But this is a reverse --
5          MR. MURPHY: Reverse confusion.
6          THE COURT: (Continuing) -- reverse confusion, yes.
7          MR. MURPHY: And we are not saying that people are
8  going to think that Google is our product.
9          MR. HARRIS: Your Honor, plaintiff has premised most
10 of its case on the fact that during the prosecution of
11 Google's trademark, Google's trademark application was blocked
12 because there was a registration there that stays in effect,
13 regardless of whether an applicant or a registrant is using
14 the mark.
15         In fact, the registrant of that mark stopped using
16 the mark not for three years, which is the statutory term for
17 abandonment, but rather for five years, and that was confirmed
18 through a lot of effort and a lot of investigation to make
19 sure that everybody's rights were respected.
20         In reality, what happened is upon taking a good look
21 and possibly talking to some people, including the gentleman
22 who I believe is trying to intervene, because his name
23 actually comes up at one point in these proceedings, your
24 Honor, apparently someone saw an opportunity here, and all of
25 a sudden the old company was reapplied for, a new web site was

1 sought, a new screen was put on display, all within four days
2 of the filing of the complaint.
3     We have abandonment, and certainly no one is
4 contesting that there is not a fact as to whether there is a
5 trademark registration and whether that blocked the
6 registrability of Google's trademark application at the PTO.
7 But that is the be all and end all of plaintiff's case.
8     There is no showing of a likelihood of confusion.
9 We have got a reference in there to the fact that purportedly
10 the plaintiff only found out that it was associated with
11 software literally days before he filed the complaint, when
12 for 18 months this was the biggest roll out program,
13 particularly of a software product, within the last two years.
14     Day after day, week after week, notifications, every
15 trade magazine describing this operating system, this
16 software, so there is absolutely no excuse.
17     What we are looking at, potentially, in the balance
18 of hardship, we are looking at somewhere between, it is
19 estimated, $400 to $650, $700 million dollars worth of product
20 and systems that are out there utilizing this protocol. That
21 is for balance of hardships.
22     For irreparable harm we have 18 months of watching
23 this particular mark rolled out, utilized, adopted, and
24 partnered up by 47 other companies.
25     And we have the fact that, with regard to the

likelihood of success, that for five years, not three years, or three and a quarter years, but for five years, the mark simply was not used, it was out of business. It simply was gone, and it had been clearly abandoned.

So, right off the bat we have three prongs.

When we address the fourth prong, where the public interest lies, I believe the public interest lies with maintaining the status quo here and letting the parties fight out whether or not someone had a mark. Clearly, it is not the fodder for a TRO.

Finally, with regard to a bond that would have to be filed in this case to cover the balance of hardship, so to speak, we are looking at something on the order of a tarp check that would be somewhere in the realm of what would be needed to cover the potential harm to Google, and the 46, 47 other defendants who make up probably 15 percent of American commerce.

MR. MURPHY: Your Honor, of course I object to their categorizing my client's position or my client's idea or the argument of abandonment.

I am at a disadvantage. I don't have anything in writing, no response or anything from them. So I can't really respond to statements he is making.

THE COURT: I am looking at -- well, say they made an offer that two, three months down the road, you have a hearing

1  on a full-scale preliminary injunction, which if you win, you
2  could end up with a lot of money.
3       I have some history with these cases.  Do you
4  remember the First Aid case?  It was somewhat similar, as far
5  as alleged abandonment of a mark and so forth.
6       I certainly am not taking this as an open and shut
7  case for either side.  There is, however, the claim that there
8  was abandonment, which is kind of fact intensive, and I would
9  assume that you need some discovery.
10      MR. MURPHY:  Yes, sure.
11      I mean, we may argue unclean hands, and other things.
12 We can go back and forth with out positions as to what each
13 side is doing.
14      THE COURT:  Why don't we do this:
15      Why don't you meet and confer and come back in about
16 two weeks and we will set some kind of a schedule then, you
17 know, and if plaintiff is insistent upon a TRO, then I guess
18 he is entitled to one, or to apply for one.
19      MR. HARRIS:  Thank you, your Honor.
20      THE COURT:  I am not ruling one way or the other.
21      MR. MURPHY:  I understand.
22      MR. HARRIS:  Yes.
23      MR. MURPHY:  This is obviously David and Goliath.
24      THE COURT:  Then we can get into discovery and --
25 well, it seems to me that there are a lot of factual matters

1  here.
2  So, how does that sound, two weeks to meet and
3  confer, and then suggest a procedure, discovery or -- or if
4  you are bound and determined for a TRO, we will give it to
5  you.
6  MR. MURPHY:  That sounds fine.
7  MR. HARRIS:  We can do that.
8  Thank you, Judge.  We appreciate it.
9  MR. MURPHY:  Yes.
10  THE CLERK:  May 21st at 9:00.
11  THE COURT:  We can't do it next week because I will
12  not be here.
13  MR. MURPHY:  Thank you, your Honor.
14  MR. FINN:  And with respect to the motion to
15  intervene --
16  THE COURT:  I will deny it because it is clearly out
17  of order.
18  MR. FINN:  Thank you.
19  MR. HARRIS:  Thank you, Judge.  We appreciate it.
20  THE COURT:  Did you keep that?
21  MR. MURPHY:  Yes, and we will make copies.
22  THE COURT:  All right.
23  He is known to everybody, this person?
24  MR. MURPHY:  Yes, your Honor, he is.
25  THE COURT:  It is a rather folksy motion.

1  MR. HARRIS: He is -- he is an interesting guy, let's
2  put it that way.
3  MR. MURPHY: Yes, yes.
4  He has left a number of messages on my client's
5  answering machine wanting to basically come in.
6  THE COURT: Obviously he is not entitled to unless
7  the plaintiff --
8  MR. MURPHY: And certainly we don't want him in the
9  case. He has no business in the case.
10  THE COURT: Very good.
11  MR. MURPHY: Or anywhere.
12  MR. HARRIS: Thank you, your Honor.
13  MR. FINN: Thank you.
14  MR. DUNNING: Thank you.
15  MR. CYRLUK: Thank you, your Honor.
16  MR. MURPHY: Thank you.
17  Do you want this or can I make copies of it?
18  THE CLERK: You can keep that. I made a copy.
19  MR. MURPHY: Thank you.
20  (Proceedings concluded.)
21
22
23
24
25

1 <u>C E R T I F I C A T E</u>

2

3 I certify that the foregoing is a correct transcript
4 from the record of proceedings in the above-entitled matter.

5

6 <u>/s/Krista Burgeson, CSR, RMR, CRR</u>   <u>May 7, 2009</u>
  Federal Official Court Reporter        Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25