## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ERICH SPECHT, an individual, and  doing business as ANDROID DATA CORPORATION, and THE ANDROID'S DUNGEON INCORPORATED, Illinois corporations, | ) ) ) ) | **FIRST AMENDED COMPLAINT** |
| Plaintiffs | ) ) | |
| v. | ) ) | NO.  **09 CV 2572** |
| | ) | JUDGE LEINENWEBER |
| GOOGLE INC., a Delaware corporation; Android, Inc., a Delaware corporation; Andy Rubin, Nick Sears, Rich Miner, and Chris White, THE OPEN HANDSET ALLIANCE; China Mobile Communications Corporation, a foreign corporation; KDDI CORPORATION, a foreign corporation;  NTT DoCoMo, Inc., a foreign corporation; SOFTBANK MOBILE Corp., a foreign corporation; Sprint Nextel Corporation, a Kansas corporation; T-Mobile International AG, a foreign corporation; Telecom Italia S.P.A., a foreign corporation; Telefónica S.A., a foreign corporation; Vodafone Group Services Ltd, a foreign corp.; AKM Semiconductor, Inc., a California corporation; Audience, Inc., a California corporation; ARM Ltd, a foreign corporation; Atheros Communications, Inc., a California corporation; Broadcom Corporation, a California corporation; ST-Ericsson, Inc., a Delaware corporation; Intel Corporation, a Delaware corporation; Marvell Semiconductor, Inc., a California corporation; NVIDIA Corporation, a California corporation; Qualcomm Incorporated, a Delaware corporation; SiRF Technology Holdings, Inc., a Delaware corporation; Synaptics Incorporated., a Delaware corporation; Texas Instruments Incorporated, a Delaware corporation; ASUSTeK Computer Inc, a foreign corporation.; HTC Corporation, a foreign corporation; Huawei Technologies, Co., Ltd, a foreign corporation; LG Electronics, Inc., a Delaware corporation; Motorola, Inc., a Delaware corporation; Samsung Electronics America, Inc., a New York corporation; Sony Ericsson Mobile Communications, AB, a foreign corporation; Toshiba America, Inc., a Delaware corporation, Ascender Corp., an Illinois corporation ; eBay Inc., a Delaware corporation; LivingImage LTD., a | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MAGISTRATE JUDGE COLE **DEMAND FOR JURY TRIAL** |

foreign corporation;  Myriad Group AG, a foreign                )
corporation; Nuance Communications,  Inc., a Delaware           )
corporation; OMRON SOFTWARE Co, Ltd., a foreign                 )
corporation  PacketVideo Corporation, a Delaware                )
corporation; SkyPop Corporation, a Delaware corporation;  )
Sonic Network, Inc., an Illinois corporation; Aplix             )
Corporation, a foreign corporation; Borqs Beijing Ltd, a        )
foreign corporation; Noser Engineering AG, a foreign            )
corporation; TAT - The Astonishing Tribe AB, a foreign          )
corporation; Teleca AB, a foreign corporation;                  )
Wind River Systems, Inc., a Delaware corporation;               )
Garmin International, Inc., a Kansas Corporation,               )
                                                                )
                                          Defendants            )

## FIRST AMENDED COMPLAINT
## FOR TRADEMARK INFRINGEMENT

Plaintiffs ERICH SPECHT ("Erich"), ANDROID DATA CORPORATION, an Illinois

corporation ("Android Data") and THE ANDROID'S DUNGEON INCORPORATED,

an Illinois corporation ("Dungeon") (collectively referred to as "Plaintiffs"), by and

through their attorney, as and for their Complaint against Defendants, Andy Rubin,  Nick

Sears, Rich Miner; and Chris White, individually and Google Inc., Android, Inc., the

Open Handset Alliance, and  the Open Handset Alliance Members: China Mobile

Communications Corporation; KDDI CORPORATION;  NTT DoCoMo, Inc.;

