**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ERICH SPECHT, et al. ) | |
| ) | NO 09 CV 2572 |
| Plaintiffs, ) | |
| ) | Judge Leinenweber |
| v. ) | |
| ) | Magistrate Judge Cole |
| GOOGLE, INC., et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE MEMORANDUM**
**IN OPPOSITION TO MOTION TO DISMISS**
**<u>FIRST AMENDED COMPLAINT</u>**

### I. BACKGROUND

Plaintiffs filed a complaint on APRIL 28, 2009 against Defendants Open Handset Alliance ("OHA"), Google, Inc. ("Google"), and the other 46 members of the OHA alleging trademark infringement, unfair competition and false description under the Lanham Act. On June 4, 2009, Plaintiffs, on their own motion and with leave of the Court, filed their First Amended Complaint correcting some of the Defendants names and typographical errors, adding a state count of Deceptive Practices, and adding the Defendants Android, Inc. and the four Individual Defendants, Andy Rubin, Rich Miner, Nick Sears, and Chris White (the "Individual Defendants").

Some of the Defendants (Google, Android Inc., and the Individual Defendants) have filed a motion to dismiss the First Amended Complaint. Many of the OHA members, represented by the same counsel, have filed a motion to stay the deadline to file their responsive pleadings. This is a response to the legal issues raised in the motion and

memorandum and not to the inflammatory and misleading comments made by Defendants' counsel in their introduction and footnotes.

## II. INTRODUCTION

In or about 1999, Plaintiff Erich Specht ("Specht"), began using the trademark Android Data to describe his Android Data software suite and services. In 2000, Specht filed an application, with the United States Patent and Trademark Office ("PTO"), under Android Data Corporation, for Registration of the trademark Android Data in International Class 9 hardware/software. In October, 2002, Specht's corporation, Android Data Corporation, was granted Registration for the Android Data mark upon the Principal Register. However, as a requirement of the Registration, the exclusive use of the term Data had to be disclaimed, thus, leaving Android as the dominant term. In 2004, the Android Data mark was assigned to Specht's corporation, The Android's Dungeon Incorporated.

In 2003, the Individual Defendants began creating an open source platform for mobile devices called Android. They incorporated a business called Android, Inc. and acquired the domain name Android.com. In 2005, the Individual Defendants sold Android to Google and went to work at Google as employees on the Android project. Google then partnered up with the OHA members and together they created the product known today as Android.

In 2007, Google attempted to register the trademark Android also under Class 9 hardware/software. Google's registration was refused because of a likelihood of confusion with Plaintiffs' Android Data mark. Despite having their registration blocked by Plaintiffs' mark, Google and the OHA went ahead with plans to launch their new

operating system ("OS") for mobile devices, software developer kit ("SDK"), and related products under the Android brand.

There are now millions of Android products on the market and millions of users that own these products that say powered by Android or make reference to Android OS. There are more than eight hundred thousand developers who have or are trying to create more Android products and applications. There are countless numbers of people offering Android related services. Plaintiffs have only filed suit against the parties responsible for the creation of Android and not the millions of resellers, users and developers.

### III. DISCUSSION

#### A. STANDARD OF REVIEW

The standard of review in deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), as previously set forth by this Court [see for e.g. Irvine, et al.. v 233 Skydeck, LLC et al. 08 CV 4939], is as follows: "In deciding a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded facts as true, and draws all reasonable inferences in favor of the plaintiff. *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir., 1999). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. . . .Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." *Smith v. Cash Store Management, Inc.*, 195 F.3d 325, 327 (7th Cir., 1999) (citing *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir., 1997)). A motion to dismiss will be granted "only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Venture Associates Corp. v. Zenith Data Systems Corp.*,

987 F.2d 429, 432 (7th Cir., 1993) (citing *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir., 1988))."

**B.     CLAIM FOR TRADEMARK INFRINGEMENT**

To state a cause of action for trademark infringement, a plaintiff must allege: "(1) that it has a protectible trademark, and (2) a likelihood of confusion as to the origin of the defendant's product." <u>Ty, Inc., v. Jones Group, Inc.</u>, 237 F.3d 891, 897 (7th Cir. 2001) (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988)).

Plaintiffs are alleging that this is a case of reverse confusion. "Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user. In such a case, the junior user does not seek to profit from the good will associated with the senior user's mark. Nonetheless, the senior user is injured because the public comes to assume that the senior user's products are really the junior users or that the former has become somehow connected to the latter. The result is that the senior user loses the value of the trademark--its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." <u>Sands, Taylor & Wood Company v. The Quaker Oats Company,</u> 978 F.2d 947 (7th Cir. 1992).

First, the complaint clearly establishes that Plaintiffs' Android Data mark is a protectible trademark which is Registered on the principal register. Registration on the principal register constitutes "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the

registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. §§1057(b), 1115(a).

Second, the complaint contains numerous allegations that there is a likelihood of confusion along with a detailed analysis of why there is a likelihood of confusion.

