# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ERICH SPECHT, an individual, and doing business as ANDROID DATA CORPORATION, and THE ANDROID'S DUNGEON INCORPORATED, | ) ) ) Civil Action No.  09-cv-2572 |
| | ) |
| | ) Judge Leinenweber |
| Plaintiffs | ) |
| | ) Magistrate Judge Cole |
| v. | ) |
| | ) |
| GOOGLE INC., | ) |
| | ) |
| Defendant. | ) |
| ---------------------------------------------------------------- | ) |
| GOOGLE INC., | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ERICH SPECHT, ANDROID DATA CORPORATION, and THE ANDROID'S DUNGEON INCORPORATED, | ) ) ) |
| | ) |
| Counterclaim Defendants. | ) |

## GOOGLE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant GOOGLE INC. ("Google"), through its undersigned counsel, hereby answers the First Amended Complaint ("FAC") of Plaintiffs ERICH SPECHT ("Specht"), an individual, and doing business as ANDROID DATA CORPORATION ("ADC"), and THE ANDROID'S DUNGEON INCORPORATED ("ADI"), collectively referred to hereinbelow as "Plaintiffs," as follows:

# I. THE PARTIES

1.      Plaintiff Erich Specht is a resident of the village of Palatine, Illinois.  Plaintiff corporations are Illinois domestic corporations organized and existing under the laws of the State of Illinois and having a principal place of business in the village of Palatine, Illinois.

**ANSWER:**      Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

2.      Defendant, Google, Inc. ("Google"), is a Delaware corporation registered to do business as a foreign corporation in Illinois.

**ANSWER:**      Admitted.

3.      Open Handset Alliance ("OHA") is an "alliance" of the Open Handset Alliance Members.  Defendants, the Open Handset Alliance Members, set forth on Plaintiff's Exhibit K, consist of an "Alliance" of mobile operators, software companies, commercialization companies, semi-conductor companies and handset manufacturers with offices all over the world and with headquarters in Mountain View, California; Bonn, Germany; Taoyuan, Taiwan; San Diego, California, and Schaumburg, Illinois.

**ANSWER:**      Google admits that the Open Handset Alliance ("OHA") is a business alliance having as members at least some of the entities listed on Exhibit K to Plaintiffs' FAC.  Google denies that the OHA has any "headquarters," much less a "headquarters" in each of the listed locales, inasmuch as the OHA is not a separate legal or business entity.  To the extent any remaining allegations have not been admitted, they are also expressly denied.

4.      Defendant, Android, Inc, a Delaware corporation with its office at Google's headquarters in Mountain View, California, is owned by Google and listed as a subsidiary of Google on it's financial statements.

**ANSWER:**      Admitted.

5.      Defendants Andy Rubin, Rich Miner, Nick Sears and Chris White are individuals who reside in California, co-founded Android, Inc., and are or were employed by Google to work on the project which is the subject of this litigation.

**ANSWER:**   Google admits that Andrew Rubin, Richard Miner, Nickolas Sears and Christopher White were co-founders of Android, Inc., that Messrs. Rubin, Miner and Sears are employed by Google, that Mr. White was previously employed by Google, and that their duties with Google have related, at least in part, to the Android software platform.  Google admits that Messrs. Rubin, Sears and White reside in California, and denies that Mr. Miner resides in California.  To the extent any remaining allegations have not been admitted, they are expressly denied.

## II.  JURISDICTION AND VENUE

6.      This is a civil action alleging Trademark Infringement, Unfair Competition, and False Description arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) (Trademark Infringement) and 1125(a) (Unfair Competition) as well as a violation of the Illinois Deceptive Practices Act (815 ILCS 510/2).

**ANSWER:**   Google admits that this is a civil action and that the FAC purports to state claims under 15 U.S.C. §§ 1114(1) and 1125(a) and 815 ILCS 510/2, but denies that such claims have any basis in fact or law.

7.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121.  The court also has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

**ANSWER:**   Google admits that this Court has subject matter jurisdiction over the claims asserted in the FAC.

8.     This Court has personal jurisdiction over Defendants because the Defendants have transacted business in this state; Google is a foreign corporation registered to do business in Illinois with the Illinois Secretary of State; and the Open Handset Alliance maintains a headquarter in Schaumburg, Illinois.  The Court also has jurisdiction over the Defendants pursuant to Illinois Long Arm Statute 735 ILCS 5/2-209(a)(2).

**ANSWER:**     Google admits that this Court has personal jurisdiction over it.  To the extent any remaining allegations have not been admitted, they are expressly denied.


9.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

**ANSWER:**     Denied.

### III.  FACTUAL BACKGROUND

10.     Plaintiff, Android Data Corporation is an Illinois corporation in good standing.  It was incorporated on December 30, 1998 by Erich Specht its sole officer, director and shareholder.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

11.     Plaintiff, The Android's Dungeon Incorporated is an Illinois corporation in good standing.  It was incorporated on March 5, 2001 by Erich Specht, its sole shareholder.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

12.     Plaintiff, Erich Specht is a software developer and internet application service provider.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

13.     Erich has and continues to develop software and offer computer software and hardware related products and services under the Android Data® mark.  Plaintiffs hold copyrights filed with the U.S. Copyright Office on Android Server and Android Data Web Editor, which are earlier versions of the Android Data suite as well as Android Data - Version 5, the current rewrite of the software product line.  The Android Data software suite enables the remote administration of web sites including secure data transfer, management and categorization of products, image processing, online surveys, email campaigns, document transformation, and the like.  Computer hardware and software services include web page designs, custom software application development, and consulting on software and hardware issues.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

14.     Android Data software implements advanced caching algorithms that allow for greater efficiency of web and database servers.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

15.     Beginning in 1999, Android Data software was intended to and has been used in commerce by customers who transact hundreds of millions of dollars in world wide transactions including tens of millions in e-commerce over the world wide web using Plaintiff's software.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

16.     Plaintiff chose the name Android Data to communicate the seamless, almost robotic-like, bi-directional communication of data between a client and a data center in a remote location.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

17.     Plaintiff is and has been further developing the original Android Data software suite product as well as preparing to release additional products in the near future under the Android Data product mark.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

18.     On June 4, 2000, Plaintiff, Erich Specht, under the name Android Data Corporation, filed an application with the United States Patent and Trademark Office ("PTO") for the mark "Android Data" (Serial number 78011167). A copy of the application is attached as Plaintiffs' Exhibit A.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

19.     On October 22, 2002 The PTO granted Plaintiffs Registration of the mark "Android Data", Registration number 2,639,556. Registration No. 2,639,556 is *prima facie* evidence of the validity and ownership of, and is constructive notice of ownership of, the mark Android Data® as provided by §§ 7(b) and 22 of the Federal Trademark Act, 15 U.S.C. §§ 1057(b) and 1072. As a condition of approval, PTO required that the following language be inserted into the application: "No claim is made to the exclusive right to use "Data," apart from the mark as shown." Thus the dominant word in the mark was "ANDROID" with Data being a

descriptive or non-dominant word. The purpose of the Trademark was for computer e-commerce software to allow users to perform electronic business transactions via a global computer network, in International Class 9 (U.S. CLS. 21, 23, 26, 36, and 38). A copy of the Trademark Principal Register is attached as Plaintiffs' Exhibit B.

**ANSWER:** Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

20. On or about December 1, 2003, thirteen months after Plaintiff's Android Data mark was registered, Defendants incorporated Android, Inc., a start-up company based in Palo Alto, California, for the purpose of developing computer software for mobile phone devices. Android, Inc was incorporated as a Delaware corporation, and, in February 2004, it was registered to do business with the California Secretary of State's office.

