**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERICH SPECHT, an individual and doing business as ANDROID DATA CORPORATION, and THE ANDROID'S DUNGEON INCORPORATED, | ) ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) | |
| v. | ) ) | Civil Action No. 09-cv-2572 |
| GOOGLE INC., | ) ) | Judge Harry D. Leinenweber |
| Defendant/Counter-Plaintiff. | ) | Magistrate Judge Jeffrey Cole |

### SECOND AMENDED COMPLAINT

Plaintiffs Erich Specht ("Specht"), Android Data Corporation ("ADC") and The Android's Dungeon Incorporated ("ADI") (collectively referred to as "Plaintiffs"), by and through their attorneys, as and for their Second Amended Complaint against Defendant Google Inc. ("Google") allege as follows.

### THE PARTIES

1.      Plaintiff Specht is a resident of the Village of Palatine, Illinois.  ADC and ADI are Illinois domestic corporations organized and existing under the laws of the State of Illinois and having a principal place of business in the Village of Palatine, Illinois.

2.      Defendant Google is a Delaware corporation registered to do business as a foreign corporation in Illinois.

### JURISDICTION AND VENUE

3.      This is a civil action alleging trademark infringement and unfair competition arising under §§32 and 43 of the Lanham Act, 15 U.S.C. §§1114(1) (trademark infringement), 1125(a) (unfair competition), as well as a violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, common law trademark infringement and contributory infringement.

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1338(a), 28 U.S.C. §1338(b) and supplemental jurisdiction over the state law claims alleged herein under 28 U.S.C. §1367(a). The court also has subject matter jurisdiction pursuant to 28 U.S.C.A. § 1332, because this action is between citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court has personal jurisdiction over Google because it maintains an office in Chicago, Illinois, has transacted business in this State, and it is registered to do business in Illinois. The Court also has jurisdiction over Google pursuant to the Illinois long arm statute 735 ILCS 5/2-209(a)(2).

6. Venue is proper in this district under 28 U.S.C. §1391(b) and (c).

## FACT COMMON TO ALL COUNTS

7. Plaintiff ADC is an Illinois corporation in good standing. It was incorporated on December 30, 1998, by Specht, its sole officer, director and shareholder. At all relevant times, Specht has been an officer of ADC.

8. Plaintiff ADI is an Illinois corporation in good standing. It was incorporated on March 5, 2001, by Specht, its sole shareholder. At all relevant times, Specht has been an officer of ADI.

9. Plaintiff Specht is a software developer and internet application service provider.

10. Since at least 1999, Specht has developed and offered for sale computer software and hardware related products and services under the trademarks "Android Data," "Android Server" and "Android Data Web Editor" (collectively, the "Android Marks"). Plaintiffs hold copyrights filed with the United States Copyright Office on Android Server software and Android Data Web Editor software, which are versions of Specht's Android Data software suite, as well as

Android Data - Version 5, the current version of the Android Data software product line.  Specht's Android Data software suite (the "Android Software") enables the remote administration of websites including secure data transfer, management and categorization of products, image processing, online surveys, email campaigns, document transformation, and the like.  Computer hardware and software services offered by Plaintiffs include web page design, custom software application development, and consulting on software and hardware issues.

11.    Plaintiff Specht, through his wholly owned corporation ADI, continues to use, develop and offer for sale the Android Software and related services under the Android Marks.

12.    The Android Software implements advanced caching algorithms that allow for greater efficiency of web and database servers, and integrates on-line and off-line database servers.

13.    Beginning in 1999, the Android Software was intended to and has been used in commerce by customers who transact hundreds of millions of dollars in worldwide transactions, including tens of millions in e-commerce over the worldwide web using the Android Software.

14.    Specht chose the word "Android" for the Android Marks to communicate the seamless, almost robotic-like, bi-directional communication of data between a client and a data center in a remote location.

15.    "Android Data" and the other Android Marks are inherently distinctive and/or have acquired distinctiveness through use.

