**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERICH SPECHT, et al. ) | |
| ) | C.A. No. 09-cv-2572 |
| Plaintiffs, ) | |
| ) | Judge Leinenweber |
| v. ) | |
| ) | Magistrate Judge Cole |
| GOOGLE INC., ) | |
| ) | |
| Defendant. ) | |

**GOOGLE INC.'S MOTION FOR ENTRY OF A PROTECTIVE
ORDER AND MEMORANDUM IN SUPPORT THEREOF**

Defendant Google Inc. ("Google"), by and through its undersigned attorneys, respectfully moves this Court to enter a Protective Order pursuant to Federal Rule of Civil Procedure 26(c). Despite seeking discovery of admittedly sensitive business and financial information from Google, Plaintiffs Erich Specht ("Specht"), Android Data Corporation ("ADC") and The Android's Dungeon, Inc. ("ADI") (collectively "Plaintiffs"), now after a change in counsel, incredibly assert that they "do not believe that any protective order is warranted" in this case. (Ex. 2, Fleming 11/3/09 email). While Plaintiffs may have no concerns if their information is disclosed, Google has grave concerns that its non-public business information may suddenly become public merely because Plaintiffs have filed this unjustified lawsuit.

As the Court recalls, it permitted discovery to initially proceed on a limited basis to address Google's allegations of Plaintiffs' abandonment of its purported ANDROID DATA mark and Plaintiffs' allegations of Google's purported willful infringement. To permit the early exchange of discovery, Plaintiffs' original counsel, Martin Murphy, agreed that all discovery exchanged would be on an "Attorneys' Eyes Only" basis. (Ex. 3, Finn 7/30/09 email). Even

after the appearance of Plaintiffs' new counsel, the parties continue to operate with the understanding that, pending the Court's entry of a formal Protective Order, discovery is being conducted on an "Attorney's Eyes Only" basis. (Ex. 4, Shonkwiler 9/18/09 email).

To formalize the early understanding between the parties, Google proposed an appropriately tailored three-tier Protective Order with separate "Confidential" and "Highly Confidential – Attorney's Eyes Only" levels of confidentiality (Ex. 8). After engaging in the "exercise" of Rule 37 discussions, Plaintiffs now contend that if a protective order is needed at all, certainly no "Attorney's Eyes Only" designation is necessary (Ex. 5, Shonkwiler 10/26/09 e-mail). Simply put, Plaintiffs have now taken the position that their client, Mr. Specht (the admitted alter ego of ADC and ADI), should be permitted access to __all__ of Google's sensitive, proprietary information, notwithstanding Plaintiffs' express allegations that they compete in the same marketplace as Google.

As shown below, Google has established good cause for entry of the proposed Protective Order, and Plaintiffs cannot demonstrate any legitimate reason why Mr. Specht requires access to Google's most sensitive, proprietary information. Accordingly, Google requests that this Court enter its proposed Protective Order, including a "Highly Confidential – Attorney's Eyes Only" level of treatment for such information.

### I. BACKGROUND

As set forth in the parties' pleadings, Google has developed and currently distributes a software product for mobile devices under the trademark ANDROID. Plaintiffs Specht, ADC, and ADI purport to own rights in the trademarks ANDROID DATA, ANDROID SERVER and ANDROID DATA WEB EDITOR (collectively the "Asserted Marks"). Plaintiffs assert, amongst other things, claims of trademark infringement and unfair competition against Google

under the Lanham Act, 15 U.S.C. 1051 *et seq.*, and common law (see Plaintiffs' Second Amended Complaint ("SAC"), Dkt. No. 134).

Google has asserted, amongst other things, counterclaims against Plaintiffs seeking (i) the cancellation of Plaintiffs' asserted federal trademark registration; (ii) a declaratory judgment that Plaintiffs' purported trademark rights are invalid and unenforceable or, in the alternative, not infringed by Google, and (iii) a finding that Plaintiffs have committed acts of unfair competition under the Lanham Act and common law (see Google's Answer to Second Amended Complaint, Affirmative Defenses and Counterclaims, Dkt. No. 136).

### A.   Google's ANDROID Operating Software

In November 2007, Google introduced its ANDROID software product, an open source software platform for mobile devices (Ex. 6). The ANDROID software is an "open source" software product, meaning that software developers, device manufacturers and others are able to freely develop applications for ANDROID-enabled products and to modify the ANDROID software as desired (Id.). Additionally, Google formed an "alliance" of technology and wireless companies led by Google (including Motorola, T-Mobile, Qualcomm, and many others), known as the "Open Handset Alliance" ("OHA"), with the goal of fostering innovation in mobile devices through the development of the ANDROID software (Id.). As part of forming the OHA, Google entered into cooperative marketing agreements with its fellow OHA members.

