**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ERICH SPECHT, et al. ) | |
| ) | C.A. No. 09-cv-2572 |
| Plaintiffs, ) | |
| ) | Judge Leinenweber |
| v. ) | |
| ) | Magistrate Judge Cole |
| GOOGLE INC., ) | |
| ) | |
| Defendant. ) | |

**GOOGLE INC.'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION FOR ENTRY OF A PROTECTIVE ORDER**

After having read Plaintiffs' Response to Google's Motion for Entry of a Protective Order ("Response," Dkt. No. 149), the Court should appreciate that it is just another part of Plaintiffs' strategy to unreasonably delay this Court from getting to the substance, or lack of substance, in Plaintiffs' allegations and to unnecessarily multiply the proceedings so as to increase the costs to Google.

After a month to further consider Google's proposed protective order, Plaintiffs disingenuously argue that Google has purportedly not demonstrated "good cause" as to the need for entry of its proposed protective order and then, in the same breath, seek entry of their own protective order[1]—thereby admitting that good cause for entry of a protective order exists. Nonetheless, after all of Plaintiffs' arguments are considered, the crux of the disagreement between the parties remains whether the protective order entered by this Court will include a limited "Attorney's Eyes Only" ("AEO") level of information, which would restrict disclosure of

---

[1] Regrettably, Plaintiffs have now moved from their prior proposal to Google and did not take the opportunity during those thirty (30) days to present Google with their entirely new, reformatted alternative protective order. The first time Google was presented with Plaintiffs' new proposal was in their Cross-Motion, which is noticed for hearing before the Court on December 17, 2009.

such information to counsel[2], in addition to a more general "Confidential" level of information, to which parties would have access.

## I. GOOGLE HAS SHOWN GOOD CAUSE FOR ENTRY OF A PROTECTIVE ORDER INCLUDING AN "ATTORNEY'S EYES ONLY" CATEGORY

Plaintiffs argue that Google has not shown good cause for its proposed "Attorney's Eyes Only" ("AEO") category, because Google supposedly has not made a "particularized showing that the information sought is confidential and come forth with specific examples of competitive harm" (Response, p. 6).  Plaintiffs' arguments are unpersuasive, as set forth below.

### A. Google Need Not Make a Detailed Factual Showing of Harm Where, as Here, the Threat of Injury is Obvious

Notwithstanding Plaintiffs' attempts to suggest otherwise through the use of misleading quotations,[3] courts have repeatedly recognized that "hard and fast rules in this area are inappropriate" and that a detailed factual showing by way of affidavits is not necessary where "the injury that would flow from disclosure is patent, either from consideration of the documents alone or against the court's understanding of the background facts.  The court's common sense is a helpful guide."  *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 n.1 (N.D.Ill. 1993) (citing *Zenith Radio Corp. v. Matsushita Elec. Industrial Co., Ltd.*, 529 F.Supp. 866, 891

---

[2] Plaintiffs mischaracterize Google's proposal for an AEO level of designation as being limited to "outside" counsel only.  The AEO level of designation is intended to encompass Google's in-house litigation counsel involved in this case as well.

[3] On several occasions in their Response, Plaintiffs "quote" Court findings that they attribute to particular cases.  However, those "quotations" do not comprise opinions of that Court, but rather merely comprise parenthetical summaries of other decisions from other courts.  For instance, at p. 3 of their Response, Plaintiffs attribute a quotation to the Northern District of Illinois decision in *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D.Ill. 2006) -- which "quotation" was actually a parenthetical summary description of a 1998 Fifth Circuit decision, *In re Terra Intern., Inc.*, 134 F.3d 302 (5th Cir. 1998).  Similarly, at p. 6 of their Response, Plaintiffs attribute a holding to a 2009 decision from in *Arvco Container Corp. v. Weyerhaeuser Co.*, 2009 WL 311125, *5 (W.D.Mich. Feb. 9, 2009) -- when the "quotation" at issue again comprised a parenthetical summary description of a 1981 decision from yet another district, *Waelde v. Merck, Sharp & Dohme*, 94 F.R.D. 27, 28 (E.D.Mich. 1981).  Plaintiffs then repeat these phantom "quotations" numerous times throughout their Response.  Plaintiffs' casual attitude toward representing parentheticals as precedential findings should not escape this Court's notice.

(E.D.Pa. 1981)). *See also Netquote, Inc. v. Byrd*, 2007 WL 2438947, *3 (D.Col. Aug. 23, 2007) (same); *Pulsecard, Inc. v. Discover Card Services, Inc.*, 1995 WL 526533, *7 (D.Kan. Aug. 31, 1995) (same).