SOFTBANK MOBILE Corp.; Sprint Nextel Corporation; T-Mobile International AG;

Telecom Italia; Telefónica S.A,; Vodafone Group Ltd; AKM Semiconductor, Inc.;

Audience, Inc.; ARM Ltd; Atheros Communications, Inc.; Broadcom Corporation; ST-

Ericsson, Inc.; Intel Corporation; Marvell Semiconductor, Inc.; NVIDIA Corporation,

Qualcomm Incorporated; SiRF Technology Holdings, Inc.; Synaptics Incorporated;

Texas Instruments Incorporated; ASUSTeK Computer Inc..; HTC Corporation; Huawei

Technologies, Co., Ltd; LG Electronics, Inc.; Motorola, Inc.; Samsung Electronics America, Inc.; Sony Ericsson Mobile Communications, AB; Toshiba America, Inc.; Ascender Corp.; eBay Inc; LivingImage LTD;  Myriad Group AG; Nuance Communications,  Inc.; OMRON SOFTWARE Co, Ltd.;  PacketVideo Corporation; SkyPop Corporation; Sonic Network, Inc.; Aplix Corporation; Borqs Beijing Ltd; Noser Engineering AG; TAT - The Astonishing Tribe AB; Teleca AB; Wind River Systems, Inc.; and Garmin International, Inc., joint and severally; allege as follows:

## I. THE PARTIES

1.    Plaintiff Erich Specht is a resident of the village of Palatine, Illinois.  Plaintiff corporations are  Illinois domestic corporations organized and existing under the laws of the State of Illinois and having a  principal place of business in the village of Palatine, Illinois.

2.    Defendant, Google, Inc. ("Google"), is a Delaware corporation registered to do business as a foreign corporation in Illinois.

3.    Open Handset Alliance ("OHA") is an "alliance" of the Open Handset Alliance Members. Defendants, the Open Handset Alliance Members, set forth on Plaintiff's Exhibit K, consist of an "Alliance" of mobile operators, software companies, commercialization companies, semi-conductor companies and handset manufacturers with offices all over the world and with headquarters in Mountain View, California; Bonn Germany; Taoyuan, Taiwan; San Diego, California, and Schaumburg, Illinois.

4.      Defendant, Android, Inc, a Delaware corporation with its office at Google's headquarters in Mountain View, California, is owned by Google and listed as a subsidiary of Google on it's financial statements.

5.      Defendants Andy Rubin, Rich Miner, Nick Sears and Chris White are individuals who reside in California, co-founded Android, Inc., and are or were employed by Google to work on the project which is the subject of this litigation.

## II. JURISDICTION AND VENUE

6.      This is a civil action alleging Trademark Infringement, Unfair Competition, and False Description arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) (Trademark Infringement) and 1125(a) (Unfair Competition) as well as a violation of the Illinois Deceptive Practices Act  (815 ILCS 510/2).

7.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121.  The court also has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

8.      This Court has personal jurisdiction over defendants because the defendants have transacted business in this state; Google is a foreign corporation registered to do business in Illinois with the Illinois Secretary of State; and the Open Handset Alliance maintains a headquarter in Schaumburg, Illinois.  The Court also has jurisdiction over the defendants pursuant to Illinois Long Arm Statute 735 ILCS 5/2-209(a)(2).

9.      Venue is proper in this district under 28 U.S.C. §1391(b) and ©.

## III. FACTUAL BACKGROUND

10.    Plaintiff, Android Data Corporation is an Illinois corporation in good standing.  It was incorporated on December 30, 1998 by Erich Specht its sole officer, director and shareholder.

11.    Plaintiff, The Android's Dungeon Incorporated is an Illinois corporation in good standing.  It was incorporated on March 5, 2001 by Erich Specht, its sole shareholder.