Rule 8(a)(2) of the Federal Rules of Civil Procedure ("FRCP") requires only a short and plain statement of the claim showing that the pleader is entitled to relief. In this case Plaintiffs have filed a complaint with 77 pages including exhibits. Under Rule 10 (c), of the FRCP, an exhibit to a pleading is a part of the pleading for all purposes. The exhibits to the complaint include Plaintiffs' PTO Registration and the complete PTO file on Android explaining in detail why the PTO is refusing to register Google's Android mark, including an explanation of why there is a likelihood of confusion with Plaintiffs' Android Data mark. Google was denied registration three times and even voluntarily chose to suspend their application in the hope that Plaintiffs would abandon their mark. Despite the repeated denials by the PTO and Google's own voluntary suspension, Google and the OHA, continued to use the mark as if the registration was granted.

The motion to dismiss argues that, because every single action by every single Defendant is not laid out separately, that the complaint fails to state a claim. This argument misses the mark. The thread that binds the Defendants is that together they created Android. Android, and the infringing products that flowed from it, form the basis for this trademark infringement case.

The Defendants are all connected because: 1) the Individual Defendants started a business they called Android, Inc. to create software [which they branded Android] for mobile devices, ¶20 of the First Amended Complaint ("FAC"); 2) Google purchased the

assets of Android, Inc., including the Android software, from the Individual Defendants and gave them jobs at Google [to continue their development of Android], FAC ¶¶ 21 & 22; 3) Google and the 46 other OHA members formed a partnership to further develop the Android software and product line, FAC ¶26; 4) Google through it's OHA partnership released Android's source code to developers, FAC ¶35; 5) the developers were given the ability and encouraged by Google and the OHA to create infringing products, FAC ¶36; 6) the OHA members have sold over $600 million dollars worth of infringing products to date, FAC ¶ 45; and there are millions of infringing products on the market. FAC ¶ 44.

The following are some examples of actions taken by the Individual Defendants using the infringing Android mark,: 1) they incorporated Android, Inc in Delaware.; 2) they registered the corporations in California and Delaware; 3) made their annual filings with those states; 4) acquired the domain name Android.com; 5) used the Android.com site; 6) negotiated with Google to sell Android, Inc. and its assets; 7) they sold Android, Inc. to Google; 7) they sold the Android.com domain name to Google; 8) they sold the Android source code to Google; 9) they sold the Android trademark to Google; and 10) they encouraged Google and others to infringe upon Plaintiffs' mark. All of the above uses were in connection with the Android software they were developing. Contrary to Defendants argument that the Individual Defendants were only acting as employees, these uses were the actions of the individuals, who personally profited from the sale of the Android assets and subsequent employment they were given.

Android, Inc. used the infringing mark in many of the same ways as the Individual Defendants by registering to do business in California; filing annual reports; developing

Android software; hiring employees; acquiring and using the Android.com website; forming alliances with OHA members; and encouraging the infringement of Plaintiffs' mark.

Google used the infringing Android mark in the same manner as the Individual Defendants and Android, Inc. by filing annual reports in California and Delaware; developing the Android software; hiring employees, including the Individual Defendants; negotiating the purchase of the Android assets, the Android.com domain name, and the Android trademark; and operating the Android.com website. Google also, among other things: formed the OHA; operated the OHA website; released Android OS source code; gave away over 850,000 copies of Android SDK; encouraged developers and OHA members to create infringing products; profited through their partnerships on the sale of infringing products; and developed and released Android applications.

In addition to direct liability, some or all of the Defendants may also be liable for common law Contributory Infringement and/or Vicarious Infringement.

To establish contributory trademark infringement, a plaintiff must show that the defendant either intentionally induced another to infringe a mark or continued to produce or distribute a product knowing or having reason to know the recipient is engaging in trademark infringement. Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844 (1982).

All of the Defendants either intentionally induced another to infringe Plaintiffs' mark or continued to produce or distribute Android products knowing that the recipient is engaging in trademark infringement.

To establish vicarious trademark infringement, a plaintiff is required to show an apparent partnership between the defendant and the direct infringer, giving each the

authority to bind the other or exercise control over the product at issue. Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc, 955 F.2d 1143 (7th Cir. 1992).

Through its licensing of Android to users, developers, and partners, including the OHA members, there is an apparent partnership between Google and the direct infringers giving Google the authority to bind the other or exercise control over the product at issue.

C. **CLAIM FOR COUNTERFEITING**

Section 35 of the Lanham Act, 15 U.S.C. §1117, provides that "in a case involving the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—(1) not less than $ 1,000 or more than $ 200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $ 2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just. "

Section 34(d), 15 U.S.C. §1116(d), defines a counterfeit mark as "(I) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or (ii) a spurious designation that is identical with, or substantially

indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of title 36. "

Section 45 of the Lanham Act defines a "counterfeit" as a spurious mark which is identical with, or substantially indistinguishable from, a registered mark. 15 U.S.C. §1127. The complaint alleges that the marks are identical or at the very least substantially indistinguishable. The complaint also alleges that to use Android with a mobile phone device, the user must have a data plan. So it would seem unlikely that a normal person would be able to distinguish Plaintiffs' Android Data mark from Defendants use of Android data or Android Data plan.