**ANSWER:** Google admits that Android, Inc. was incorporated as a Delaware corporation on or about December 1, 2003, and was registered with the California Secretary of State in February 2004. Google has neither knowledge nor information sufficient to form a belief as to the remaining allegations of this paragraph and consequently denies same.

21. In or about July, 2005 Google acquired Android, Inc. from its co-founders Andy Rubin, Rich Miner, Nick Sears, and Chris White. After Android, Inc. was acquired by Google, the four co-founders went to work for Google.

**ANSWER:** Admitted.

22. As part of its purchase of Android, Inc., based upon information and belief, Google purchased some of the assets it is using today for its Android product including the infringing trademark, software source code, goodwill, domain name, and the other assets of Android, Inc.

**ANSWER:**   Google admits that it acquired Android, Inc. and substantially all of the assets of Android, Inc. Google denies that it acquired any "infringing trademark" from Android, Inc.

23.     Android, Inc. is currently registered as a Delaware corporation in good standing. It's California registration is listed by the secretary of state as forfeited.

**ANSWER:**   Admitted.

24.     Android, Inc. is listed as a subsidiary corporation of Google on Google's financial statements.

**ANSWER:**   Admitted.

25.     On October 31, 2007 Defendant Google filed an application with the PTO for the mark "Android," Serial number 77318565. The goods and services identified under the application were International Class 9 (hardware; software). The stated Intent to Use was listed as: "The applicant has a bona fide intention to use through the applicant's related company or licensee the mark in commerce or in connection with the identified goods and/or services." Thus, Google was seeking the exclusive right to use and license the Android mark in commerce or in connection with any software or hardware use or product. By definition, this use would include Plaintiffs' permitted use of the Android mark. A copy of Google's application is attached as Plaintiffs Exhibit C.

**ANSWER:**   Google admits that, on or about October 31, 2007, it filed an intent-to-use application with the PTO to register the mark ANDROID, which was accorded Serial No. 77/318,565, that the goods identified in the application were "hardware; software" in International Class 9, and that a copy of the application was attached as Exhibit C to the FAC. Google denies the remaining allegations of this paragraph.

26.     On November 5, 2007 Defendants Google and the Open Handset Alliance ("OHA"), a partnership or business alliance of 47 firms led by Google, T-Mobile, HTC, Qualcomm and Motorola, made their product launch under Plaintiffs' Android mark.

**ANSWER:**     Google admits that, on or about November 5, 2007 Google issued a press release announcing its release of the Android software platform.  Google denies the remaining allegations of this paragraph.

27.     Wikipedia, the free online encyclopedia, reports that "Android is the brain child of Google and the flagship software of the OHA is based on an open source license and will compete against other mobile platforms from Apple Inc., Microsoft, Nokia, Palm, Research In Motion and Symbia.".

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

28.     The OHA initially consisted of 34 firms including mobile operators, software companies, commercialization companies, semiconductor companies, and handset manufacturers.

**ANSWER:**     Admitted.

29.     On November 5, 2007, the original members of the OHA were announced in Google's press release as:  China Mobile Communications Corporation; KDDI Corporation; NTT DoCoMo, Inc.; Sprint Nextel; T-Mobile; Telecom Italia; Softbank Mobile Corp.; Telefónica; Ascender Corp.; eBay Inc.; Google Inc.; LivingImage Ltd.; Nuance Communications, Inc.; PacketVideo; SkyPop; SONiVOX; Aplix Corporation;, Noser Engineering Inc.; TAT The Astonishing Tribe AB, Wind River; Audience, Broadcom Corporation; Intel Corporation; Marvell Semiconductors, Inc.; Nvidia Corporation, Qualcomm,

Inc.; SiRF Technology Holdings, Inc.; Synaptics, Inc.; Texas Instruments Incorporated; HTC Corporation; LG Electronics, Inc.; Motorola, Inc.; Samsung Electronics; Vodafone, Ericsson, and Borqs.

**ANSWER:**  Google admits that the November 5, 2007 press release announcing the existence of the OHA identified the following entities as the "Open Handset Alliance Founding Members":

> Aplix, Ascender Corporation, Audience, Broadcom, China Mobile, eBay, Esmertec, Google, HTC, Intel, KDDI, Living Image, LG, Marvell, Motorola, NMS Communications, Noser, NTT DoCoMo, Inc., Nuance, Nvidia, PacketVideo, Qualcomm, Samsung, SiRF, SkyPop, SONiVOX, Sprint Nextel, Synaptics, TAT - The Astonishing Tribe, Telecom Italia, Telefónica, Texas Instruments, T-Mobile, Wind River

To the extent that the allegations of this paragraph are inconsistent with the November 5, 2007 press release, Google denies those and any other remaining allegations.

30.     On February 14, 2008 the PTO issued it's Office Action letter refusing Google's registration under Section 2(d) to use the "Android" mark citing likelihood of confusion with Plaintiffs' mark.  A copy of the refusal is attached as Plaintiff's Exhibit D.

**ANSWER:**  Google admits that the PTO issued an Office Action on or about February 14, 2008 initially refusing Google's application for the ANDROID mark under §2(d) of the Lanham Act based on U.S. Registration No. 2,639,556, and that a copy of that Office Action was attached as Exhibit D to the FAC.  Google denies the remaining allegations of this paragraph.

31.     On April 2, 2008, roughly 6 weeks after the PTO refused their application for the Android mark, the OHA presented "Android" at the World Congress in Barcelona.  (OHA website 4/23/09).

**ANSWER:**  Denied.

32.     On August 14, 2008, Google filed it's response to Office Action.  In it's response Google admitted that:  "Android was an arbitrary term we chose as a brand for our products."  A copy of the response is attached as Plaintiff's Exhibit E.

**ANSWER:**     Google admits that, on or about August 14, 2008, it filed a response to the Office Action referenced hereinabove, which included the statement, *inter alia*, that "ANDROID is a arbirtary [sic] term we chose as a brand for our products," and that a copy of that response was attached as Exhibit E to the FAC.  Google denies the remaining allegations of this paragraph.

33.     On August 20, 2008, the PTO issued it's Office Action making the refusal to deny Google's application final.  A copy of the final action is attached as Plaintiff's Exhibit F.

**ANSWER:**     Admitted.

34.     On September 23, 2008, seven months after their application for the Android mark was refused and one month after the final action letter was issued, Google and OHA issued their press release announcing "Android 1.0 SDK" now available. (OHA website 4/23/09).

**ANSWER:**     Google admits that, on or about September 23, 2008, a blog entry entitled "Announcing the Android 1.0 SDK, release 1" was posted on the www.android.com website. Google denies the remaining allegations of this paragraph.

35.     On October 21, 2008, roughly eight months after their application was refused, Google and OHA released portions of the source code for their infringing Android software to developers.

**ANSWER:**     Google admits that, on or about October 21, 2008, it issued a press release announcing the availability of the Android platform source code.  Google denies the remaining allegations of this paragraph.

36.     By releasing the source code, the Defendants encouraged and gave developers the ability to freely use the infringing Android operating system to create infringing Android applications for use with the Defendants infringing products.

**ANSWER:**     Denied.

37.     On November 20, 2008 Google filed its Request for Reconsideration after Final Action requesting reconsideration or in the alternative that its application (sic) examination be suspended.  A copy of the request is attached as Plaintiff's Exhibit G.

**ANSWER:**     Admitted.

38.     On November 20, 2008 Google also filed an Exparte (sic) Notice of Appeal.  A copy of the notice is attached as Plaintiff's Exhibit H.

**ANSWER:**     Admitted.

39.     On November 21, 2008, the PTO's Trademark Trial and Appeal Board issued an order suspending Google's appeal pending its request for reconsideration.  A copy of the order is attached as Plaintiff's Exhibit I.