16.    Specht is and has been further developing the Android Software as well as preparing to release additional software products in the near future under one or more of the Android Marks.

17.    On June 4, 2000, Specht, on behalf of ADC, filed an application with the United States Patent and Trademark Office (the "PTO") for the mark "Andro id Data" (Serial No. 78011167). A copy of the application is attached hereto as Exhibit A.

18.    On October 22, 2002, the PTO granted ADC's registration of the mark "Android Data" on the Principal Register, Registration No. 2,639,556. Registration No. 2,639,556 is *prima facie* evidence of the validity and ownership of, and is constructive notice of ownership of, the Android Data mark as provided by 15 U.S.C. §§1057(b) and 1072. As a condition of approval, the PTO required that the following language be inserted into the application: "No claim is made to the exclusive right to use 'Data,' apart from the mark as shown." This language indicates that the dominant word in the mark is "Android" with "Data" being a descriptive or non-dominant word. As stated in Registration No. 2,639,556, the Android Data mark identifies "computer e-commerce software to allow users to perform electronic business transactions via global computer network," in International Class 9 (U.S. Classes 21, 23, 26, 36, and 38). A copy of Registration No. 2,639,556 is attached hereto as Exhibit B.

19.    Effective on or about December 26, 2002, ADC transferred ownership of the Android Software and Android Marks to ADI.

20.    On December 1, 2003, thirteen months after the PTO granted Registration No. 2,639,556 for the Android Data mark, Andy Rubin ("Rubin") founded a company called Fotofarm, Inc., for the purpose of creating a digital camera. On February 12, 2004, Fotofarm, Inc. registered to do business in the State of California. Unable to secure venture capital funding, Rubin tabled the digital camera idea and went to work on an open source platform for mobile phone devices which he called Android (the "Android Platform").

21.    In 2004, Rubin assembled a group of engineers including Andrew McFadden ("McFadden") and Chris White ("White"), whom Rubin had worked with at Web TV, and product planners including Nick Sears ("Sears") and Rich Miner ("Miner"), whom Rubin had worked with while he was at Danger, Inc. (the foregoing individuals are collectively referred to herein as the "Android cofounders"). On or about June 18, 2004, Fotofarm, Inc. changed its name to Android Research, Inc. On or about April 6, 2005, Android Research, Inc. changed its name to Android, Inc. At all times, Rubin was the Chief Executive Officer of Android, Inc. and its predecessor companies (hereinafter, "Android, Inc.").

22.    Beginning in 2004, Android Research, Inc. began using the Android name in commerce when it solicited funding in the form of venture capital for Android, including $100,000 invested by Steve Perlman, whom Rubin, White and McFadden had previously worked with at Web TV; negotiated a partnership deal with Clearwire, a wireless broadband internet service provider, and its CEO, Craig McCaw; and negotiated a sale of the Android Platform to Google. In or about July, 2005, Google acquired Android, Inc. and, thereafter, the Android cofounders went to work for Google.

23.    In addition to their share of the sale price and the employment given to them at Google, the Android cofounders were able to continue their work on the Android Platform.

24.    As part of its purchase of Android Inc., Google acquired assets and liabilities from Android, Inc. including, without limitation, its software source code, goodwill, internet domain names, intellectual property rights and liabilities and key employees, including engineers and product planners.

25.    Google has since used these same assets in violation of Plaintiffs' rights.

26.     At Google, Rubin is responsible for managing the development of the Android Platform.   Rubin has overseen and has personal knowledge regarding all aspects of the development of the Android Platform by Google, including the acquisition of Android, Inc. and the creation of the Android Platform.

27.     Sears is responsible for Google's business development concerning the Android Platform.

28.     Miner is a group manager for Google, with duties concerning the Android Platform.

29.     McFadden is a senior software architect for the Android Platform.

30.     White left the employ of Google in October 2006.  While at Google, his duties were primarily those of a software engineer in the development of the Android Platform.