The mobile device marketplace is highly competitive, and Google's ANDROID operating software platform competes with a number of other software products, including Symbian OS, RIM's Blackberry, Apple's iPhone, and Microsoft's Windows Mobile, among others. Google and its fellow OHA members continue to develop the ANDROID software and to introduce products which utilize the ANDROID software.

### B. Plaintiffs and Their Asserted Marks

Plaintiffs have alleged that Specht is a "software developer and internet application service provider" who "continues to develop software under the name Android Data that enables remote administration of web sites including secure data transfer, management and categorization of products, image processing, online surveys, email campaigns, document transformation, and the like," and that "[c]omputer hardware and software services offered by Plaintiffs include web page design, custom software application development, and consulting on software and hardware issues" (see Complaint, Dkt. No. 1, ¶10; Second Amended Complaint, Dkt. No. 134, ¶10). Plaintiffs have further alleged that their products and services purportedly offered under the Asserted Marks competed with, or at least traveled in similar channels of trade with, products offered by Google in association with its ANDROID mark:

- "Plaintiff's use of it's [ANDROID DATA] Trademark for software and internet commerce is similar to Defendant's use of Plaintiff's mark in software and for internet commerce" (Complaint, Dkt. No. 1, ¶57) (punctuation in original)

- "Both marks, Android and Android Data, may be used to identify computer hardware, software and related services" (First Amended Complaint, Dkt. No. 38, ¶70)

- "Both Google's mark 'Android' and Plaintiffs' Android Marks may be used to identify computer hardware, software and related products and services. The hardware and software products and services may be used in e-commerce and marketed by all parties in commercial settings and over the internet" (Second Amended Complaint, Dkt. No. 134, ¶102)

Clearly, Plaintiffs have taken the position that for purposes of this case there is a competitive relationship between their products and services purportedly offered under the Asserted Marks and Google's software product offered under the ANDROID mark.

### C. Google's Efforts to Resolve This Protective Order Dispute

During the very first discussions between counsel, Google identified the need for entry of a Protective Order to govern the handling and dissemination of information and documents that

4

the parties deem to contain proprietary, non-public and/or trade secret information, the disclosure of which would harm their respective interests. As indicated above, Mr. Murphy and the undersigned agreed to exchange discovery on an Attorneys' Eyes Only basis until the parties were able to agree to a protective order.

On September 17, 2009 counsel for Google sent a draft Protective Order to counsel for Plaintiffs (Ex. 8). That draft Protective Order included three tiers of confidentiality, in accordance with this Court's practices for entry of Protective Orders in such cases: (i) non-confidential, (ii) "Confidential," and (iii) "Highly Confidential." The Confidential tier would incorporate information which "is non-public and constitutes information that the designating party in good faith believes to be of a non-public business or technical nature that is not readily available to competitors, potential competitors, and/or third parties" (Ex. 8, ¶3). The Highly Confidential tier, e.g. Attorneys' Eyes Only, would incorporate only that information containing "particularly sensitive business or technical information" falling within limited specifically enumerated categories (Ex. 8, ¶4).

The following day, Plaintiffs advised Google that they were not opposed to entry of a Protective Order, but were now, after the appearance of new counsel, "firmly of the view that a second tier for 'highly confidential - counsel's eyes only' materials is unnecessary and inappropriate in this case" (Ex. 4). Despite Plaintiffs' newly announced viewpoint, the parties continued the prior practice of treating all documents produced on an "attorney's eyes only" basis pending entry of a Protective Order by the Court (Id.). After further discussions between counsel, Google revised and refined the specific categories of information within the proposed "Highly Confidential" tier, in an attempt to ensure that the "Highly Confidential" tier was

5

narrowly tailored to only those categories of information that justified such treatment, and forwarded another draft to Plaintiffs on October 5 (Ex. 8).

After receiving no response from Plaintiffs for over weeks, Google inquired further as to the status of Plaintiffs' review of the October 5 draft (Ex. 9). Finally, on October 23, Plaintiffs sent a redlined draft of the Protective Order to Google, in which Plaintiffs had removed all references to the proposed "Attorney's Eyes Only" tier of information, with no further explanation or comment (Ex. 10). To date Plaintiffs still have not articulated any legitimate reason for their opposition or why Mr. Specht requires access to Google's highly sensitive, non-public information.

### D. Google's Proposed Protective Order

The Protective Order currently proposed by Google, which is attached as Ex. 1 hereto, enables the parties to designate discovery materials as falling within one of three tiers: (i) non-confidential, (ii) "Confidential," and (iii) "Highly Confidential." The "Highly Confidential" tier is limited solely to information coming within one of the following categories:

(1) new, presently unreleased products or services that have not been publicly disclosed or offered for sale;

(2) employee rosters;

(3) employee wages and financial information;

(4) financial plans;

(5) business or marketing plans;

(6) product or service development information for any products or services not publicly disclosed or offered for sale;

(7) the identity of prospective business arrangements, business relationships or business partners or potential changes in business arrangements, partners or relationships; and

(8) the organizational structure and non-public financial information (such as tax returns and financial statements including supporting schedules) of a party or an individual.