Plaintiffs do not dispute that they have requested documents and information relating to Google's engineering materials, future business and marketing plans and actual and prospective business relationships with other companies relating to Google's Android software platform.[4] This Court is no doubt cognizant of the highly competitive marketplace for mobile phones and other wireless devices, as evidenced by the constant bombardment of cellular phone ads which every one of us encounters through television, radio, print and billboard media. The Court's common sense is capable of informing the Court that a savvy software developer such as Mr. Specht, provided with access to competitive information relating to such topics as Google's specifications and marketing strategies for its Android software and related products, and the identity of companies that are considering utilizing that software in their own products, could exploit that knowledge to Google's detriment. For example, Plaintiffs could seek to provide consulting services to Google's competitors or suppliers in the cellular communications field, to assist in the development or marketing of ancillary applications or operating systems using the knowledge gained in this litigation. Indeed, Plaintiffs have already identified Motorola, a former named defendant in this case, as a purported customer for their services. Such conduct would clearly result in an injury to Google.

---

[4] Plaintiffs have recently served additional document requests (Ex. 1) seeking further sensitive information regarding, *inter alia*, communications between Google and companies which have utilized or have considered utilizing Google's Android software in their products, including Motorola, T-Mobile and Verizon Wireless (Ex. 1, Request Nos. 8-10, 17), internal Google communications relating to engineering meetings and <u>technical aspects</u> of Google's product development process (Ex. 1 Request Nos. 19-22), and market research relating to Google's Android software (Ex. 1, Request No. 27).

### B. The Categories Comprising Google's Proposed "Attorney's Eyes Only" Category Justify Such Treatment

Plaintiffs' argument that the eight narrowly defined categories identified in Google's proposed protective order as comprising "Highly Confidential – Attorney's Eyes Only" information are "vaguely described" and "do not warrant attorney's eyes only protection" is likewise misplaced. The argument that the eight categories are somehow "vaguely described" is not only misplaced, but is belied by Plaintiffs' prior agreement to accept those identical categories in Plaintiffs' markups to Google's draft Protective Order. In a responsive proposal, Plaintiffs proposed keeping those same category descriptions (albeit proposing to change the level of protection from "Highly Confidential" to merely "Confidential") (see Motion Ex. 10, pp. 2-3). If Google's proposed categories were "vague" and therefore faulty as Plaintiffs suggest, surely Plaintiffs would have proposed revising them—which they did not do.

Moreover, Plaintiffs' argument that the specific categories proposed by Google do not justify "Attorney's Eyes Only" protection is not supported by relevant authority. To the contrary, ample authority supports the designation of each of those categories of information as "Attorney's Eyes Only." For example, on the issue of "employee rosters," see *Davis v. Precoat Metals*, 2002 WL 1759828, *4 (N.D.Ill. July 29, 2002) (requiring that employee personnel files be produced on an attorney's eyes only basis); on the issue of "employee wages and financial information," see *Beauchem v. Rockford Products Corp.*, 2002 WL 100405, *3 (N.D.Ill. Jan. 24, 2002) (requiring production of documents relating to compensation of defendant's executives, officers and board members subject to a protective order designating such documents "for attorney's eyes only"); on the issue of "organizational structure and non-public financial information," see *Pulsecard,* 1995 WL 526533 at *6-10 (requiring information including "financial records" and "entity formation documents" to be produced on an "attorney's eyes

4

only" basis); on the issue of "financial plans" and "business or marketing plans," see *Netquote*, 2007 WL at *4 (finding that "pricing options and forecasts" are properly subject to an "attorney's eyes only" restriction), and other cases cited at p. 10 of Google's Motion.

Moreover, contrary to Plaintiffs' arguments (Response, pp. 10-11), Google has not attempted to "shift the burden" of showing good cause to Plaintiffs. Courts routinely recognize that, as part of determining whether a party has shown good cause for entry of an "attorney's eyes only" protective order, <u>it is appropriate for the Court to consider whether the requesting party has any legitimate need for access to the information at issue</u>. *See, e.g., Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555-56 (C.D.Cal. 2007) (finding that "attorneys for plaintiffs commonly manage to conduct discovery and litigation strategy without revealing such [attorney's eyes only] information to their clients" and "Plaintiff has not shown how this case is unique or why Nutratech's prosecution of its case is different from other such infringement cases"); *Netquote*, 2007 WL 2438947 at *4 (finding attorney's eyes only protection warranted where "Defendants have not established a need for this information to outweigh the harm of disclosure to a competitor"); *Pulsecard*, 1995 WL 526533 at *10 (noting that some of the requested categories "identify documents for which the court finds no particular reason for plaintiff itself to view" and that "[p]laintiff has not demonstrated to the satisfaction of the court . . . that review of the documents by its counsel and any independent experts cannot meet its needs").