12.    Plaintiff, Erich Specht is a software developer and internet application service provider.

13.    Erich has and continues to develop software and offer computer software and hardware related products and services under the Android Data® mark. Plaintiffs  hold copyrights filed with the U.S. Copyright Office on Android Server and Android Data Web Editor, which are earlier versions of the of the Android Data suite as well as Android Data - Version 5, the current rewrite of the software product line.  The Android Data software suite enables the remote administration of web sites including secure data transfer, management and categorization of products, image processing, online surveys, email campaigns, document transformation, and the like.  Computer hardware and software services include web page designs, custom software application development, and consulting on software and hardware issues.

14.    Android Data software implements advanced caching algorithms that allow for greater efficiency of web and database servers.

15.    Beginning in 1999, Android Data software was intended to and has been used in commerce by customers who transact hundreds of millions of dollars in world

wide transactions including tens of millions in e-commerce over the world wide web using Plaintiff's software.

16.    Plaintiff chose the name Android Data to communicate the seamless, almost robotic-like, bi-directional communication of data between a client and a data center in a remote location.

17.    Plaintiff is and has been further developing the original Android Data software suite product as well as preparing to release additional products in the near future under the Android Data product mark.

18.    On June 4, 2000, Plaintiff, Erich Specht, under the name Android Data Corporation, filed an application with the United States Patent and Trademark Office ("PTO") for the mark "Android Data" (Serial number 78011167). A copy of the application is attached as Plaintiffs' Exhibit A.

19.    On October 22, 2002 The PTO granted Plaintiffs Registration of the mark "Android Data", Registration number 2,639,556. Registration No. 2,639,556 is *prima facie* evidence of the validity and ownership of, and is constructive notice of ownership of, the mark Android Data® as provided by §§ 7(b) and 22 of the Federal Trademark Act, 15 U.S.C. §§ 1057(b) and 1072. As a condition of approval, PTO required that the following language be inserted into the application "No claim is made to the exclusive right to use "Data," apart from the mark as shown." Thus the dominant word in the mark was "ANDROID" with Data being a descriptive or non-dominant word. The purpose of the Trademark was for computer e-commerce software to allow users to perform electronic business transactions via a global computer network, in International Class 9

(U.S. CLS. 21, 23,26,36, and 38).  A copy of the Trademark Principal Register is attached as Plaintiffs' Exhibit B.

20.     On or about December 1, 2003, thirteen months after Plaintiff's Android Data mark was registered, defendants incorporated Android, Inc., a start-up company based in Palo Alto, California, for the purpose of developing computer software for mobile phone devices. Android, Inc was incorporated as a Delaware corporation, and, in February 2004, it was registered to do business with the California Secretary of State's office.

21.     In or about July, 2005 Google acquired Android, Inc. from its co-founders Andy Rubin, Rich Miner, Nick Sears, and Chris White.  After Android, Inc. was acquired by Google,  the four co-founders went to work for Google.

22.     As part of its purchase of Android, Inc., based upon information and belief, Google purchased some of the assets it is using today for it's Android product including the infringing trademark, software source code,  goodwill, domain name, and the other assets of Android, Inc..

23.     Android, Inc. is currently registered as a Delaware corporation in good standing. It's California registration is listed by the secretary of state as forfeited.

24      Android, Inc. is listed as a subsidiary corporation of Google on Google's financial statements.

25.     On October 31, 2007 defendant Google filed an application with the PTO for the mark "Android,"  Serial number 77318565.  The goods and services identified under the application were International Class 9 (hardware; software).  The stated Intent to Use was listed as: "The applicant has a bona fide intention to use

through the applicant's related company or licensee the mark in commerce or in connection with the identified goods and/or services." Thus, Google was seeking the exclusive right to use and license the Android mark in commerce or in connection with any software or hardware use or product. By definition, this use would include Plaintiffs' permitted use of the Android mark. A copy of Google's application is attached as Plaintiffs Exhibit C.