In its refusal to register the Android mark, the PTO dissected the marks and found them to be identical. Accordingly, the complaint states a claim for counterfeiting.

### D. CLAIM UNDER ILLINOIS DTPA

The complaint alleges infringement of a federally registered trademark. A large number of the Defendants have offices and retail stores within the state, sell goods from others retail stores within the state, advertise in print and on local television stations, and operate websites which are targeted to Illinois residents. Plaintiffs all reside in Illinois, the trademark is and always has been registered to the same address in Illinois. The OHA maintains headquarters in Illinois. The Defendants collectively control over fifteen percent of American commerce. They pool these substantial resources to enable them to market various types of infringing products and services including hundreds of thousands of copies of their software and over $600 million worth of infringing products. Chicago is the third largest city in the United States. The Defendants are from all over the world.

It is, therefore, unlikely that an Illinois court would refuse to recognize a claim under the DTPA.

The motion by Google and the "Google Affiliates" attacks the pleadings against all the Defendants rather than just the moving Defendants. Since the OHA and its members, excluding Google, chose not to participate in this motion, over Plaintiffs objection to the motion to stay granted June 30, 2009, some of the issues related to claims against the OHA and its members, other than Google, are not individually addressed in this response.

### E. PERSONAL JURISDICTION OVER DEFENDANTS

Rule 8(a)(1) requires a short and plain statement of the grounds for the court's jurisdiction. The complaint complies with this requirement. As set forth in the First Amended Complaint, the Court has personal jurisdiction over the Defendants based upon minimum contacts with the state because many of them regularly transact business in this state; many of the Defendants, including Google, have offices in Illinois; many of the Defendants are registered to do business in this state; and the OHA maintains headquarters in Schaumburg, Illinois. Attached as Exhibit 1 hereto are corporate file detail reports of the Illinois, California, and Delaware Secretary of State offices which show that most of the Defendants conduct business in Illinois..

Personal Jurisdiction is also proper under Illinois Long Arm Statute because the Defendants have committed a tort, trademark infringement, within this state and because they violated the Illinois Deceptive Trade Practices Act.

The Court has jurisdiction under Rule 4(k)(2) as set forth in ISI International Inc. v. Borden Ladner Gervais llp 256 F.3d 548 (7th Cir. 2001). Rule 4(k)(2) states that for a claim that arises under federal law, serving a summons or filing a waiver of service

establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws. The Defendants are not all residents of the United States or, for that matter, any one state. Therefore, Defendants may not be subject to jurisdiction in any state's courts of general jurisdiction. Accordingly, exercising jurisdiction in federal court is consistent with the Constitution and the Lanham Act. <u>ISI International,</u> Id. The Court also has jurisdiction under Rule 19(a)(1) because it is necessary to join all of the parties to accord complete relief among existing parties.

F. **VENUE**

Venue is proper in this jurisdiction for many of the same reasons personal jurisdiction is proper. Venue is also proper, under 28 U.S.C. § 1391(a)(3); §1391(b)(3); §1391(c); and § 1391(d), because there is no district in which the action may otherwise be brought. The OHA Defendants are from all over the United States and the world. The individual Defendants reside and work in California, Washington and Massachusetts. Google is incorporated in Delaware and has offices all over the country including California[1], Washington[2], Massachusetts[3], and Illinois among other states. Android, Inc. is a Delaware corporation and registered to do business in California. The OHA maintains a headquarters in Schaumburg, Illinois. Following Defendants logic, no state would have jurisdiction over this case. Illinois is the ideal location because most of the Defendants conduct business in Illinois and Illinois is centrally located for the overseas Defendants and the U.S. Defendants.

---

[1] See declarations of Rubin attached to Defendants' memorandum
[2] See declaration of Sears attached to Defendants' memorandum
[3] See declaration of Miner attached to Defendants' memorandum

### G. PLAINTIFFS STANDING

Specht is the sole owner of the corporations, trademark, copyrights, and business assets. He has held the trademark since at least 1999. In 2002, the trademark was registered to Android Data Corporation and in 2004 transferred to The Android's Dungeon Incorporated. The Defendants' infringement began at least as early as 2003, perhaps earlier. Thus all of the Plaintiffs have standing.

### H. REQUEST FOR A MORE DEFINITE STATEMENT

A motion for a more definite statement under Rule 12(e) must point out the specific defects complained of in the complaint and must be made before a responsive pleading is filed. On June 30, 2009, at the motion call, Defendants argued that their motion to dismiss constituted a responsive pleading which the Court agreed with. Accordingly, the motion for a more definite statement under Rule 12(e) was not made before a responsive pleading was filed and, therefore, should be denied.

### IV. CONCLUSION

For the reasons set forth above and in the First Amended Complaint, Plaintiffs respectfully request that this Honorable Court deny Defendants' motion and order Defendants to file a written answer within 10 days of the Court's order denying their motion.

Respectfully submitted,

Dated this _14th__ day of July, 2009

/s/ Martin J Murphy
Martin J Murphy
Attorney for Plaintiffs
2811 RFD
Long Grove, IL 60047
(312) 933-3200
martym@villageinvestments.com