**ANSWER:**     Admitted.

40.     On November 24, 2008, per Google's request, the PTO issued its Notice of Suspension.  A copy of the Notice is attached as Plaintiff's Exhibit J.

**ANSWER:**     Admitted.

41.     Despite the fact that their registration was refused, and despite the fact that they requested that their application be suspended, neither Google nor any of the Defendants have taken any action to curtail their infringing activities.

**ANSWER:**     Denied.  None of the current or former named Defendants have engaged in any "infringing activities."

42. Beginning on November 5, 2007 and continuing to the present, Defendants Google, OHA, and its members, without authority, have been issuing press releases for their products and services under the infringing Android mark.

**ANSWER:** Denied. The "Android mark" does not infringe any third party rights.

43. The Defendants have created and control an extensive and integrated worldwide network of companies that pool resources to enable them to market various types of infringing products and services. Based upon information and belief, Defendants control over 15% (fifteen percent) of all American commerce.

**ANSWER:** Denied.

44. There are millions of products on the market that specifically say "Powered by Android" or mention the infringing Android mark.

**ANSWER:** Denied. The "Android mark" does not infringe any third party rights.

45. Defendants have sold over $600 million dollars worth of equipment bearing the infringing Android mark.

**ANSWER:** Denied. The "Android mark" does not infringe any third party rights.

46. Defendants have released several versions of its infringing Android software to hundreds of thousands of developers.

**ANSWER:** Denied. The "Android mark" does not infringe any third party rights.

47. On December 5, 2008, less than a month after voluntarily suspending its Trademark application examination, OHA issued a press release announcing Android 2.0 SDK release. (OHA website 4/23/09).

**ANSWER:** Google admits that, on or about December 5, 2008, a blog entry entitled "New Resources for Developers," which confirmed the release of the Android 2.0 SDK, was posted on the www.android.com website. Google denies the remaining allegations of this paragraph.

48. On December 9, 2008 OHA announced the addition of its newest members: Omron Software Co, Ltd.; Teleca AB; AKM Semiconductor, Inc.; ARM; Atheros Communications; ASUSTek Computer, Inc.; Garmin International, Inc.; Huawei Technologies; Sony Ericsson and Toshiba. See Plaintiffs' Exhibit K for a full listing of the OHA members and description.

**ANSWER:** Google admits that it issued a press release on or about December 9, 2008 announcing the following new members of the OHA:

> AKM Semiconductor Inc., ARM, ASUSTek Computer Inc., Atheros Communications, Borqs, Ericsson, Garmin International Inc., Huawei Technologies, Omron Software Co. Ltd, Softbank Mobile Corporation, Sony Ericsson, Teleca AB, Toshiba Corporation and Vodafone

To the extent that the allegations of this paragraph are inconsistent with the December 9, 2008 press release, Google denies those allegations and any other remaining allegations.

49. Based upon information and belief, Google and the OHA members have been and are continuing to use Plaintiffs' Android mark in advertising, promotional materials and press releases without disclosing Plaintiffs' ownership and without Plaintiffs' permission.

**ANSWER:** Denied. Plaintiffs do not own any "Android mark."

50. Google and its OHA members list "Android" as a trademark and/or registered trademark of Google or the OHA.

**ANSWER:** Google admits that it has identified ANDROID as being a trademark of Google. Google has neither knowledge nor information sufficient to form a belief as to the remaining allegations of this paragraph and consequently denies same.

51.     On April 29, 2009, Plaintiff received a Notice of Acceptance of § 8 Declaration and informing them that registration remains in force.  A copy of the notice is attached as Plaintiff's Exhibit L.

**ANSWER:**     Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

52.     Having continuously used Android Data in interstate commerce and having filed the requisite registration maintenance documents with the PTO, Plaintiffs' Android Data mark is in "Live" standing with the PTO and is incontestible as provided by § 15 of the Federal Trademark Act, 15 U.S.C. § 1065.

**ANSWER:**     Denied.

53.     At no time prior to Plaintiffs filing this infringement action have the Defendants sought to have Plaintiff's Registration cancelled.

**ANSWER:**     Admitted.

54.     The Defendants have never asked Plaintiffs whether they intended to continue using the Android Data mark.

**ANSWER:**     Admitted.

55.     According to documents filed with the PTO, Google continued using the Android mark after its registration was refused because it wrongly believed that Plaintiffs could not file a § 8 Declaration.

**ANSWER:**     Denied.

56.     Prior to filing its trademark application, Google did not conduct a thorough trademark search of the Android mark.

**ANSWER:**     Denied.

57. Prior to joining the OHA, the OHA members did not conduct a thorough trademark search of the Android mark.

**ANSWER:** Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

58. Prior to incorporating Android, Inc, the Defendants did not conduct a thorough search of the Android mark.

**ANSWER:** Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph at the present time and consequently denies same.

59. Google and the OHA members have never requested or received Plaintiffs' permission to use the "Android" or "Android Data" mark.

**ANSWER:** Admitted.

60. Fully aware of Plaintiffs' rights to the Android mark, Defendants have and are intentionally, openly, notoriously, and without Plaintiffs' authority exercising full rights and privileges to the use of Plaintiffs' Android mark.

**ANSWER:** Denied. Plaintiffs do not own any "Android mark."

61. Beginning on November 12, 2007 and continuing through June 3, 2009, Google and the OHA members have used Plaintiffs' Android mark in their press releases and promotional materials and web sites without authority to do so.

**ANSWER:** Denied.

62. The Defendants have known that their application to register Android with the PTO was refused on the basis of Plaintiffs' Android Data registration since at least February 14, 2008.

**ANSWER:** Denied.

63. Google and the OHA members use of the Android mark in its product promotion and advertising on print and on the internet constitutes the use in commerce of a colorable imitation, copy and reproduction of Plaintiffs' Trademark.

**ANSWER:** Denied. Plaintiffs do not own any Android "Trademark."

64. For the reasons set forth above and in the PTO's refusal to register Android by Defendants, the use of the Android mark is deceptive and confusingly similar and likely to cause confusion, mistake, or deception in the minds of the public.

**ANSWER:** Denied.

65. Defendants infringement constitutes a willful and malicious violation of Plaintiffs' Trademark rights.

**ANSWER:** Denied. Plaintiffs do not own any Android "Trademark."

66. Upon learning of Defendants actions, Plaintiffs have moved as expeditiously as possible to protect their mark.

**ANSWER:** Denied. Plaintiffs do not own any "Android mark."

## IV. COMPLAINT FOR TRADEMARK INFRINGEMENT, UNDER LANHAM ACT § 3231.

Plaintiffs repeat and hereby incorporate herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 66.

**ANSWER:** Google incorporates its responses to the allegations contained in paragraphs 1 through 66, inclusive.

67. The marks are identical. The PTO found that the Google's proposed mark Android was identical to the dominant portion of the Plaintiffs' registered mark ANDROID in sound, appearance, and commercial impression.

**ANSWER:** Denied.

68.     The Android mark is arbitrary, and, therefore, very distinctive.

**ANSWER:**     Denied.

69.     The contemporaneous use by both parties of the Android mark in commerce is likely to cause confusion among consuming public into believing that the goods they identify come from the same source.

**ANSWER:**     Denied.

70.     Both marks, Android and Android Data, may be used to identify computer hardware, software and related services.

**ANSWER:**     Denied.

71.     The hardware and software products and services may be used in e-commerce and marketed by all parties in commercial settings and over the World Wide Web.

**ANSWER:**     Denied.

72.     To enable use of the Android applications on mobile phone devices, the subscriber will need to have a Data plan with their carrier.