31.     In or about, October 2007, and before it filed its trademark application for the mark "Android," Google hired a private contractor to perform a trademark search.  The search result disclosed Plaintiffs' ownership of the Android Data mark and Plaintiffs' contact information.

32.     On October 31, 2007, Google filed an application with the PTO for the mark "Android," Serial No. 77318565 (the "Google Application").  A copy of the Google Application is attached hereto as Exhibit C.  The goods and services identified under the Google Application were International Class 9, computer hardware and software.  The Google Application asserted an "intent to use" the mark "Android" as follows:  "The applicant has a bona fide intention to use through the applicant's related company or licensee the mark in commerce or in connection with the identified goods and/or services."  Thus, Google was seeking the exclusive right to use and license the mark "Android" in commerce or in connection with any software or hardware use or product.

33.   On November 5, 2007, Google announced the formation of the Open Handset Alliance (the "OHA"), a partnership or business alliance consisting of dozens of firms that include Aplix (www.aplixcorp.com), Ascender Corporation (www.ascendercorp.com), Audience (www.audience.com), Broadcom (www.broadcom.com), China Mobile (www.chinamobile.com), eBay (www.ebay.com), Esmertec (www.esmertec.com), Google (www.google.com), HTC (www.htc.com), Intel (www.intel.com), KDDI (www.kddi.com), Living Image (www.livingimage.jp), LG (www.lge.com), Marvell (www.marvell.com), Motorola (www.motorola.com), NMS Communications (www.nmscommunications.com), Noser (www.noser.com), NTT DoCoMo, Inc. (www.nttdocomo.com), Nuance (www.nuance.com), Nvidia (www.nvidia.com), PacketVideo (www.packetvideo.com), Qualcomm (www.qualcomm.com), Samsung (www.samsung.com), SiRF (www.sirf.com), SkyPop (www.skypop.com), SONiVOX (www.sonivoxrocks.com), Sprint Nextel (www.sprint.com), Synaptics (www.synaptics.com), TAT - The Astonishing Tribe (www.tat.se), Telecom Italia (www.telecomitalia.com), Telefónica (www.telefonica.es), Texas Instruments (www.ti.com), T-Mobile (www.t-mobile.com) and Wind River (www.windriver.com).

34.   Since 2005, the OHA members have been working together on products relating to the Android Platform and on November 12, 2007, the OHA released the Android Software Development Kit ("SDK") as an early look to enable developers to create innovative and compelling applications for the platform. The early look also provided developers with the opportunity to participate in the evolution of the Android Platform by providing feedback throughout the development.

35.    Since 2007, and continuing to the present, without permission from Plaintiffs, Google and the OHA have been releasing software, SDKs, and selling products and services under the mark "Android."

36.    Wikipedia, the free online encyclopedia, reports that "Android is the brain child of Google and the flagship software of the OHA, is based on an open source license and will compete against other mobile platforms from Apple Inc., Microsoft, Nokia, Palm, Research In Motion and Symbia."

37.    On February 14, 2008, the PTO issued an Office Action letter refusing the Google Application for registration of the trademark "Android," citing likelihood of confusion with Plaintiffs' "Android Data" mark (the "February 14 Office Action"). A copy of the February 14 Office Action is attached hereto as Exhibit D.

38.    On August 14, 2008, Google filed a response to the February 14 Office Action. A copy of the response is attached hereto as Exhibit E.

39.    On August 20, 2008, the PTO issued a second Office Action making the refusal of the Google Application final (the "Final Office Action"). A copy of the Final Office Action is attached hereto as Exhibit F.

40.    In the Final Office Action, the PTO explained, among other things, that Google's use of Android encomp asses a broad range of goods and/or services, including "providing e-commerce software" that can be used on mobile devices, computers, computer networks, and global communication networks. The PTO cited likelihood of confusion with Plaintiffs' mark "Android Data," determining that the marks are similar in "sound, appearance, and commercial impression" and share the dominant term, Android, and "the applicant's [Google] goods are

closely related to the registrant's [Plaintiffs] goods and commonly emanate from the same source as the registrant's goods."