(Ex. 1, ¶4).

As shown in the redlined draft that Plaintiffs provided on October 23, 2009 (Ex. 10), Plaintiffs have not only eliminated the "Highly Confidential – Attorney's Eyes Only" tier of confidentiality, but have emasculated the parties' ability to protect from disclosure a party's less sensitive, but still non-public information—an approved concept this District has recently re-confirmed by adoption of a default protective order as part of the Local Patent Rules, where the default protective order contains a significantly broader category of "Confidential Information" (i.e., non-Attorneys' Eyes Only information) than that proposed by Plaintiffs' limitation to specific categories.

## II. GOOGLE HAS SHOWN GOOD CAUSE FOR ENTRY OF A PROTECTIVE ORDER HAVING SEPARATE "CONFIDENTIAL" AND "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" LEVELS OF PROTECTION

Google has shown herein good cause for entry of a three-tier Protective Order providing for both "Confidential" and "Highly Confidential – Attorney's Eyes Only" levels of protection, in which party representatives are precluded from having access to information which the other side has designated as "Highly Confidential." In contrast, Plaintiffs have identified no legitimate reason why Mr. Specht needs access to Google's proprietary business and financial information. Accordingly, this Court should grant this Motion and enter the three-tier Protective Order proposed by Google.

### A. This District Recognizes the Need for Protective Orders Which Include a "Highly Confidential" or "Attorney's Eyes Only" Designation, to Protect a Party's Sensitive Information From Disclosure to a Potential Competitor

At the outset, as noted above, while Plaintiffs now feign objecting to the entry of any protective order in this case, there appears to be no real dispute that some form of Protective Order is required to safeguard the parties' confidential and proprietary business information from public disclosure. It is black-letter law that Courts may issue such orders to protect the parties

from harm that would result if such information entered into the public domain.[1] Thus the only dispute which the Court must resolve is whether or not the parties should be able to designate certain limited categories of information as "Highly Confidential – Attorney's Eyes Only," so as to be shielded from disclosure to the parties themselves.

What Google seeks is nothing unusual or exotic, but rather a typical three-tier Protective Order that includes an "Attorneys' Eyes Only" level of confidentiality for information of an extraordinarily sensitive nature, and for which disclosure would be limited solely to the parties' counsel (and experts, if desired). Courts in this District regularly recognize the appropriateness of such multiple-tier Protective Orders to protect sensitive financial and business information which could be used to a party's commercial disadvantage if placed in the hands of its competitors. *See, e.g., Nat'l Council on Compensation Insurance, Inc. v. American Int'l Group, Inc.*, 2007 WL 4365372, *3-5 (N.D.Ill. Dec. 11, 2007) (entering a protective order having provisions for designating information as "confidential" and "highly confidential – outside counsel's eyes only," where the latter designation was limited to specific categories of financial and business information which "could be used to defendants' disadvantage if in the hands of competitors");[2] *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 237

---

[1] *See, e.g., Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999) ("There is no objection to an order that allows the parties to keep their trade secrets (or some other properly demarcated category of legitimately confidential information) out of the public record, provided the judge (1) satisfies himself that the parties know what a trade secret is and are acting in good faith in deciding which parts of the record are trade secrets and (2) makes explicit that either party and any interested member of the public can challenge the secreting of particular documents.").

[2] Notably, the defendants in the *Nat'l Council on Compensation Insurance* case—the party who sought the three-tier Protective Order (including an "Attorney's Eyes Only" level) in that case—were represented by the very same attorneys who represent Plaintiffs in this case. Clearly, Plaintiffs' counsel understands that such Protective Orders are entirely appropriate and necessary in cases such as this one, where a party has a need to keep its proprietary business information out of the hands of a competitor (or one who claims to be a competitor).

F.R.D. 405, 407 (N.D.Ill. 2006) (noting that that "attorneys' eyes only" protective orders have "become *de rigeur*, at least where outside counsel are to have access to the information"); *Fieldturf Int'l, Inc. v. Triexe Management Group Inc.*, 2004 WL 866494, *3 (N.D.Ill. Apr. 16, 2004) (recognizing that "disclosure of confidential financial information to [a] competitor may cause a party great harm," and that limiting disclosure of such information to "attorneys' eyes only" "strikes a proper balance between plaintiffs' right to discover relevant information and the defendants' confidentiality interests"). Indeed, the Protective Order now proposed by Google has been repeatedly entered by Courts in this District.