Plaintiffs' argument that it will be "exceedingly difficult to prepare Mr. Specht for trial or deposition . . . if Mr. Specht is unable to view a substantial body of materials produced by Google" (Response, p. 10) is not only unpersuasive, but is simply wrong. First, it assumes that a "substantial body of materials produced by Google" will be designated as "Attorney's Eyes

Only," which is simply not the case. Google has narrowly tailored the categories which it has proposed as "Attorney's Eyes Only," and will use its efforts to adhere to its obligation to only designate information which it "in good faith deems to contain particularly sensitive business or technical information corresponding to the categories set forth within this paragraph" (Motion Ex. 1, ¶4). Moreover, it fails to explain why Mr. Specht will need to review Google's "sensitive business or technical information" in order to testify at deposition or trial. Mr. Specht cannot testify regarding facts for which he has no foundation, and has not been proffered as an expert who will offer opinion testimony about Google's activities. Thus, the substance of Google's "sensitive business or technical information" is entirely irrelevant to any testimony which Mr. Specht may be called upon to provide in this case, and Plaintiffs have identified no other reason why Mr. Specht requires access to any of Google's information within any of the proposed "Highly Confidential" categories in order for Plaintiffs to prosecute this action. In addition, Plaintiffs ignore the language of Google's proposed Protective Order that expressly permits counsel to advise its client so long as counsel does not disclose the specifics of the "Highly Confidential Information." (Motion Ex. 1, ¶11).

      Finally, Plaintiffs' claim that the "Highly Confidential" tier in the Northern District's new default Protective Order for patent cases (see N.D.Ill. LPR Appendix B) is somehow more restrictive than Google's proposed "Highly Confidential" tier (Response, pp. 9-10) simply contradicts the facts. Google's proposed "Highly Confidential" tier is limited to eight specific, narrowly tailored categories of "sensitive business or technical information" (Motion Ex. 1, ¶4). This District's default Protective Order does not limit its "Highly Confidential" tier to specific, narrow categories, but rather embraces any "current or future business or technical trade secrets and plans more sensitive or strategic than Confidential Information, the disclosure of which is

likely to significantly harm that person's competitive position."[5] LPR Appendix B., ¶2(c). Thus, as Google pointed out in its Motion, Google's proposed "Highly Confidential" tier is clearly more narrowly tailored than even this District's default Protective Order in patent cases, and leaves less room for interpretation or dispute.

      **C.**    **Plaintiffs Contradict Their Prior Representations to the Court, by Suggesting That There is No Competition Between the Parties**

As set forth in Google's Motion, Plaintiffs have repeatedly alleged that both Plaintiffs and Google have used their respective marks to "identify computer hardware, software and related services" and that their uses of their respective marks were "similar" (Motion, p. 4). Moreover, Plaintiffs' counsel has stated in open Court on several occasions now that both parties offer "the same product."[6] While Google does not agree with the characterization that the products are the same or even related, Plaintiffs' allegations in that regard are not surprising, inasmuch as the similarity of the parties' respective products is one of the factors which a plaintiff must establish in a trademark infringement case to demonstrate a likelihood of confusion. *Chicago Tribune Co. v. Fox News Network, LLC*, 520 F.Supp.2d 930, 934 (N.D.Ill. 2007).

However, now that it suits their purpose to downplay any competition between the parties, Plaintiffs claim that the notion of competition between the parties was merely "Google's argument," not their own position advocated to this Court (Response, p. 7). Plaintiffs argue,

---

[5] Plaintiffs had not previously raised a concern that Google's proposed protective order did not recite language that the information must be "likely to significantly harm that person's competitive position." Google believes that recitation of that express language is unnecessary as it is implied in limitation of Highly Confidential Information to the specific categories. However, to the extent that the Court is of the opinion that language on "competitive injury" from the default protective order is required, Google has no objection to inclusion of that language.

[6] See Ex. 2, Transcript from May 7, 2009 hearing at p. 9 ("We have the trademark, Android Data. The term data was disclaimed. Basically we have Android for the use of E-commerce software. They are trying to trademark Android basically for software. *It is the same product*. It is basically for E-commerce.") (emphasis added); Ex. 3, Transcript from May 21, 2009 hearing at p. 6 ("He [Specht] is a software developer so he develops software. They [Google] have software. *It is the same product*.") (emphasis added).

without citing any pertinent authority, that their allegations and statements do not suggest there is any "genuine threat of competitive or other injury" in the event that Mr. Specht is provided with access to Google's highly sensitive information. Plaintiffs' attempt to run away from their own pleadings and representations to this Court rings hollow.