26.    On November 5, 2007  Defendants Google and the Open Handset Alliance ("OHA"),  a partnership or business alliance of 47 firms led by Google, T-Mobile, HTC, Qualcomm and Motorola, made their product launch under Plaintiffs' Android mark.

27.    Wikipedia, the free online encyclopedia, reports that "Android is the brain child of Google and the flagship software of the OHA. is based on an open source license and will compete against other mobile platforms from Apple Inc., Microsoft, Nokia, Palm, Research In Motion and Symbia .".

28.    The OHA initially consisted of  34 firms including mobile operators, software companies, commercialization companies, semiconductor companies, and handset manufacturers.

29.    On November 5, 2007, The original members of the OHA were announced in Google's press release as: China Mobile Communications Corporation; KDDI Corporation; NTT DoCoMo,  Inc.;  Sprint Nextel;  T-Mobile; Telecom Italia; Softbank Mobile Corp.; Telefónica; Ascender Corp.; eBay Inc.; Google Inc.; LivingImage Ltd.;  Nuance Communications, Inc.;  PacketVideo; SkyPop; SONiVOX;  Aplix Corporation;, Noser Engineering Inc.; TAT The Astonishing

Tribe AB, Wind River; Audience,  Broadcom Corporation; Intel Corporation;

Marvell Semiconductors, Inc.;  Nvidia Corporation, Qualcomm, Inc. SiRF

Technology Holdings, Inc.; Synaptics, Inc.;  Texas Instruments Incorporated;

HTC Corporation;  LG Electronics, Inc.;  Motorola, Inc.;  Samsung Electronics;

Vodafone,  Ericsson, and Borqs

30.    On February 14, 2008 the PTO issued it's Office Action letter refusing Google's

registration under Section 2(d) to use the "Android" mark citing likelihood of

confusion with Plaintiffs' mark.  A copy of the refusal is attached as Plaintiff's

Exhibit D.

31.    On April 2, 2008, roughly 6 weeks after the PTO refused their application for the

Android mark, the OHA presented "Android" at the World Congress in

Barcelona. (OHA website 4/23/09).

32.    On August 14, 2008, Google filed it's response to Office Action.  In it's response

Google admitted  that:  "Android was an arbitrary term we chose as a brand for

our products."  A copy of the response is attached as Plaintiff's Exhibit E.

33.    On August 20, 2008, the PTO issued it's Office Action making the refusal to deny

Google's application final.  A copy of the final action is attached as Plaintiff's

Exhibit F.

34.    On September 23, 2008, seven months after their application for the Android

mark was refused and one month after the final action letter was issued, Google

and OHA issued their press release announcing "Android 1.0 SDK" now

available.  (OHA website 4/23/09).

35.    On October 21, 2008, roughly eight months after their application was refused, Google and OHA released portions of the source code for their infringing Android software to developers.

36.    By releasing the source code, the defendants encouraged and gave developers the ability to freely use the infringing Android operating system to create infringing Android applications for use with the defendants infringing products.

37.    On November 20, 2008 Google filed it's Request for Reconsideration after Final Action requesting reconsideration or in the alternative that it's application examination be suspended.  A copy of the request is attached as Plaintiff's Exhibit G.

38.    On November 20, 2008 Google also filed an Exparte Notice of Appeal.  A copy of the notice is attached as Plaintiff's Exhibit H.

39.    On November 21, 2008, the PTO's  Trademark Trial and Appeal Board issued an order suspending Google's appeal pending it's request for reconsideration.  A copy of the order is attached as Plaintiff's Exhibit I.

40.    On November 24, 2008, per Google's request, the PTO issued its Notice of Suspension.  A copy of the Notice is attached as Plaintiff's Exhibit J.

41.    Despite the fact that their registration was refused, and despite the fact that they requested that their application be suspended, neither Google nor any of the defendants have taken any action to curtail their infringing activities.

42.     Beginning on November 5, 2007 and continuing to the present, Defendants Google, OHA,  and it's members, without authority, have been issuing press releases for their products and services under the infringing Android mark.