**ANSWER:**     Denied.

73.     Google's search engine accounts for approximately 75% of the computer internet searches; Google controls how information is ranked and disseminated on its search engine.

**ANSWER:**     Denied.

74.     The following is an excerpt from the PTO's refusal to register Google's Android mark:

### Refusal: Section 2(d) - Likelihood of Confusion Refusal

Registration of the proposed mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 2639556.  Trademark Act Section 2(d), 15 U.S.C. § 1052(d); TMEP §§1207.01 *et seq.*

See the enclosed registration.

Taking into account the relevant *du Pont* factors, a likelihood of confusion determination in this case involves a two-part analysis. First, the marks are compared for similarities in appearance, sound, connotation and commercial impression. *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973). Second, the goods or services are compared to determine whether they are similar or related or whether the activities surrounding their marketing are such that confusion as to origin is likely. *In re National Novice Hockey League, Inc.*, 222 USPQ 638 (TTAB 1984); *In re August Storck KG*, 218 USPQ 823 (TTAB 1983); *In re Int'l Tel. and Tel. Corp.*, 197 USPQ 910 (TTAB 1978); *Guardian Prods. Co. v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978); TMEP §§1207.01 *et seq*.

In the case at hand, the applicant seeks registration of ANDROID in standard character form for "hardware; software." The cited registered mark is ANDROID DATA in typed form for "computer ecommerce software to allow users to perform electronic business transactions via a global computer network."

Regarding the first prong of the test, disclaimed matter is typically less significant or less dominant when comparing marks. Although a disclaimed portion of a mark certainly cannot be ignored, and the marks must be compared in their entireties, one feature of a mark may be more significant in creating a commercial impression. *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997); *In re National Data Corporation*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985); and *In re Appetito Provisions Co. Inc.*, 3 USPQ2d 1553 (TTAB 1987). *See also Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002); *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693 (C.C.P.A. 1976); *In re El Torito Rests. Inc.*, 9 USPQ2d 2002 (TTAB 1988); *In re Equitable Bancorporation*, 229 USPQ 709 (TTAB 1986). The registrant has disclaimed the descriptive wording DATA apart from the mark as shown. Therefore, the examining attorney must closely examine the dominant portion of the registered mark against the applicant's mark. The dominant portion of the registrant's mark is the term ANDROID, which is identical in sound, appearance, and commercial impression to the cited registered mark. Marks may be confusingly similar in appearance where there are similar terms or phrases or similar parts of terms or phrases appearing in both applicant's and registrant's mark. *See e.g., Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689 (TTAB 1986), *aff'd* 1 USPQ2d 1813 (Fed. Cir. 1987) (COMMCASH and COMMUNICASH); *In re Phillips-Van Heusen Corp.*, 228 USPQ 949 (TTAB 1986) (21 CLUB and "21" CLUB (stylized)); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985) (CONFIRM and CONFIRMCELLS); *In re Collegian Sportswear Inc.*, 224 USPQ 174 (TTAB 1984) (COLLEGIAN OF CALIFORNIA and COLLEGIENNE); *In re Pellerin Milnor Corp.*, 221 USPQ 558 (TTAB 1983) (MILTRON and MILLTRONICS); *In re BASF A.G.*, 189 USPQ 424 (TTAB 1975) (LUTEXAL and LUTEX); TMEP §§1207.01(b)(ii) and (b)(iii). Regarding the issue of likelihood of confusion, the question is not whether people will confuse the marks, but whether the marks will confuse people into believing that

the goods they identify come from the same source. *In re West Point-Pepperell, Inc.*, 468 F.2d 200, 175 USPQ 558 (C.C.P.A. 1972). For that reason, the test of likelihood of confusion is not whether the marks can be distinguished when subjected to a side-by-side comparison. The question is whether the marks create the same overall impression. *Recot, Inc. v. M.C. Becton*, 214 F.2d 1322, 54 USPQ2d 1894, 1890 (Fed. Cir. 2000); *Visual Information Inst., Inc. v. Vicon Indus. Inc.*, 209 USPQ 179 (TTAB 1980). The focus is on the recollection of the average purchaser who normally retains a general rather than specific impression of trademarks. *Chemetron Corp. v. Morris Coupling & Clamp Co.*, 203 USPQ 537 (TTAB 1979); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975); TMEP § 1207.01(b). Considering the above, the marks are sufficiently similar to cause a likelihood of confusion under Trademark Act Section 2(d).

Turning to the second prong of the test, the goods of the parties need not be identical or directly competitive to find a likelihood of confusion. Instead, they need only be related in some manner, or the conditions surrounding their marketing are such that they would be encountered by the same purchasers under circumstances that would give rise to the mistaken belief that the goods come from a common source. *On-line Careline Inc. v. America Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000); *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In Re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985); *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984); *Guardian Prods. Co., Inc. v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978); *In re Int'l Tel. & Tel. Corp.*, 197 USPQ 910 (TTAB 1978); TMEP § 1207.01(a)(I).

Both the applicant and the registrant are providing software. The registrant has more narrowly stated its goods as "computer e-commerce software to allow users to perform electronic business transactions via a global computer network." Likelihood of confusion is determined on the basis of the goods or services as they are identified in the application and the registration. *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002); *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1690 n.4 (Fed. Cir. 1993); *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 18 USPQ2d 1889 (Fed. Cir. 1991); *Octocom Systems Inc. v. Houston Computer Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783 (Fed. Cir. 1990). Since the identification of the applicant's goods is very broad, it is presumed that the application encompasses all goods and/or services of the type described, including those in the registrant's more specific identification, that they move in all normal channels of trade and that they are available to all potential customers. TMEP § 1207.01(a)(iii).

Therefore, with the contemporaneous use of highly similar marks that share the dominant term ANDROID, consumers are likely to conclude that the goods are related and originate from a single source. As such, registration must be refused under Trademark Act Section 2(d). Any doubt regarding a likelihood of confusion is resolved in favor of the prior registrant. *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002); *In*

*re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir. 1988); TMEP §§1207.01(d)(I).

**ANSWER:**    Google admits that the language quoted in this paragraph appears in the February 14, 2008 Office Action which is attached as Exhibit D to Plaintiffs' FAC.

75.    Plaintiffs have expended considerable resources marketing, advertising and promoting its goods and services under its Android Data mark.

**ANSWER:**    Google has neither knowledge nor information sufficient to form a belief as to the allegations of this paragraph and consequently denies same.

76.    Defendants failed to perform even minimal due diligence when they "arbitrarily" chose to brand their products using Plaintiffs' Android mark.

**ANSWER:**    Denied.  Plaintiffs do not own any "Android mark."

77.    Notwithstanding Plaintiffs' statutory right to use its mark; Defendants notice of Plaintiffs' federal registration rights; and without authorization by Plaintiffs, Defendants have in the past and are continuing to hold conventions, advertise, manufacture, distribute, and offer to sell an ever increasing line of products and services bearing the infringing Android mark.

**ANSWER:**    Google admits that it has in the past and continues to lawfully utilize its ANDROID mark in association with the advertisement and distribution of the Android software platform, and denies the remaining allegations of this paragraph.

78.    This is a reverse confusion case where Defendants are not seeking to trade off of Plaintiffs' goodwill, rather Defendants are over saturating the market with infringing products and services which will undoubtedly lead to deception, confusion and mistake among the consuming public and trade creating the erroneous impression that the goods created by Plaintiffs come from the same origin, or that Plaintiffs' products are some type of knock-off of Defendants' products, services, or name.