41.     On September 23, 2008, one month after the PTO issued its Final Office Action refusing the Google Application, Google issued a press release announcing the release of the "Android 1.0 SDK" product.

42.     The following month, on October 21, 2008, Google released portions of the source code for the Android software to developers and encouraged and gave developers the ability to use the infringing Android operating system to create infringing Android applications for use with Google's infringing products.

43.     On November 20, 2008, Google filed with the PTO a Request For Reconsideration After Final Action which requested reconsideration of the Final Office Action or, in the alternative, suspension of all further action on the Google Application.  A copy of the request is attached hereto as Exhibit G.

44.     On November 20, 2008, Google also filed a Notice of Appeal to the PTO Trademark Trial and Appeal Board.  A copy of the Notice of Appeal is attached hereto as Exhibit H.

45.     On November 21, 2008, the PTO's Trademark Trial and Appeal Board issued an order suspending Google's appeal pending its request for reconsideration.  A copy of the order is attached hereto as Exhibit I.

46.     On November 24, 2008, per Google's request, the PTO issued its Notice of Suspension.  A copy of the Notice of Suspension is attached hereto as Exhibit J.

47.    Despite the fact that the Google Application was refused, and despite the fact that Google requested that all action on the Application be suspended, Google has not taken any action to curtail its infringing activities.

48.    There are millions of products on the market that specifically say "Powered by Android" or otherwise mention Google's Android products and/or services.

49.    In certain promotional materials, Google and/or the OHA members have identified "Android" as a trademark and/or registered trademark of Google.

50.    To date, Google has collected over $50 million in developer registration fees.

51.    The OHA members have sold over one billion dollars worth of equipment bearing the mark "Android," containing Android applications, or running on the Android operating system.

52.    Google and the OHA have released over one million copies of their SDKs and several versions of the Android Platform to over one million software developers, and have participated in the creation of "Android Market," which provides Android phone users with access to more than 8,000 applications to download and install on their phones.

53.    On December 5, 2008, Google and the OHA released "Android 2.0 SDK."

54.    On December 9, 2008, the OHA announced the addition of 14 companies to the OHA including AKM Semiconductor Inc., ARM, ASUSTek Computer Inc., Atheros Communications, Borqs, Ericsson, Garmin International Inc., Huawei Technologies, Omron Software Co. Ltd, Softbank Mobile Corporation, Sony Ericsson, Teleca AB, Toshiba Corporation and Vodafone.

55.     Since 2007, Noser Engineering Inc., a Swiss software engineering company that specializes in both embedded and mobile solutions, working in close collaboration with the OHA, has contributed core functionality to the Android Platform.

56.     On November 12, 2007: OHA member Ascender released the Droid font collection for Android; Google announced a $10 Million Android Developer Challenge; Nuance included its voice recognition software for Android SDK; Synaptics released the Touch Interface Driver for Android SDK; and Sonic Network (aka SONiVox) contributed audioINSIDE Technology to Android SDK.

57.     On December 17, 2007, SiRF Technology Holdings, Inc., a leading provider of GPS-powered location platforms, announced it will rapidly implement key end-to-end location-awareness features needed to enable mobile devices powered by the Android Platform to provide an optimal location awareness experience for consumers.

58.     Since July 2007, Borqs has been working with the members of the OHA designing Android-based handsets with multiple handset partners for China and other markets around the world.  In 2008, several versions of the handsets were released.

59.     In February, 2008, ARM Ltd. demonstrated Android on an early prototype device at the Mobile World Conference in Barcelona, Spain and, in July, 2009, ARM, Ltd., began shipping ARM Smart Mobile Devices with Android.

60.     In September, 2008, , HTC launched the first Google-branded phone, known as the G-1 with T-Mobile after spending more than $10 million and almost three years in development. The handset is manufactured by Taiwan's HTC Corp. and features Qualcomm's dual-core MSM7201A semiconductor with integrated processing, multimedia, graphics capabilities and multi-mode 3G mobile broadband connectivity.