Moreover, this Court, just last month, enacted its Local Patent Rules, which include a *default*, standardized Protective Order to facilitate early initial disclosures of the parties' patent-related contentions, which includes both "Confidential" and "Highly Confidential" tiers of protection and limits dissemination of "Highly Confidential" information[3] to a party's outside counsel and experts (see LPR Appendix B, ¶¶2, 4)—the exact structure that Google has now proposed.

> **B. Google's Proposed "Highly Confidential" Tier is Narrowly Tailored to Encompass Only Sensitive Information Whose Disclosure Would Result in Prejudice to Google**

As noted above, Plaintiffs have taken the position that there is some competitive relationship between their purported products and/or services and Google's ANDROID software. Moreover, the mobile device marketplace is highly competitive, and Google and its fellow OHA

---

[3] The Local Patent Rules define "Highly Confidential" information as comprising "current or future business or technical trade secrets and plans more sensitive or strategic than Confidential Information, the disclosure of which is likely to significantly harm that person's competitive position, or the disclosure of which would contravene an obligation of confidentiality to a third person or to a Court" (see LPR Appendix B, ¶2(c)). Google's proposal is significantly more tailored.

9

members continue to develop the ANDROID software and to introduce products which utilize the ANDROID software.

Google's proposed Protective Order is narrowly tailored to prevent the dissemination—either publicly or to Mr. Specht—of a limited number of specific categories of information that courts routinely find to be subject to "Attorney's Eyes Only" treatment.  Indeed, in the *Nat'l Council on Compensation Insurance* case cited above, Plaintiffs' current counsel successfully advocated for a "Highly Confidential" tier of information that included the following categories: "(i) business/strategic plans, (ii) sales, costs and price information including sales/financial projections, (iii) non-public marketing information, (iv) detailed sales and financial data, (v) customer lists, (vi) technical information or (vii) other information of competitive, financial or commercial significance comparable to the items listed in this paragraph." 2007 WL 4365372 at *4.  *See also Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 445-46 (N.D.Ill. 2006) (citing cases finding an "attorney's eyes only" limitation warranted for customer lists and similar information); *Fieldturf*, 2004 WL 866494 at *3 (finding that defendants' present financial information was discoverable on an "attorney's eyes only" basis); *Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.*, 2003 WL 21800424, *1 (N.D.Ill. July 30, 2003) (allowing defendant to produce its customer lists and business proposals on an "attorney's eyes only" basis).

Indeed, Plaintiffs do not dispute that any of the categories in Google's proposed Protective Order do not warrant being shielded from public disclosure, as shown by their proposed changes to Google's draft Order (Ex. 10).  Rather, Plaintiffs simply refuse to agree that such information should be treated on an "Attorney's Eyes Only" basis—without explaining why Mr. Specht requires access to such information.

Google's proposed Protective Order does not preclude—and expressly permits—Plaintiffs' counsel to render advice to their clients based upon counsel's examination of Google's protected information (Ex. 1, ¶11). Moreover, Plaintiffs have not articulated to Google any reason why Mr. Specht should have access to Google's highly sensitive financial information and business plans for its ANDROID software. Mr. Specht does not require access to Google's financial data and marketing plans in order for Plaintiffs to develop a theory of damages—that is the function of counsel and independent experts. Mr. Specht's idle curiosity with regard to the inner workings of Google's ANDROID software development program hardly justifies his being permitted access to Google's trade secrets and proprietary information—particularly when Plaintiffs take the position that there is a competitive relationship between their products or services and Google's ANDROID software. *See Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 556 (C.D.Cal. 2007) ("Many cases involving claims of trademark infringement require the production of customer and supplier lists and such lists are customarily produced subject to an "attorney's eyes only" order. The attorneys for plaintiffs commonly manage to conduct discovery and litigation strategy without revealing such information to their clients. Plaintiff has not shown how this case is unique or why Nutratech's prosecution of its case is different from other such infringement cases.").

Indeed, it appears that Plaintiffs' position is not driven by any legitimate need for Mr. Specht to have access to the materials. Rather, it is a part of Plaintiffs' overall litigation strategy to maximize the inconvenience to Google and to use Google's legitimate concern that its proprietary business information will be disclosed, as a bargaining chip in hopes of leveraging a monetary settlement.

### III. CONCLUSION

For the reasons set forth above, Google respectfully requests that this Court enter the proposed three-tier Protective Order of Exhibit 1, pursuant to Fed. R. Civ. P. 26(c).

Respectfully submitted,

Dated:  November 16, 2009

/s Herbert H. Finn
Herbert H. Finn
Richard D. Harris
Jeffrey P. Dunning
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL  60601
(312) 456-8400

Counsel for Google Inc.