## II. PLAINTIFFS FAILED TO CONFER WITH GOOGLE PRIOR TO FILING THEIR CROSS-MOTION, IN VIOLATION OF RULE 26(c)(1)

Fed. R. Civ. P. 26(c)(1) requires a party moving for a protective order to "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." In its Motion, Google detailed its efforts to resolve the dispute between the parties prior to bringing its Motion before this Court (see Motion, pp. 4-6).

Plaintiffs, however, have now submitted a cross-motion for entry of their own proposed protective order, without having ever presented a copy of their proposed order to Google for consideration, much less having actually conferred with Google in an attempt to resolve, or at least streamline, the issues before this Court. By so doing, Plaintiffs have failed to comply with the "meet and confer" requirement of Rule 26(c)(1). Plaintiffs' display of gamesmanship actually seeks to increase the burden on this Court, by requiring this Court to review and compare both parties' competing draft protective orders.

In view of the narrow scope of the disputes here, there is simply no need for Plaintiffs' attempt to reinvent the wheel. This Court should not be expected to spend additional time reviewing a second proposed order, particularly where Plaintiffs failed to confer with Google before submitting that proposed order to the Court. Plaintiffs' cross-motion should be denied on that basis alone.

However, to the extent that the Court may choose to consider Plaintiffs' newly-proposed alternative protective order (Response Ex. A), Google notes that Plaintiffs seem to have merely copied verbatim the majority of this District's default Protective Order in patent cases, while deleting all references to that Order's "Highly Confidential" tier. Google submits that, if this Court intends to accept Plaintiffs' suggestion to adopt the default Patent Protective Order, rather than Google's proposed Protective Order, that it adopt the default Patent Protective Order in its entirety, not merely those portions which Plaintiffs have clearly cherry-picked.

### III. PLAINTIFFS' ARGUMENT THAT GOOGLE HAS SOMEHOW "ABUSED" THE PARTIES' INTERIM AGREEMENT IS BASELESS

Not content to simply address the issues at hand, Plaintiffs take a "parting shot" at Google by claiming, incredibly, that Google has somehow "abused" the parties' interim agreement to treat all documents as "Highly Confidential – Attorney's Eyes Only" pending entry of a suitable Protective Order by the Court (Response, pp. 11-12). Plaintiffs do not dispute that they agreed to treat all documents produced by Google on an "Attorney's Eyes Only" basis until the Court has resolved this dispute (see Motion pp. 1-2 and Exs. 3-4). In accordance with that agreement, Google has labeled documents that it has produced with the following language: "Attorney's Eyes Only Subject to Agreement Between the Parties." Clearly, this is nothing but a straw man being raised merely so that Plaintiffs may attempt to create another "issue."

Notwithstanding their agreement to that arrangement, Plaintiffs now seek to berate Google by claiming that Google has inappropriately labeled documents that it produced (including publicly available documents) with the aforementioned language. However, Plaintiffs fail to explain how doing so is inconsistent with the parties' agreement, which was intended to apply to *all* documents being produced, in order to permit document production to proceed and save both parties from the time and expense of having to designate documents twice, both upon

initial production and again after the protective order issues are resolved by the Court. Again, Plaintiffs failed to raise this "issue" with Google prior to filing their Response with this Court. Clearly, Plaintiffs' motivation in raising this "issue" for the first time in their Response was simply to sling mud at Google, rather than comply with Rule 37 to address discovery concerns or any legitimate interest in sharing information with their clients. Had Plaintiffs' counsel bothered to ask, Google would have advised them that it had no objections to their sharing with their clients documents and information that is clearly publicly available.

To the extent that Plaintiffs have identified a substantive issue—namely, that of which party bears the burden in the event of a dispute regarding a designation—Google's proposed Protective Order clearly provides that "[t]he *designating party* shall bear the burden of justifying confidential treatment of the disputed material under the applicable law" (Motion Ex. 1, ¶18, emphasis added).

### IV. CONCLUSION

For the reasons set forth in Google's Motion and hereinabove, Google respectfully requests that this Court enter Google's proposed three-tier Protective Order, pursuant to Fed. R. Civ. P. 26(c).

Respectfully submitted,

Dated: December 16, 2009

/s Herbert H. Finn
Herbert H. Finn
Richard D. Harris
Jeffrey P. Dunning
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
(312) 456-8400

Counsel for Google Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that on the date set forth below, I electronically filed the foregoing GOOGLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR ENTRY OF A PROTECTIVE ORDER with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.


Dated: December 16, 2009                          /s Herbert H. Finn