-10-

43.    The defendants have created and control an extensive and integrated worldwide network of companies that pool resources to enable them to market various types of infringing products and services.  Based upon information and belief, defendants control over 15% (fifteen percent) of all American commerce.

44.    There are millions of products on the market that specifically say "Powered by Android" or mention the infringing Android mark.

45.    Defendants have sold over $600 million dollars worth of equipment bearing the infringing Android mark.

46.    Defendants have released several versions of its infringing Android software to hundreds of thousands of developers.

47.    On December 5, 2008, less than a month after voluntarily suspending it's Trademark application examination, OHA issued a press release announcing Android 2.0 SDK release.   (OHA website 4/23/09).

48.    On December 9, 2008 OHA announced the addition of its newest members: Omron Software Co, Ltd.;  Teleca AB; AKM Semiconductor, Inc.;  ARM; Atheros Communications; ASUSTek Computer, Inc.; Garmin International, Inc.; Huawei Technologies; Sony Ericsson and Toshiba.  See Plaintiffs' Exhibit K for a full listing of the OHA members and description.

49.    Based upon information and belief, Google and the OHA members have been and are continuing to use Plaintiffs' Android mark in advertising,  promotional materials and press releases without disclosing Plaintiffs ownership and without Plaintiffs permission.

50.     Google and its OHA members list "Android" as a trademark and/or registered trademark of Google or the OHA.

51.     On April 29, 2009, Plaintiff received a Notice of Acceptance of § 8 Declaration and informing them that registration remains in force.  A copy of the notice is attached as Plaintiff's exhibit L.

52.     Having continuously used Android Data in interstate commerce and having filed the requisite registration maintenance documents with the PTO, Plaintiffs Android Data mark is in "Live" standing with the PTO and is incontestible as provided by § 15 of the Federal Trademark Act, 15 U.S.C. § 1065.

53.     At no time prior to Plaintiffs filing this infringement action have the defendants sought to have Plaintiff's Registration cancelled.

54.     The defendant's have never asked Plaintiffs whether they intended  to continue using the Android Data mark.

55.     According to documents filed with the PTO, Google continued using the Android mark after it's registration was refused because it wrongly believed that Plaintiffs could not file a § 8 Declaration.

56.     Prior to filing it's trademark application, Google did not conduct a thorough trademark search of the Android mark

57.     Prior to joining the OHA, the OHA members did not conduct a thorough trademark search of the Android mark.

58.     Prior to incorporating Android, Inc, the defendants did not conduct a thorough search of the Android mark.

59.    Google and the OHA members have never requested or received Plaintiffs permission to use the "Android" or "Android Data" mark.

60.    Fully aware of Plaintiffs rights to the Android mark, defendants have and are intentionally, openly, notoriously, and without Plaintiff's authority exercising full rights and privileges to the use of Plaintiffs' Android mark.

61.    Beginning on November 12, 2007 and continuing through June 3, 2009, Google and the OHA members have used Plaintiffs' Android mark in their press releases and promotional materials and web sites without authority to do so.

62.    The defendants have known that their application to register Android with the PTO was refused on the basis of Plaintiffs Android Data registration since at least February 14, 2008.

63.    Google and the OHA members use of the Android mark in its product promotion and advertising on print and on the internet constitutes the use in commerce of a colorable imitation, copy and reproduction of Plaintiff's Trademark.

64.    For the reasons set forth above and in the PTO's refusal to register Android by defendants, the use of the Android mark is deceptive and confusingly similar and likely to cause confusion, mistake, or deception in the minds of the public.

65.    Defendants infringement constitutes a willful and malicious violation of Plaintiff's Trademark rights.

66.    Upon learning of Defendant's actions, Plaintiffs have moved as expeditiously as possible to protect their mark.

**III**

**COMPLAINT FOR TRADEMARK INFRINGEMENT,**

## UNDER LANHAM ACT § 3231.

Plaintiffs repeat and hereby incorporate herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 66.