21

**ANSWER:**     Denied.

79.     Defendants' actions and deception have and will continue to deprive Plaintiffs of the ability to control the nature and quality of the products and services offered; the ability to license its mark; and the ability to enter into new and emerging markets under the Android Data mark causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

**ANSWER:**     Denied.

80.     Defendants have intentionally used in commerce a counterfeit of Plaintiffs' mark in connection with the sale, offering for sale, or distribution of goods or services knowing that such mark or designation is a counterfeit.

**ANSWER:**     Denied.

81.     Defendants have provided goods or services necessary to the commission of the violation described above, with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

**ANSWER:**     Denied.

82.     By reason of the foregoing acts, Defendants are liable to Plaintiffs for trademark infringement under 15 U.S.C. § 1114.

**ANSWER:**     Denied.

## V.  COMPLAINT FOR UNFAIR COMPETITION
## UNDER LANHAM ACT § 4334.

Plaintiffs repeat and hereby incorporate herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 82.

**ANSWER:**     Google incorporates its responses to the allegations contained in paragraphs 1 through 82, inclusive.

83.     Defendant's use of the Android mark to promote, market, or sell products or services constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(a).  Defendants' use of the Android mark is likely to cause confusion, mistake, and deception among consumers. Defendants unfair competition has caused and will continue to cause damage to Plaintiffs, and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

**ANSWER:**     Denied.

## VI.  COMPLAINT FOR DECEPTIVE TRADE PRACTICES UNDER ILLINOIS LAW 815 ILCS 510/2

Plaintiffs repeat and hereby incorporate herein by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 83.

**ANSWER:**     Google incorporates its responses to the allegations contained in paragraphs 1 through 83, inclusive.

84.     Defendants use of the Android mark to promote, market, or sell products or services constitutes Deceptive Practices pursuant to 815 ILCS 510/2.  Defendants' use of the Android mark in the course of their business or occupation is likely to cause confusion or misunderstanding as to affiliation, connection, or association with Plaintiffs' Android Data mark.

**ANSWER:**     Denied.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1.     That, pursuant to 15 U.S.C. § 1116, Defendants Google, Inc., Android, Inc., and members of the Open Handset Alliance, their agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting for, with, by, through or under authority from Defendant, including and each of them, be preliminarily and permanently enjoined from:  (a) using the Android trademark

or any colorable imitation thereof; (b) using any trademark that imitates or is confusingly similar to or in any way similar to Plaintiffs' trademark Android Data, or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Plaintiffs' products or their connectedness to Defendant.

2.   That, pursuant to 15 U.S.C. § 1116, Defendants be required to file with the Court and serve on Plaintiffs within thirty (30) days after entry of the Injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the Injunction;

3.   That, pursuant to 15 U.S.C. § 1117(c)(2), the Court find that the use of the counterfeit mark was willful and award Plaintiffs statutory damages of $2,000,000 against each of the Defendants per counterfeit mark per type of good or service sold;

4.   That, pursuant to 15 U.S.C. § 1117, Defendants be compelled to account to Plaintiff for any and all profits derived by them from their illegal acts complained of herein;

5.   That the Defendants be ordered pursuant to 15 U.S.C. § 1118 to deliver up for destruction all computer source or executable code that reference or display the Android mark, and all containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material, instruction manuals or the like in possession, custody or under the control of Defendants bearing a trademark found to infringe Plaintiffs' Android Data trademark rights, as well as all plates, matrices, and other means of making the same;

6.   That the Court declare this to be an exceptional case and award Plaintiffs its full costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

7.   That the Court grant Plaintiffs any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 1117;

8.   That the Court grant Plaintiffs any other remedy to which it may be entitled as provided for in 815 ILCS 5 10/3 including injunctive relief, attorney fees, and costs;

9.   For such and other further relief that the court deems just and proper.

**ANSWER:**   Google denies that Plaintiffs are entitled to any relief.

## AFFIRMATIVE DEFENSES

Google raises the following affirmative defenses to the allegations contained in Plaintiffs' FAC:

### First Affirmative Defense

Plaintiffs' claims are barred under the doctrines of laches and/or acquiescence, arising out of Plaintiffs' knowledge of Google's open and notorious use of its ANDROID mark long before filing suit, coupled with Plaintiffs' failure to take any actions to protect their purported rights.

### Second Affirmative Defense

Plaintiffs' claims are barred under the doctrines of unclean hands, arising out of Plaintiffs' commission of fraud before the USPTO and conspiring to defraud Google, as more fully set forth in Paragraphs 22 through 39 and Paragraphs 82 through 92 of Google's Counterclaim.

### Third Affirmative Defense

Plaintiff's claims are barred due to the commission of fraud before the United States Patent and Trademark Office (USPTO) by Plaintiff ADI, by intentionally filing a false Declaration with the USPTO on April 21, 2009 in connection with U.S. Trademark Registration 2,639,556, in which Megan Specht, purported President of ADI, falsely stated under oath that the registered ANDROID DATA mark was "in use in commerce on or in connection with all goods or services listed in the existing registration for this specific class," when she knew or should have known that statement was false, as more fully set forth in Paragraphs 22 through 39 and 82 through 85 of Google's Counterclaim. The USPTO relied solely upon the aforementioned false statement in maintaining that Registration on the Principal Register.

### Fourth Affirmative Defense

Plaintiffs' claims are barred due to the fact that Plaintiffs do not hold any valid or enforceable rights to the ANDROID DATA trademark.

### Fifth Affirmative Defense

Plaintiffs' claims are barred due to the fact that Plaintiffs' purported ANDROID DATA mark is invalid and/or unenforceable.

### Sixth Affirmative Defense

Plaintiffs cannot demonstrate that their rights in their purported ANDROID DATA mark have been damaged or harmed.

### Seventh Affirmative Defense

Plaintiffs fail to state a claim upon which relief may be granted.

Google reserves the right to state additional affirmative defenses upon the further determination of the same.

## COUNTERCLAIM

Counterclaim Plaintiff GOOGLE INC. ("Google"), in support of its counterclaim against Counterclaim Defendants ERICH SPECHT ("Specht"), ANDROID DATA CORPORATION ("ADC"), and THE ANDROID'S DUNGEON, INCORPORATED ("ADI"), collectively referred to as "Counterclaim Defendants," alleges as follows:

### PARTIES

1.      Google is a Delaware corporation with its principal place of business located in Mountain View, California.

2.      Specht is an individual, on information and belief, residing in Palatine, Illinois, and on information and belief is the sole shareholder of both ADC and ADI.

3.      ADC is an Illinois corporation having a mailing address in Palatine, Illinois.

4.      ADI is an Illinois corporation having a mailing address in Palatine, Illinois.

### JURISDICTION AND VENUE

5.      This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §2201, the Lanham Act, 15 U.S.C. §§1051 *et seq.*, and the common law of the State of Illinois.

6.      This Court has subject matter jurisdiction over this counterclaim under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367.

7.      This Court has personal jurisdiction over Counterclaim Defendants by virtue of, among other bases, their residence within the State of Illinois and their commission of wrongful acts within the State of Illinois, all commensurate with the United States and Illinois Constitutions, and by virtue of their having filed their Complaint and First Amended Complaint in this Court, so as to submit themselves to the jurisdiction and process of this Court.

## RELEVANT FACTUAL BACKGROUND

**A.      Google's Use of the ANDROID Mark**

8.      Google, amongst other things, develops and maintains an Internet search engine that bears its name.

9.      In July 2005, Google acquired a start-up company known as Android, Inc., which was engaged in the development of an open-source operating system software directed to mobile devices.

10.      After acquiring Android, Inc., Google continued developing the aforementioned operating system software for several years.  In 2007, as Google prepared for the public release of its operating system software platform, Google conducted a thorough trademark search to determine whether the trademark ANDROID was available for use in association with the operating system.