61.     On February 17, 2009, HTC released its first Android phone, known as HTC Magic for Vodafone.

62.     On July 14, 2009, T-Mobile announced the launch of the G-2 Touch (a/k/a "HTC Saphire" or a/k/a "HTC Magic"), its second Android phone, and on September 04, 2009, T-Mobile unveiled the third Android handset from T-Mobile, the T-Mobile Pulse (a/k/a "Samsung Houdini" or "i7500").

63.     On December 9, 2008, AKM Semiconductor, Inc., announced its 6-axis electronic compass hardware and software are available for use in the OHA's Android Platform.

64.     On December 22, 2008, Garmin announce that it intended to release its first handset in the second quarter of 2009.

65.     On February 5, 2009, Broadcom Corporation, a global leader in semiconductors for wired and wireless communications, announced that the software that controls its industry-leading Wi-Fi/Bluetooth/FM combination solution is a standard component of the latest Android operating system. This is the first time that the Android platform includes native support for a multi-functional wireless connectivity solution (or "combo" chip). Open access to portions of Broadcom's combo drivers provides Android developers with a head-start in designing mobile devices and applications that utilize the best in wireless connectivity solutions.

66.     On February 12, 2009, Telefonica launched its first Android handset.

67.     On February 16, 2009, Marvell Semiconductor, Inc. announced that it began shipping application processors for Android powered smart phones to OEM (Original Equipment Manufacturer) and ODM (Original Design Manufacturer) customers.

68.     In February 2009, at the Mobile World Congress in Barcelona, Spain: NVIDIA announced that it has worked closely with Google and the OHA to unleash Android, a complete,

open mobile phone software stack, with the Tegra series of "computer-on-a-chip" processors; Texas Instruments demonstrated Android on OMAP850, an integrated single chip processor, on a live prototype handset and on its flagship applications processor; Wind River and Wind River Linux Commercialization Services demonstrated the base Android platform and native integration with the Texas Instruments OMAP3430 chipset in a new form-factor development platform called the Zoom Mobile Development Kit.

69.     On February 16, 2009, PacketVideo announced the release of OpenCORE 2.0, the first upgrade to its OpenCORE multimedia sub-system for Android. OpenCORE provides the essential media features for device development and enables playing and streaming of standard formats, recording of images and video, and more. OpenCORE 2.0 expands upon PV's initial offering, including the release of a video telephony engine, OpenMAX encoding support and easier integration of OpenMAX cores.

70.     On May 20, 2009 Atheros launched its AR6002 Android compatible products.

71.     On June 16, 2009, Huawei Technologies showcased a new Android smartphone at CommunicAsia 2009 in Singapore – the Android-powered "U8230."

72.     In or about June, 2009, ASUS demonstrated a prototype Android smartbook at Computex trade show.

73.     On June 7, 2009, NTT DoCoMo launched its Android-powered HTC HT-03A handset accompanied by a plan, where one will be able to "access a gaggle of Google services including Google Maps, Gmail, YouTube and Picasa."

74.     On July 1, 2009 Aplix Corporation released the first Java ME product enabled on commercial models on Android.

75.     On August 28th, 2009, in a message sent to the Android Platform mailing list, Andrea Gallo from ST Ericsson reported that the company is in the process of porting Android to their U8500 chipset and that they have successfully made Android run on a dual core chip version of the U8500 and that they've seen no performance loss or instability with the patches they've made to the Android source code.

76.     On September 14, 2009, LG Electronics, announced its first Android mobile device.

77.     Since 2008, Motorola, Inc. has and continues to operate a web site dedicated to Android information, tips, and products.  It has also announced that it will begin selling Android devices in the fourth quarter of 2009.

78.     Google's Android Platform was created through the collective contributions of all of the OHA members.

79.     Google and the OHA members have infringed on Plaintiffs' marks by creating, encouraging, and/or enabling others to create and issue for sale products, services and marketing materials using the mark "Android" on or in connection with such products, services and marketing materials.