67.     The marks are identical.  The PTO found that the Google's proposed  mark Android was identical to the  dominant portion of the Plaintiff's registered mark ANDROID in sound, appearance, and commercial impression.

68.     The Android mark is arbitrary, and, therefore, very distinctive.

69.     The contemporaneous use by both parties of the Android mark in commerce is likely to cause confusion among consuming public into believing that the goods they identify come from the same source.

70      Both marks, Android and Android Data, may be used to identify computer hardware, software and related services

71.     The hardware and software products and services may be used in e-commerce and marketed by all parties in commercial settings and over the World Wide Web.

72.     To enable use of the Android applications on mobile phone devices, the subscriber will need to have a Data plan with their carrier.

73.     Google's search engine accounts for approximately 75% of the computer internet searches;  Google controls how information is ranked and disseminated on it's search engine.

74.     The following is an excerpt from the PTO's refusal to register Google's Android mark:

### Refusal: Section 2(d) - Likelihood of Confusion Refusal

Registration of the proposed mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 2639556. Trademark Act Section 2(d), 15 U.S.C. §1052(d); TMEP §§1207.01 *et seq.*

See the enclosed registration.

Taking into account the relevant *du Pont* factors, a likelihood of confusion determination in this case involves a two-part analysis. First, the marks are compared for similarities in appearance, sound, connotation and commercial impression. *In re E .I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973). Second, the goods or services are compared to determine whether they are similar or related or whether the activities surrounding their marketing are such that confusion as to origin is likely. *In re National Novice Hockey League, Inc.*, 222 USPQ 638 (TTAB 1984); *In re August Storck KG,* 218 USPQ 823 (TTAB 1983); *In re Int'l Tel. and Tel. Corp.*, 197 USPQ 910 (TTAB 1978);  *Guardian Prods. Co. v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978); TMEP §§1207.01 *et seq.*


In the case at hand, the applicant seeks registration of ANDROID in standard character form for "hardware; software." The cited registered mark is ANDROID DATA in typed form for "computer ecommerce software to allow users to perform electronic business transactions via a global computer network."


Regarding the first prong of the test, disclaimed matter is typically less significant or less dominant when comparing marks. Although a disclaimed

portion of a mark certainly cannot be ignored, and the marks must be compared in their entireties, one feature of a mark may be more significant in creating a commercial impression. *In re Dixie Restaurants Inc.,* 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997); *In re National Data Corporation*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985); and *In re Appetito Provisions Co. Inc.*, 3 USPQ2d 1553 (TTAB 1987). *See also Hewlett-Packard Co. v. Packard Press Inc.,* 281 F.3d 1261, 62 USPQ 2d 1001 (Fed. Cir. 2002); *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693 (C.C.P.A. 1976); *In re El Torito Rests. Inc.*, 9 USPQ2d 2002 (TTAB 1988); *In re Equitable Bancorporation,* 229 USPQ 709 (TTAB 1986). The registrant has disclaimed the descriptive wording DATA apart from the mark as shown. Therefore, the examining attorney must closely examine the dominant portion of the registered mark against the applicant's mark. The dominant portion of the registrant's mark is the term ANDROID, which is identical in sound, appearance, and commercial impression to the cited registered mark. Marks may be confusingly similar in appearance where there are similar terms or phrases or similar parts of terms or phrases appearing in both applicant's and registrant's mark. *See e.g., Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689 (TTAB 1986), *aff'd* 1 USPQ2d 1813 (Fed. Cir. 1987) (COMMCASH and COMMUNICASH); *In re Phillips-Van Heusen Corp.*, 228 USPQ 949 (TTAB 1986) (21 CLUB and "21" CLUB (stylized)); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985) (CONFIRM and CONFIRMCELLS); *In re Collegian Sportswear Inc.*, 224 USPQ 174 (TTAB 1984) (COLLEGIAN OF CALIFORNIA and COLLEGIENNE); *In re*