11.      As part of that investigation, Google discovered U.S. Trademark Registration No. 2,639,556, for the mark ANDROID DATA identified for use in association with "computer e-commerce software to allow users to perform electronic business transactions via a global computer network," which had been issued to ADC by the USPTO on October 22, 2002 (the "'556 Registration").

12.      Upon discovering the '556 Registration, Google conducted an investigation to determine whether the registered ANDROID DATA mark was being used in commerce. Google's investigation found no usage whatsoever of the ANDROID DATA mark by either ADC or any other entity or licensee.  Moreover, Google's investigation revealed that (i) ADC was out of business, having been dissolved by the Illinois Secretary of State on May 1, 2004, (ii) ADC's former website at www.androiddata.com had been inactive since at least March 2005,

(iii) ADC had no current website, and (iv) ADC had no listed business address or telephone number. Based on the results of that investigation, Google rightfully concluded that ADC had abandoned the ANDROID DATA mark.

13.     On October 31, 2007, Google filed an intent-to-use application to register the ANDROID mark, for use in association with computer hardware and software. That application was accorded Serial No. 77/318,565 by the United States Patent and Trademark Office ("USPTO").

14.     On November 5, 2007, Google made its first public disclosure of the ANDROID mark in association with a press release announcing the development and release of the ANDROID software platform. Since that date, Google has openly and notoriously used the ANDROID trademark in commerce in association with its distribution of the ANDROID software and source code.

**B.     Counterclaim Defendants' Abandonment of the ANDROID DATA Mark**

15.     On June 4, 2000, ADC filed an application with the USPTO for registration of the mark ANDROID DATA in association with "computer software and internet services." That application was accorded Serial No. 78/011,167. On January 30, 2001, after reviving the application from abandonment, ADC amended the Identification of Goods in its application to read "computer e-commerce software to allow users to perform electronic business transactions via a global computer network."

16.     On October 22, 2002, the USPTO issued the '556 Registration to ADC.

17.     By the Fall of 2002, however, ADC had ceased doing business and was no longer using the ANDROID DATA mark, and Specht was actively seeking to sell off the remaining assets of ADC, which consisted primarily of software source code and related copyrights.

18. By the end of 2002, if not well earlier, ADC had ceased all use in commerce of the ANDROID DATA trademark, and neither Specht, ADC, ADI nor any other related entity had any intent to resume the commercial use of the ANDROID DATA trademark.

19. During 2003, Specht continued his efforts to sell off the remaining assets of ADC. Neither ADC nor Specht used the ANDROID DATA trademark in commerce in association with the sale of any software products or related services during 2003.

20. ADC failed to file an annual report with the Illinois Secretary of State for the year 2003, as a result of which ADC was dissolved by the Illinois Secretary of State on May 1, 2004.

21. Neither Specht, ADC, ADI nor any other related entity or licensee used the ANDROID DATA mark in commerce in association with the sale of any software products or related services during the period from January 1, 2003, to the present, or had any *bona fide* intent to resume the commercial use of the ANDROID DATA mark.

**C. Counterclaim Defendants' Unlawful Conduct**

22. Under §8 of the Lanham Act, 15 U.S.C. §1058, the '556 Registration was subject to cancellation by the USPTO due to non-use, unless ADC filed an affidavit with the USPTO on or before April 22, 2009, attesting either that the ANDROID DATA mark was in use in commerce in association with the goods identified in the '556 Registration, or that the mark was not in use in commerce due to special circumstances which excused such nonuse. Such an affidavit is often referred to as a "§8 Declaration."

23. On information and belief, prior to April 20, 2009, while Specht was aware of Google's use of the ANDROID mark, Specht understood that neither he nor ADC or ADI had any rights in the ANDROID DATA trademark, and therefore Specht had no intention of filing a §8 Declaration for the '556 Registration.

24.     On information and belief, on or about April 20, 2009, Specht received a telephone call from an individual named Kenneth Robblee ("Robblee"), who informed Specht that he had an interest in purchasing certain assets of Android Data Corporation, particularly the '556 Registration.

25.     On information and belief, Specht and Robblee had several telephone conversations on April 20 and 21, 2009, during which Robblee and Specht discussed (i) Specht's abandonment of the ANDROID DATA trademark well prior to 2005, (ii) Specht's belief that neither he nor ADC or ADI retained any rights in that mark, (iii) the fact that the '556 Registration would be cancelled if Specht did not file a §8 Declaration by April 22, 2009, the last day of the grace period, and (iv) Google's use of the mark ANDROID in association with its distribution of the Android software platform.

26.     In addition, on or about April 21, 2009, Robblee placed a call to Google's legal department and left a voicemail stating that he was "working with Erich Specht with regards to a trademark for Android," that he understood "that Google has an interest in obtaining that [trademark]," and that "what we might agree to here will determine whether or not he [Specht] renews it or not."

27.     On information and belief, Robblee's intention in contacting Google was to facilitate some sort of agreement between Specht and Google in which Google would purchase or license Specht's, ADC's and/or ADI's purported rights in the ANDROID DATA trademark, in return for monetary consideration to be paid to Specht and/or Robblee.

28.     Based on Specht's conversations with Robblee, and notwithstanding his knowledge that neither he nor ADC or ADI retained any rights in the ANDROID DATA trademark, on information and belief Counterclaim Defendants decided to undertake a fraudulent

scheme to sell or license their non-existent trademark rights to Google in return for monetary consideration from Google. Counterclaim Defendants realized that, in order to carry out this scheme, they needed to take immediate action to prevent the cancellation of the '556 Registration under 15 U.S.C. §1058, and to make it appear to the world that Specht, ADC and/or ADI had continued using the ANDROID DATA trademark in commerce during the period from 2002 through 2009.

29.     On April 21, 2009, Specht submitted a Notice of Recordation to the USPTO, requesting that the USPTO record a purported assignment of the '556 Registration from ADC to ADI. Notably, the purported assignment document that Specht submitted to the USPTO was dated April 28, 2004 -- three (3) days prior to the date on which ADC was dissolved by the Illinois Secretary of State. On information and belief, the purpose of recording the purported assignment was to fabricate a chain of title for the '556 Registration which did not involve ownership of that registration by a corporation that had been dissolved by the Illinois Secretary of State.

30.     On April 21, 2009, ADI filed a §8 Declaration for the '556 Registration with the USPTO, which purported to have been electronically signed by Megan Specht, President of ADI and wife of Erich Specht (the "'556 §8 Declaration"). On information and belief, Megan Specht had no involvement with the filing of the '556 §8 Declaration, and her electronic signature was placed on that document by Specht or some other unknown person.

31.     The '556 §8 Declaration stated, *inter alia*, that the ANDROID DATA mark was "in use in commerce on or in connection with **all** goods or services listed in the existing registration for this specific class; or, the owner is making the listed excusable nonuse claim."

32.     The '556 §8 Declaration purportedly executed by Megan Specht included a sworn declaration that "all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true."

33.     The statement in the §8 Declaration that the ANDROID DATA mark was in use in commerce on or in connection with all goods or services listed in the registration was false, because as of April 21, 2009 neither ADI nor any related company or licensee of ADI was using the ANDROID DATA mark in commerce on or in connection with any of the goods listed in the Registration.

34.     On April 20, 2009, Specht registered the domain name <android-data.com>, and activated a new website that was identical to the website that had previously been located at the URL www.android-data.com, and which had been "offline" for at least four years.

35.     On April 23, 2009, Specht filed an Application for Reinstatement of the corporate entity ADC with the Illinois Secretary of State, together with annual reports for the years 2003, 2004, 2005, 2006, 2007 and 2008.