80.     OHA member T-Mobile has infringed Plaintiffs' marks by, among other things, marketing and selling mobile phones and related services that use the Google and the OHA's Android software platform, and by using the mark "Android" on or in connection with such products, services and marketing materials.  Google has induced T-Mobile to engage in such infringing conduct and, despite knowing that T-Mobile was engaging in such infringing conduct, Google has continued to supply the goods, services and/or resources necessary to support such infringing conduct by T-Mobile.

81.    OHA member Sprint has infringed Plaintiffs' marks by, among other things, marketing and selling mobile phones and related services that use the Google Android software platform, and by using the mark "Android" on or in connection with such products, services and marketing materials. Google has induced Sprint to engage in such infringing conduct and, despite knowing that Sprint was engaging in such infringing conduct, Google has continued to supply the goods, services and/or resources necessary to support such infringing conduct by Sprint.

82.    OHA member Motorola has infringed Plaintiffs' marks by, among other things, marketing and selling mobile phones and related services that use the Google Android software platform, and by using the mark "Android" on or in connection with such products, services and marketing materials.  Google has induced Motorola to engage in such infringing conduct and, despite knowing that Motorola was engaging in such infringing conduct, Google has continued to supply the goods, services and/or resources necessary to support such infringing conduct by Motorola.

83.    OHA member HTC has infringed Plaintiffs' marks by, among other things, marketing and selling mobile phones and related services that use the Google Android software platform, and by using the mark "Android" on or in connection with such products, services and marketing materials.  Google has induced HTC to engage in such infringing conduct and, despite knowing that HTC was engaging in such infringing conduct, Google has continued to supply the goods, services and/or resources necessary to support such infringing conduct by HTC.

84.    OHA member LG has infringed Plaintiffs' marks by, among other things, marketing and selling mobile phones and related services that use the Google Android software platform, and by using the mark "Android" on or in connection with such products, services and marketing materials.  Google has induced LG to engage in such infringing conduct and, despite

knowing that LG was engaging in such infringing conduct, Google has continued to supply the goods, services and/or resources necessary to support such infringing conduct by LG.

85.    On April 29, 2009, Plaintiffs received a Notice Of Acceptance Of § 8 Declaration informing them that Registration No. 2,639,556 remains in force.  A copy of the notice is attached hereto as Exhibit K.

86.    At no time prior to Plaintiffs' filing this infringement action has Google sought to have Plaintiffs' Registration No. 2,639,556 canceled.

87.    Google has never asked Plaintiffs whether they intended to continue using the Android Data mark or any other Android Marks.

88.    Prior to filing the Google Application, Google did not conduct a thorough trademark search.

89.    Prior to using the mark "Android" in commerce, Rubin, Sears, Miner and White did not conduct a thorough trademark search.

90.    Google has never requested or received Plaintiffs' permission to use the mark "Android."

91.    Fully aware of Plaintiffs' rights to the Android Marks, Google has and is intentionally, openly, notoriously, and without Plaintiffs' authority using the infringing mark "Android" in commerce.

92.    Google, and the OHA members with Google's encouragement and assistance, are continuing to use the mark "Android" on products and in advertising, promotional materials and press releases without disclosing ADI's ownership of the Android Marks and without Plaintiffs' permission.

93.     Google and the OHA members' use of the mark "Android" on their products, and in their product promotion and advertising in print and on the internet, constitutes the use in commerce of a colorable imitation, copy and reproduction of one or more of Plaintiffs' Android Marks.

94.     For the reasons set forth above, Google's use of the mark "Android" was and is deceptive, confusingly similar to the Android Marks and likely to cause confusion, mistake, or deception in the minds of the public as to the source of Plaintiffs' and/or Google's goods and services.

95.     Google's infringement constitutes a willful and malicious violation of Plaintiffs' trademark rights.

96.     Upon learning of the infringing conduct alleged herein, Plaintiffs have moved as expeditiously as possible to protect the Android Marks.