-16-

*Pellerin Milnor Corp.,* 221 USPQ 558 (TTAB 1983) (MILTRON and MILLTRONICS); *In re BASF A.G.,* 189 USPQ 424 (TTAB 1975) (LUTEXAL and LUTEX); TMEP §§1207.01(b)(ii) and (b)(iii). Regarding the issue of likelihood of confusion, the question is not whether people will confuse the marks, but whether the marks will confuse people into believing that the goods they identify come from the same source. *In re West Point-Pepperell, Inc.,* 468 F.2d 200, 175 USPQ 558 (C.C.P.A. 1972). For that reason, the test of likelihood of confusion is not whether the marks can be distinguished when subjected to a side-by-side comparison. The question is whether the marks create the same overall impression. *Recot, Inc. v. M.C. Becton,* 214 F.2d 1322, 54 USPQ2d 1894, 1890 (Fed. Cir. 2000); *Visual Information Inst., Inc. v. Vicon Indus. Inc.*, 209 USPQ 179 (TTAB 1980). The focus is on the recollection of the average purchaser who normally retains a general rather than specific impression of trademarks. *Chemetron Corp. v. Morris Coupling & Clamp Co.*, 203 USPQ 537 (TTAB 1979); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975); TMEP §1207.01(b). Considering the above, the marks are sufficiently similar to cause a likelihood of confusion under Trademark Act Section 2(d).

Turning to the second prong of the test, the goods of the parties need not be identical or directly competitive to find a likelihood of confusion. Instead, they need only be related in some manner, or the conditions surrounding their marketing are such that they would be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that the goods come from a common source. *On-line Careline Inc. v. America Online Inc.*,

229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000); *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985); *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984); *Guardian Prods. Co., Inc. v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978); *In re Int'l Tel. & Tel. Corp.*, 197 USPQ 910 (TTAB 1978); TMEP §1207.01(a)(I).

Both the applicant and the registrant are providing software. The registrant has more narrowly stated its goods as "computer e-commerce software to allow users to perform electronic business transactions via a global computer network." Likelihood of confusion is determined on the basis of the goods or services as they are identified in the application and the registration. *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002); *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1690 n.4 (Fed. Cir. 1993); *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 18 USPQ2d 1889 (Fed. Cir. 1991); *Octocom Systems Inc. v. Houston Computer Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783 (Fed. Cir. 1990). Since the identification of the applicant's goods is very broad, it is presumed that the application encompasses all goods and/or services of the type described, including those in the registrant's more specific identification, that they move in all normal channels of trade and that they are available to all potential customers. TMEP §1207.01(a)(iii).

Therefore, with the contemporaneous use of highly similar marks that share

the dominant term ANDROID, consumers are likely to conclude that the

goods are related and originate from a single source. As such, registration

must be refused under Trademark Act Section 2(d).  Any doubt regarding a

likelihood of confusion is resolved in favor of the prior registrant. *Hewlett-*

*Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1004

(Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d

1025 (Fed. Cir. 1988); TMEP §§1207.01(d)(I).

75.    Plaintiffs have expended considerable resources marketing, advertising and

promoting its goods and services under its Android Data mark.

76.    Defendants failed to perform even minimal due diligence when they "arbitrarily"

chose to brand their products using  Plaintiffs' Android mark.

77.    Notwithstanding Plaintiff's statutory right to use its mark; defendants notice of

Plaintiff's federal registration rights; and without authorization by Plaintiffs,

defendants have in the past and are continuing to hold conventions, advertise,

manufacture, distribute, and offer to sell an ever increasing line of products and

services bearing the infringing Android mark.

78.    This is a reverse confusion case where defendants' are not seeking to trade off of

Plaintiffs goodwill, rather defendants are over saturating the market with

infringing products and services which will undoubtedly lead to deception,

confusion and mistake among the consuming public and trade creating the

erroneous impression that the goods created by Plaintiffs come from the same

origin, or that Plaintiffs products are some type of knock-off of defendants products, services, or name.