36.     On April 28, 2009, after having taken improper measures to prevent the cancellation of the '556 Registration by the USPTO, Counterclaim Defendants filed a Complaint in this Court, naming as defendants Google, the OHA, and each member of the OHA (although many of the OHA members were not properly identified in the Complaint).  That Complaint accused each of the then-named defendants of infringing the '556 Registration through their purported use of the ANDROID trademark.

37.     As of the filing of the Complaint on April 28, 2009, Specht, ADC and ADI lacked a good faith basis for asserting a claim of trademark infringement against any of the then-named defendants.  Any rights which any of the Counterclaim Defendants may have possessed in the

ANDROID DATA trademark had been extinguished due to the abandonment of that mark in 2002.

38.     On April 29, 2009, the USPTO issued a Notice of Acceptance of §8 Declaration, indicating that the '556 §8 Declaration had been accepted by the USPTO, and therefore the '556 Registration would not be cancelled under 15 U.S.C. §1058.

39.     On or about April 30, 2009, counsel for Counterclaim Defendants was authorized by Counterclaim Defendants to give an interview to Forbes.com regarding this litigation. Forbes.com subsequently published an online article dated April 30, 2009 and entitled "Google's Android Angst," in which the following statement was attributed to Counterclaim Defendants:

> "Basically, it [Google's ANDROID mark] is a stolen name," says Specht's attorney, Martin Murphy.  "It's our trademark, and Google is using it as if it's theirs."

## COUNT I

## <u>Declaratory Judgment of Invalidity and Unenforceability of Purported Trademark Rights Due to Abandonment</u>

40.     Google repeats and realleges the allegations contained in the foregoing paragraphs 1-39.

41.     This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §2201.

42.     Specht, ADC and/or ADI purport to own rights in and to the ANDROID DATA trademark, and have asserted those purported rights as grounds for their trademark infringement, unfair competition and deceptive trade practices claims asserted against Google.

43.     Google denies that it has infringed any valid and enforceable trademark rights owned by Specht, ADC and/or ADI, or has engaged in any acts of unfair competition or deceptive trade practices, as alleged in the FAC.

44.     Prior to Google's adoption of the ANDROID mark in 2007, Counterclaim Defendants abandoned any rights they may have had in the ANDROID DATA trademark, through their express statements to others as to ceasing commercial use of the mark and the associated conduct.

45.     Prior to Google's adoption of the ANDROID mark in 2007, Counterclaim Defendants abandoned any rights they may have had in the ANDROID DATA trademark, through their extended period of non-use of the ANDROID DATA trademark, coupled with their intent not to resume the commercial use of that mark.

46.     Any rights which Specht, ADC and/or ADI may have possessed in the purported ANDROID DATA trademark are invalid and unenforceable as a result of the abandonment of that mark.  Accordingly, Google is entitled to a declaratory judgment that Specht's, ADC's and/or ADI's purported ANDROID DATA mark is invalid and unenforceable as a result of such abandonment.

47.     An actual and justiciable controversy exists between Google and Specht, ADC and/or ADI with respect to the alleged infringement by Google of the ANDROID DATA trademark, as alleged by Specht, ADC and/or ADI.  Accordingly, said purported trademark rights of the Counterclaim Defendants are invalid and unenforceable against Google.

### COUNT II

### Declaratory Judgment of Invalidity and Unenforceability of Purported Trademark Rights Due to Fraudulent Procurement of Registration

48.     Google repeats and realleges the allegations contained in the foregoing paragraphs 1-47.

49.     This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §2201.

50. Specht, ADC and/or ADI purport to own rights in and to the ANDROID DATA trademark, and have asserted those purported rights as grounds for their trademark infringement, unfair competition and deceptive trade practices claims asserted against Google

51. Any rights which Specht, ADC and/or ADI may have had in the purported ANDROID DATA trademark are invalid and unenforceable due to ADI's commission of fraud before the USPTO. ADI's statement under oath in the §8 Declaration, amongst others, that the ANDROID DATA mark was in use in commerce as of April 21, 2009 was false, ADI knew or should have known that the statement was false, and the statement was material in that the USPTO would not have accepted the §8 Declaration without it. Accordingly, Google is entitled to a declaratory judgment that Specht's, ADC's and/or ADI's purported ANDROID DATA mark is invalid and unenforceable as a result of ADI's commission of fraud before the USPTO.

52. An actual and justiciable controversy exists between Google and Specht, ADC and/or ADI with respect to the alleged infringement by Google of the ANDROID DATA trademark, as alleged by Specht, ADC and/or ADI. Accordingly, declaratory relief is both appropriate and necessary to establish that said purported trademark rights of the Counterclaim Defendants are invalid and unenforceable against Google.

**COUNT III**

**<u>Declaratory Judgment of Non-Infringement of Purported Trademark Rights</u>**

53. Google repeats and realleges the allegations contained in the foregoing paragraphs 1-52.

54. This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §2201.

55.     Specht, ADC and/or ADI purport to own rights in and to the ANDROID DATA trademark, and have asserted those purported rights as grounds for their trademark infringement, unfair competition and deceptive trade practices claims asserted against Google

56.     Even if Specht, ADC and/or ADI possessed any valid rights in the ANDROID DATA trademark at the time of Google's adoption of the ANDROID mark in 2007, Google's subsequent use of the ANDROID mark cannot constitute trademark infringement, unfair competition or deceptive trade practices, inasmuch as no likelihood of confusion exists between Google's use of the ANDROID mark and Counterclaim Defendants' purported use of the ANDROID DATA mark.

57.     Google's ANDROID mark and Counterclaim Defendants' purported ANDROID DATA mark are significantly different in terms of sight, sound, connotation and commercial impression, such that no likelihood of confusion can exist between the two.

58.     Google's products and/or services offered in association with the ANDROID mark travel in entirely different channels of trade and are encountered by different classes of consumers than any products and/or services offered at any time by Specht, ADC and/or ADI under the purported ANDROID DATA trademark.

59.     No actual confusion exists or has occurred between Google's use of the ANDROID mark and Specht's, ADC's and/or ADI's purported ANDROID DATA trademark.

60.     In view of the facts alleged above, no likelihood of confusion exists between Google's use of the ANDROID mark and Counterclaim Defendants' purported ANDROID DATA mark.  Accordingly, Google is entitled to a declaratory judgment that its use of the ANDROID mark has not infringed or violated, and does not infringe or violate, any rights which Counterclaim Defendants may have in their purported ANDROID DATA mark.

61.     An actual and justiciable controversy exists between Google and Specht, ADC and/or ADI with respect to the alleged infringement by Google of the ANDROID DATA trademark, as alleged by Specht, ADC and/or ADI.   Accordingly, declaratory relief is both appropriate and necessary to establish that Google has not infringed any of Specht's, ADC's and/or ADI's purported trademark rights or engaged in unfair competition or deceptive trade practices.

## COUNT IV

## Cancellation of U.S. Trademark Registration No. 2,639,556

62.     Google repeats and realleges the allegations contained in the foregoing paragraphs 1-61.

63.     This is a claim for cancellation of U.S. Trademark Registration No. 2,639,556 (the "Registration") arising under 15 U.S.C. §1064.

64.     On April 21, 2009, ADI submitted a Declaration of Use of Mark in Commerce Under §8 to the USPTO, which stated, *inter alia*, that "the mark is in use in commerce on or in connection with **all** goods or services listed in the existing registration for this specific class; or, the owner is making the listed excusable nonuse claim."

65.     ADI, through its President, Megan Specht, executed the §8 Declaration, and in so doing swore under oath that "all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true."