## COUNT I

### Trademark Infringement Under Lanham Act § 3231

### (By ADI Against Google)

97.     The allegations of paragraphs 1 through 96 above are incorporated herein by reference as and for paragraph 97 of this Count I.

98.     As determined by the PTO, Google's proposed mark "Android" is identical to the dominant portion of the Plaintiffs' registered mark "Android Data" in sound, appearance, and commercial impression.

99.     Android Data and the other Android Marks are distinctive, protectable marks.

100.   The contemporaneous use by Plaintiffs and Google of the mark "Android" in commerce is likely to cause confusion among consuming public into believing that the goods they identify come from the same source.

101.   The PTO refused Google's application to register the mark "Android" for computer hardware and software "because of a likelihood of confusion with the mark in U.S. Registration No. 2639556."

102.   Both Google's mark "Android" and Plaintiffs' Android Marks may be used to identify computer hardware, software and related products and services.   The hardware and software products and services may be used in e-commerce and marketed by all parties in commercial settings and over the internet.

103.   To enable use of Google's Android software platform and applications that run on the platform subscribers will need to have a "data plan" with their carrier.

104.   It has been estimated that Google's search engine accounts for approximately 75% of all computer internet searches; Google controls how information is ranked and disseminated through its search engine.

105.   Plaintiffs have expended considerable resources marketing, advertising and promoting goods and services under the Android Data mark and other Android Marks.

106.   Despite that ADI had Android Data registered on the PTO Principal Register, and without authorization from ADI or any other Plaintiff, Google has in the past and is continuing to advertise, manufacture, distribute, sell, offer to sell, and encourage and induce members of the OHA and others to advertise, manufacture, distribute, sell and offer to sell, an ever increasing line of products and services bearing the infringing mark "Android."

107.   This is a reverse confusion case where Google is saturating the market with infringing products and services which will undoubtedly lead to deception, confusion and mistake among the consuming public and trade creating the erroneous impression that the goods and/or services offered by Plaintiffs come from the same origin, or are some type of knockoff of goods and/or services offered or sold by Google and other members of the OHA.

108.   Google's actions and deception have and will continue to deprive ADI and the other Plaintiffs of the ability to control the nature and quality of the products and services they offer, the ability to license any of the Android Marks; and the ability to enter into new and emerging markets under the Android Data mark or other Android Marks, causing irreparable harm to ADI and the other Plaintiffs for which there is no adequate remedy at law.

109.   Google, as successor in interest to Android, Inc.'s intellectual property assets, rights and liabilities, is liable for Android, Inc.'s infringing conduct that occurred as a result of Android, Inc.'s use in commerce of the mark "Android" relating to the Android software platform.

110.   By reason of the foregoing acts, Google is liable to ADI for trademark infringement under 15 U.S.C. § 1114.

## COUNT II

### Unfair Competition Under Lanham Act § 4334

### (By Plaintiffs against Google)

111.   The allegations of paragraphs 1 through 110 above are incorporated herein by reference as and for paragraph 111 of this Count II.

112.   Google's use of the mark "Android" to promote, market, or sell products or services constitutes unfair competition in violation of 15 U.S.C. § 1125(a). Google's use of the mark "Android" is likely to cause confusion, mistake, and deception among consumers. Google's

unfair competition has caused, and will continue to cause, damage to Plaintiffs and is causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

## COUNT III

### Violation of Illinois Deceptive Trade Practices Act, 815 ILCS 510/2

### (By Plaintiffs against Google)

113.   The allegations of paragraphs 1 through 112 above are incorporated herein by reference as and for paragraph 113 of this Count III.

114.   Google's use of the mark "Android" to promote, market, or sell products or services constitutes deceptive practices in violation of 815 ILCS 510/2. Google's use of the mark "Android" in the course of its business or occupation is likely to cause confusion or misunderstanding as to affiliation, connection, or association with Plaintiffs' Android Data mark or other Android Marks. Google's deceptive practices have caused, and will continue to cause, damage to the Plaintiffs and are causing Plaintiffs irreparable harm for which there is no adequate remedy at law.