79.    Defendants actions and deception have and will continue to deprive Plaintiff of the ability to control the nature and quality of the products and services offered; the ability to license its mark; and the ability to enter into new and emerging markets under the Android Data mark causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

80.    Defendants have intentionally used in commerce a counterfeit of Plaintiffs' mark in connection with the sale, offering for sale, or distribution of goods or services knowing that such mark or designation is a counterfeit.

81.    Defendants have provided goods or services necessary to the commission of the violation described above, with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

82.    By reason of the foregoing acts, Defendants are liable to Plaintiffs for trademark infringement under 15 U.S.C. § 1114.

## IV.

## COMPLAINT FOR UNFAIR COMPETITION

## UNDER LANHAM ACT § 4334.

Plaintiffs repeat and hereby incorporate herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 82.

83.    Defendant's use of the Android mark to promote, market, or sell products or services constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(a). Defendants use of the Android mark is likely to cause confusion, mistake, and

deception among consumers. Defendants unfair competition has caused and will continue to cause damage to Plaintiffs, and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

## V.

## COMPLAINT FOR DECEPTIVE TRADE PRACTICES

## UNDER ILLINOIS LAW 815 ILCS 510/2

Plaintiffs repeat and hereby incorporate herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 83.

84.     Defendants use of the Android mark to promote, market, or sell products or services constitutes Deceptive Practices pursuant to 815 ILCS 510/2. Defendants use of the Android mark in the course of their business or occupation is likely to cause confusion or misunderstanding as to affiliation, connection, or association with Plaintiff's Android Data mark.

## VI

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1.      That, pursuant to 15 U.S.C. § 1116, Defendants Google, Inc., Android, Inc., and members of the Open Handset Alliance, their agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting for, with, by, through or under authority from Defendant, including and each of them, be preliminarily and permanently enjoined from:(a) using the Android trademark or any colorable imitation thereof; (b) using any trademark that imitates or is

-21-

confusingly similar to or in anyway similar to Plaintiff's trademark Android Data, or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Plaintiff's products or their connectedness to Defendant.

2.    That, pursuant to 15 U.S.C. § 1116,  Defendants be required to file with the Court and serve on Plaintiff within thirty (30) days after entry of the Injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the Injunction;

3.    That, pursuant to 15 U.S.C. § 1117(c)(2), the Court find that the use of the counterfeit mark was wilful and award Plaintiffs statutory damages of $2,000,000 against each of the Defendants per counterfeit mark per type of good or service sold.;

4.    That, pursuant to 15 U.S.C. § 1117, Defendants be compelled to account to Plaintiff for any and all profits derived by them from their illegal acts complained of herein;

5.    That the Defendants be ordered pursuant to 15 U.S.C. § 1118 to deliver up for destruction all computer source or executable code that reference or display the Android mark, and all containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material, instruction manuals or the like in possession, custody or under the control of Defendants bearing a trademark found to infringe Plaintiff's Android Data trademark rights, as well as all plates, matrices, and other means of making the same;

6.    That the Court declare this to be an exceptional case and award Plaintiff its full

costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

7.    That the Court grant Plaintiffs any other remedy to which it may be entitled as

provided for in 15 U.S.C. §§ 1116 and 1117;

8.    That the Court grant Plaintiffs any other remedy to which it may be entitled as

provided for in 815 ILCS 510/3 including injunctive relief, attorney fees, and

costs;

9.    For such and other further relief that the court deems just and proper

Respectfully submitted:
Erich Specht, Android Data Corporation, and
The Android's Dungeon Incorporated
By their Attorney,


    /s/ Martin J. Murphy
Martin J. Murphy
Attorney for Plaintiffs
2811 RFD
Long Grove, IL 60047
(312) 933-3200

martym@villageinvestments.com