66.     The statement in the §8 Declaration that the ANDROID DATA mark was in use in commerce on or in connection with all goods or services listed in the registration was false, because neither ADI nor any related entity or licensee of ADI was using the ANDROID DATA mark in commerce on or in connection with any of the goods listed in the Registration.

67.     Said false statement was made with the knowledge that the statement was false, or was made recklessly as a positive assertion, and without knowledge of the truth of such statement.

68.     Said false statement was made with the intent to induce the USPTO to maintain the '556 Registration on the Principal Register under §8 of the Trademark Act, 15 U.S.C. §1058, and, reasonably relying upon the truth of said false statement, the USPTO did in fact maintain the '556 Registration on the Principal Register.

69.     In view of the foregoing, the '556 Registration is subject to cancellation under 15 U.S.C. §1064 on the basis that it was obtained fraudulently.

70.     The ANDROID DATA trademark was abandoned by Specht, ADC and/or ADI by at least the end of 2002 through their having ceased all commercial use of that trademark, coupled with their lack of any *bona fide* intent to resume using that trademark commercially.

71.     In view of the foregoing, the '556 Registration is subject to cancellation under 15 U.S.C. §1064 on the basis that the registered ANDROID DATA mark was abandoned.

72.     Google has been and will continue to be damaged by the continued maintenance of the '556 Registration on the Principal Register, because ownership of the '556 Registration has been asserted as grounds for Specht's, ADC's and/or ADI's unfounded claims of trademark infringement, unfair competition and deceptive trade practices against Google.

## COUNT V

### Fraudulent Procurement of Registration Under 15 U.S.C. §1120

73.     Google repeats and realleges the allegations contained in the foregoing paragraphs 1-72.

74.     ADI's submission of the false '556 §8 Declaration to the USPTO constituted the procurement of a registration by a false or fraudulent declaration or representation, in violation of 15 U.S.C. §1120.

75.     Google has been damaged by the submission of the false and fraudulent declaration, by at least the following: (i) incurring attorney fees and costs associated with its defense of this litigation, (ii) having its reputation impugned and damaged through widespread coverage of Specht's, ADC's and ADI's allegations in the mainstream and online media and throughout the "blogosphere," and (iii) impairment of its business relationships with members of the OHA and others.

76.     Specht's and ADI's false and fraudulent representations to the USPTO have caused irreparable harm, damage and injury to Google.

## COUNT VI

## Defamation

77.     Google repeats and realleges the allegations contained in the foregoing paragraphs 1-76.

78.     The statements to Forbes.com on Counter Defendants' behalf that Google's ANDROID trademark is "[b]asically . . . a stolen name" and "[i]t's our trademark, and Google is using it as if it's theirs" comprise false statements which assail Google's business methods, impute the want of integrity in Google's conduct of its business, and prejudice Google in its trade, and therefore comprise defamation *per se*.

79.     By making those statements to Forbes.com, Counter Defendants published those statements to a third party without any privilege to do so.

80.     The defamatory statements were made with knowledge of their falsity and/or with reckless disregard for their truth.

81.     The defamatory statements have caused irreparable harm, damage and injury to Google, in the form of injury to its reputation and impairment of its business relationships with members of the OHA and others.

## COUNT VII

### Conspiracy to Commit Fraud Before the USPTO

82.     Google repeats and realleges the allegations contained in the foregoing paragraphs 1-81.

83.     On information and belief, Specht, ADC and ADI, amongst others, conspired to unlawfully prevent the cancellation of the '556 Registration under §8 of the Lanham Act, 15 U.S.C. §1058, due to Specht's, ADC's and/or ADI's non-use of the ANDROID DATA trademark in commerce.

84.     In furtherance of that conspiracy, Specht, ADC and ADI, amongst others, carried out at least the following unlawful acts: (i) the submission of a false and fraudulent §8 Declaration to the USPTO; and (ii) the fabrication of a trademark assignment agreement and subsequent submission of same to the USPTO for recordation.

85.     The acts complained of hereinabove have caused irreparable harm, damage and injury to Google.

## COUNT VIII

### Conspiracy to Defraud Google

86.     Google repeats and realleges the allegations contained in the foregoing paragraphs 1-85.

87.     On information and belief, Specht, ADC and ADI, among others, conspired to attempt to sell or license Specht's, ADC's and/or ADI's purported rights in the ANDROID DATA mark to Google, in return for monetary consideration, with the knowledge that Specht, ADC and ADI had abandoned any rights that any of them may once have had in the ANDROID DATA mark and therefore possessed no such rights to sell or license.

88.     The goal of said conspiracy was to defraud Google by inducing Google to provide valuable consideration to Counterclaim Defendants in return for the assignment or license of Specht's, ADC's and/or ADI's non-existent rights in the ANDROID DATA mark.

89.     In furtherance of said conspiracy, Robblee contacted Google with the intent to facilitate an agreement in which Google would purchase or license Specht's, ADC's and/or ADI's purported rights in the ANDROID DATA trademark, in return for monetary consideration to be paid by Google.

90.     In furtherance of said conspiracy, Counterclaim Defendants filed this lawsuit against Google, with the expectation that they would share in any monetary recovery or settlement proceeds obtained from Google.

91.     In furtherance of said conspiracy, Counterclaim Defendants, through their counsel, made untrue and defamatory statements to the media, with the intention of creating negative publicity for Google in the hopes of leveraging such negative publicity into a favorable settlement involving an assignment or license of Specht's, ADC's and/or ADI's purported rights in the ANDROID DATA trademark to Google, in return for monetary consideration.

92.     The acts complained of hereinabove have caused irreparable harm, damage and injury to Google.

WHEREFORE, Google prays that this Court grant it the following relief:

A.     A declaration that (i) Specht's, ADC's and/or ADI's purported rights in and to the ANDROID DATA trademark are invalid and unenforceable as a result of ADC's abandonment of the ANDROID DATA trademark, (ii) Specht's, ADC's and/or ADI's purported rights in and to the ANDROID DATA trademark are invalid and unenforceable due to ADI's and Specht's commission of fraud on the USPTO through the knowing submission of a false §8 Declaration, and (iii) even if Specht, ADC and/or ADI possessed any valid, enforceable rights in the ANDROID DATA trademark, Google's use of the ANDROID trademark does not constitute trademark infringement, unfair competition, or deceptive trade practices.

B.     An order directing the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 2,639,556 under 15 U.S.C. §1064, on the basis that said registration was maintained through the commission of fraud and that Specht, ADC and/or ADI have abandoned the registered ANDROID DATA trademark;

C.     A finding that ADI and Specht violated 15 U.S.C. §1120 by the submission of a false and fraudulent §8 Declaration to the USPTO;

D.     A finding that Counterclaim Defendants have engaged in the defamation of Google;

E.     A finding that Specht, ADI and ADC have engaged in an unlawful conspiracy to commit fraud before the USPTO;

F.     A finding that Specht, ADI and ADC have engaged in an unlawful conspiracy to defraud Google;

G.     An award to Google of monetary damages in an amount to be fixed by the Court in its discretion as just;

H.     A finding that this is an exceptional case under 15 U.S.C. §1117(a), together with an award to Google of its attorneys' fees and its costs and expenses of litigation, pursuant to 15 U.S.C. §1117(a) and (b); and

I.     Such other and further relief as the Court may deem just, proper and equitable under the circumstances.

Respectfully submitted,

Dated:  August 18, 2009

/s Herbert H. Finn
Herbert H. Finn (ARDC #6205685)
Richard D. Harris (ARDC #1137913)
Jeffrey P. Dunning (ARDC #6273364)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL  60601
(312) 456-8400

COUNSEL FOR GOOGLE INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing GOOGLE INC.'S ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIM with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated:  August 18, 2009

/s Herbert H. Finn