## COUNT IV

### Common Law Trademark Infringement

### (By Plaintiffs against Google)

115.   The allegations of paragraphs 1 through 114 above are incorporated herein by reference as and for paragraph 115 of this Count IV.

116.   The Android Marks are distinctive, protectable marks.

117.   Plaintiffs are entitled to protect the Android Marks against Google's infringing activities because Plaintiffs' use in commerce of the Android Marks preceded Google's use in commerce of the mark "Android."

118.   Google's use of the mark "Android" to promote, market and sell products or services infringers Plaintiffs' rights under common law because Google's use of the mark "Android" caused, and is likely to cause, confusion among consumers as to affiliation, connection or association with the Android Marks.  Google's infringing conduct has caused, and will continue to cause, damage to Plaintiffs and is causing Plaintiffs irreparable harm for which there is adequate remedy at law.

## COUNT V

### Contributory Infringement

### (By Plaintiffs against Google)

119.   The allegations of paragraphs 1 through 118 above are incorporated herein by reference as and for paragraph 119 of this Count V.

120.   Google has provided OHA members including, among others, T-Mobile, Sprint, Motorola, HTC and LG, with goods or services necessary to the commission of the violations described herein, with the intent that the recipient of the goods or services would put the goods or services to use in committing the violations.  Among other things, Google intentionally induced OHA members including, among others, T-Mobile, Sprint, Motorola, HTC and LG, to infringe Plaintiffs' Android Data mark and/or the other Android marks by:  encouraging and supporting their sales and marketing efforts relating to "Android" based products; and continuing to supply them with Android products and resources despite knowing that they were engaging in infringing activities.

121.   By reason thereof, Google is contributorily responsible for the harm that has resulted to Plaintiffs from the infringing activities of OHA members including, among others, T-Mobile, Sprint, Motorola, HTC and LG.

*   *   *

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Google as follows:

A.    Ordering that Google be permanently enjoined from:  (i) its infringing use of the mark "Android" or any trademark that imitates or is confusingly similar to or in any way similar to Plaintiffs' Android Data mark or other Android Marks; and (ii) supplying OHA members or others with products, services or other resources sufficient to enable infringing activities, or otherwise inducing such infringing activities;

B.    Ordering Google to file with the Court and serve on Plaintiffs within thirty (30) days after entry of any injunction herein, a report in writing under oath setting forth in detail the manner and form in which it has complied with the Court's injunction order;

C.    Ordering Google to account to Plaintiffs for any and all revenues and profits derived from its infringing conduct complained of herein;

D.    Ordering Google to deliver to Plaintiffs, or destroy, all articles bearing the infringing "Android" mark;

E.    Awarding Plaintiffs compensatory damages, including a reasonable license fee, in an amount to be determined at trial;

F.    Awarding Plaintiffs treble damages;

G.    Awarding Plaintiffs punitive damages;

H.    Ordering disgorgement of profits earned as a result of the infringing conduct;

I.    Awarding Plaintiffs their costs of suit and attorneys' fees; and

J.    Granting such further relief as the Court deems just.

22

**PLAINTIFFS DEMAND TRIAL BY JURY
ON ALL ISSUES TRIABLE TO A JURY**

Respectfully submitted:

ERICH SPECHT, individually and doing business
as ANDROID DATA CORPORATION, and THE
ANDROID'S DUNGEON INCORPORATED


By:_____
          One of Their Attorneys


P. Andrew Fleming
John F. Shonkwiler
John B. Haarlow, Jr.
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Doc. #315436

Martin Murphy
2811 RFD
Long Grove, IL 60047
(312) 933-3200

## CERTIFICATE OF SERVICE

John F. Shonkwiler, an attorney, certifies that he caused copies of the foregoing motion to be served by electronically filing the document with the Clerk of Court using the ECF system this 6th day of October, 2009.

/s/ John F. Shonkwiler