# EXHIBIT 3

```
 1                UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3

 4   ERICH SPECHT, et al.,        )
                                  )
 5            Plaintiffs,         )
                                  )
 6      vs.                       )   No. 09 C 2572
                                  )
 7   GOOGLE, INC., et al.,        )   Chicago, Illinois
                                  )   May 21, 2009
 8            Defendants.         )   9:00 o'clock a.m.

 9

10      TRANSCRIPT OF PROCEEDINGS - STATUS AND CONTINUED MOTION
              BEFORE THE HONORABLE HARRY D. LEINENWEBER
11

12   APPEARANCES:

13

14   For the Plaintiffs:     LAW OFFICE OF MARTIN J. MURPHY
                             MR. MARTIN J. MURPHY
15                           2811 RFD
                             Long Grove, Illinois 60047
16                           847-540-8899

17

18   For the Defendant,      GREENBERG TRAURIG, LLP
     Google, Inc.:           MR. HERBERT H. FINN
19                           MR. RICHARD D. HARRIS
                             77 West Wacker Drive
20                           Chicago, Illinois 60601
                             312-456-8400
21

22
     Court Reporter:         FEDERAL OFFICIAL COURT REPORTER
23                           MS. KRISTA BURGESON
                             219 South Dearborn Street
24                           Chicago, Illinois 60604
                             312-435-5567
25                           Krista_Burgeson@ilnd.uscourts.gov
```

1       THE CLERK: 09 C 2572, Specht versus Google.

2       MR. MURPHY: Good morning, your Honor. Martin Murphy
3 on behalf of the plaintiff.

4       MR. HARRIS: Good morning, your Honor. Richard
5 Harris, H-a-r-r-i-s, and Herb Finn, F-i-n-n, for defendant,
6 Google.

7       MR. FINN: Good morning, your Honor. Herb Finn.

8       THE COURT: Okay.

9       MR. HARRIS: Your Honor, you may recall on May 7th we
10 appeared before the Court and we tried to iron out two issues
11 that were raised by the Court.

12       The first of them was the inquiry as to what the
13 urgency was in terms of TRO versus preliminary injunction, et
14 cetera. That one we still don't have an answer on.

15       However, the Court did mention that with regard to
16 one of defendant's bases for denial of injunctive relief, the
17 fact that there has been an abandonment here, we of course
18 referred to the First Aid case that the Court had mentioned,
19 and the Court had mentioned also that that would be
20 significantly fact driven.

21       Now, we have spoken to Mr. Murphy about getting to
22 these issues of the facts for determining what we need to
23 bring before the Court so that it can give a knowledgeable
24 decision on either a TRO or on a preliminary injunction. We
25 exchanged lists of discovery, minimal discovery, expedited

1 discovery, to get just the basics in for the Court.
2     We expect, on behalf of defendant, to put a good
3 number of documents responsive to that list into Mr. Murphy's
4 hands on Monday and Tuesday of next week. We have not gotten
5 anything from Mr. Murphy yet.
6     We do note that now this is the second time we have
7 been before the Court for a fact driven issue and plaintiff,
8 who has all the facts as to his use or nonuse, is still not
9 here.
10     In essence, we took the proposal that we presented to
11 the Court last time, where we talked about a preliminary
12 injunction hearing, 60 to 90 days, and we offered to
13 Mr. Murphy simply cutting that in half. If he believes that
14 there is justification for an earlier date, we recommended 30
15 to 45 days, that would still give us an opportunity to turn
16 around some streamline discovery, still give defendants an
17 opportunity to brief the issue.
18     We followed it up with a letter yesterday, we have
19 not gotten a response yet, but this is a fact driven case
20 waiting for some facts.
21     That is where we stand right now.
22     MR. MURPHY: Well, your Honor, I certainly don't have
23 any recollection of that being discussed at the last date.
24     At the last date, we had the motion up for a
25 temporary restraining order, a preliminary injunction, and we

1  were told basically to get together and come back in two weeks
2  on a status.
3      We didn't discuss whether there was an abandonment,
4  whether we were -- counsel had asked for 60 days, and then
5  basically it ran, and then balance of harms and abandonment
6  are issues that apparently he wants to raise. I haven't
7  received any reply, a response from them, to my motion.
8      The issue with regards to the temporary restraining
9  order and the urgency is a developer's conference that is
10 taking place next week on the 27th and the 28th where they are
11 expecting thousands of developers to come and basically learn
12 how to use their Android product. My client, of course, is
13 alleging that he owns the Android trademark, Android Data,
14 with data being disclaimed. The PTO had rejected their
15 application for the trademark. The urgency still exists.
16     At the last date I mentioned to the Court that I
17 believe with regards to the seven requirements for likelihood
18 of success, I believe we would win on all of those, the only
19 issue was going to be the balance of harms.
20     So what I was looking to the Judge for was some sort
21 of idea for the bond, what type of bond the Court may require,
22 so I can determine whether or not it is even feasible, because
23 I certainly want to proceed on my motion for a temporary
24 restraining order.
25     This is software that they give away for free. This

1  is not software that they are selling.  This is not like Coke
2  or other companies where they are selling a product.  They are
3  not selling a product, they are giving it away for free.  And
4  we are saying, Stop giving it away for free until we can
5  determine who owns it, or at least disclose that this issue of
6  Android is subject to litigation and you don't own the mark.
7  You can't disclose on your website, in all the press releases,
8  and your conferences, that you own this mark and that people
9  are free to go ahead and infringe.
10          I mean, they are inviting thousands of people to
11 infringe on our trademark, Judge, and I want to see that
12 stopped, or at least tell them what they are getting into so
13 they go in with their eyes open.
14          MR. HARRIS:  Your Honor, this assembly, this
15 conference that is coming up that Mr. Murphy refers to, is not
16 the first time that the collection of open source users and
17 developers of the Android software developed by our client are
18 getting together, it is the second anniversary, and the reason
19 it is our second anniversary is because for 19 months they
20 have been using the mark in association with open software.
21          There are millions of products out there that when
22 you fire them up specifically say, Powered by Android, or talk
23 about the Android OS, or operating system, or software, and
24 all of a sudden there is urgency for the second anniversary
25 when there was no urgency for the first anniversary.

1     Clearly, Mr. Murphy wants to jump immediately to the
2 bond, sort of go right over the hurdles, the issues of
3 likelihood of success, irreparable harm, balance of the
4 hardships, the public interest, and the fact that virtually
5 everything that Mr. Murphy is looking for here, 19 months down
6 the line since this mark has been adopted and utilized solely
7 and exclusively, I might add, by Google, he just wants to skip
8 that stuff and ignore the fact that all of this is addressable
9 by money damages.
10     This case has absolutely no feasible justification
11 for consideration for a TRO.
12     THE COURT: It sounds to me as if --
13     Well, what does your client do with this mark?
14     MR. MURPHY: He is a software developer, so he
15 develops software. They have software. It is the same
16 product. They are all over the Internet, that is how the
17 information, the communication, is transferred.
18     On the seven criteria for likelihood of success, we
19 have a similar mark, identical mark. We have got the strength
20 or distinction of the mark. It is an arbitrary. So it is
21 very strong as far as distinctiveness of the mark. The intent
22 of the defendant isn't relevant, reverse confusion case.
23     THE COURT: They have been using it for 19 months?
24     MR. MURPHY: We first learned about it on April 20th.
25 We filed our suit on April 28th. They are saying they are

1  using it, but we didn't have knowledge of it. We filed as
2  soon as we had knowledge, and that is alleged in our
3  complaint. We learned first on April 20th, and that was the
4  first knowledge to us.
5       We had heard of the Google phone, the G1 phone, which
6  we believed to be hardware, we didn't know it was a software
7  product. We later learned after discovering on April 20th
8  what was going on that they had filed these trademark
9  applications, the trademark applications were denied, and
10 after doing some research, within eight days we filed a
11 complaint, and within a week I filed my motion for TRO.
12      So, we didn't sit on our hands waiting for something
13 to happen. We moved as fast as we could once we learned what
14 was going on. So, we didn't know about the previous
15 developers' conference. We didn't know about the other
16 actions of the defendants. As soon as we found out, we
17 stepped forward.
18      MR. HARRIS: Actually, your Honor, that completely
19 contradicts Mr. Specht's declaration in this case that says
20 while he has known about it for quite some time, he thought it
21 was only being attached to telephones, yet the information
22 that he attached, that he was familiar with, said all along
23 that it had to do with software, with operating systems.
24      Your Honor, this goes back to -- you may recall the
25 unusual motion for intervention that was filed before the

1   Court on May 7th.
2       THE COURT:  Yes.
3       MR. HARRIS:  Curiously, interestingly, that
4   declaration, that motion to intervene, was filed under penalty
5   of perjury.  It was converted at the time that it was filed.
6   It was presented as a declaration to the Court.
7       And in that declaration, the Court could see at a
8   glance on the second page of that particular document where,
9   on April 20th, there was a phone conversation between this
10  Kenneth Robblee and Mr. Specht, plaintiff in this case, where
11  all of a sudden, Mr. Specht became aware of all sorts of
12  things.  From that day on, he resurrected a six year old
13  dissolved company.  He had lost his domain site, his web site,
14  five to six years earlier, he tried to resurrect a version of
15  that, found that someone else owned it.  He then went around
16  and filed seven years, seven years of missing annual reports.
17  He filed declarations with the United States Patent and
18  Trademark Office.  Everything occurs on or after April the
19  20th.
20      I believe the Court is going to see, once it has a
21  chance to address the facts behind this very fact driven case,
22  this Court will have a pretty good feel for what is going on
23  here.
24      When a declaration says, I have known for a while,
25  but, Geez, only on the 20th when Mr. Robblee called me did I

```
 1  find out that it is really software.  That is the kind of
 2  thing we are running into in this case.
 3          MR. MURPHY:  Your Honor --
 4          THE COURT:  Your client has been marketing software
 5  under the name Android for --
 6          MR. MURPHY:  He has used the software in interstate
 7  commerce on the web.  He has been developing software.  He got
 8  the trademark -- when he got the trademark, the software was
 9  in use, it was in commerce.
10          His site went down, however, he has two corporations,
11  he has Android Data Corporation and the Android Dungeon,
12  Incorporated.  In 2004, the trademark was assigned to the
13  Android Dungeons, Incorporated, from Android Data Corporation.
14  That is why Android Data, Incorporated, is also a plaintiff in
15  this suit.
16          It is Mr. Specht that owns all of these two entities
17  and the trademark.
18          THE COURT:  What would it cost Google to change the
19  name of the -- of whatever it is that they are publishing?
20          MR. HARRIS:  I would guess --
21          THE COURT:  The cost to convert.
22          MR. HARRIS:  I can account for equipment.
23          The Court may recall I referred to a check the size
24  of a tarp installment the other day when we were last before
25  you.
```

1   I know of equipment that bears the mark as being
2   driven by the software in the marketplace right now of at
3   least approximately $500 to $600 million dollars, hundreds of
4   thousands of users of the software going into additional
5   versions, additional software, application software, that they
6   create because it is open source software.
7   We are probably looking somewhere probably $1.2 to
8   $1.3 billion dollars that is involved that would probably
9   cost, I would imagine, $30 to $50 million dollars minimum to
10  address in terms of correction.
11  THE COURT: That would be just changing the name or
12  would it be --
13  MR. HARRIS: Just changing the name on the equipment,
14  respecifying new sources, and --
15  It has been in use for 19 months, Judge.
16  THE COURT: I would probably set the bond in a
17  reasonable approximation of what it would cost for them to
18  obey the TRO, or the temporary restraining order.
19  It seems to me the better way to do it is as counsel
20  suggests, and that is just do your discovery, set it down for
21  hearing on preliminary injunction, and then after you have had
22  a chance to conduct discovery --
23  MR. HARRIS: And we can do that relatively quickly,
24  your Honor, not 60 to 90, but as we had proposed, 30 to 45,
25  cut in half, with streamline discovery, no 30 day turnaround,

1  we get just to the basics of what we need limited to the issue
2  of injunctive relief, what this Court needs to know.
3  　　　　　MR. MURPHY: As it stands right now, the only party
4  that counsel is representing is Google. There are 47 or 48
5  defendants in this case. Much of this product is T-Mobile
6  and the other companies. I will not be seeking a TRO against
7  them. I am not seeking to --
8  　　　　　THE COURT: They would be what, users? What is the
9  term? They are what, purchasers of the -- they would be using
10 Google's product, is that how they are in the case?
11 　　　　　MR. FINN: Yes.
12 　　　　　MR. HARRIS: They are teams, partners, customers,
13 sponsors. And they also work with the software to develop
14 additional applications for their own products.
15 　　　　　So, across the board, they are all part of this
16 system, this platform, that is driving a significant part of
17 commerce in this country right now.
18 　　　　　THE COURT: Why don't we set it for a preliminary
19 injunction hearing say 45 days down the road?
20 　　　　　THE CLERK: July 8th.
21 　　　　　MR. HARRIS: At what time, your Honor.
22 　　　　　THE COURT: 10:00 a.m.
23 　　　　　And we can work together as far as what you wish to
24 present, depositions, declarations, or live witnesses.
25 　　　　　If you submit depositions, submit designations, color

1   coded designations, as that is usually the best way to do it.
2       MR. HARRIS: Very well, your Honor.
3       Your Honor, do you have any idea how much time the
4   Court wishes to allocate so that we know --
5       THE COURT: Well, how much time -- I don't know how
6   much time this would take.
7       MR. HARRIS: Well, if we have live witnesses,
8   obviously it would take a bit more, but we can work that out
9   later.
10      If we have any problems with discovery --
11      THE COURT: Why don't I set it for status on -- we
12  will give that you date, July 8th, and then maybe in two weeks
13  or so, come in, meet and confer about how you -- how you want
14  to proceed procedurally at the hearing, whether by live
15  witnesses or by depositions or both, or by declarations,
16  however you want to do it, and then we can determine how much
17  time would be needed.
18      MR. HARRIS: We can report that to the Court on that
19  July 8th date.
20      THE COURT: Yes, right.
21      So, two weeks.
22      THE CLERK: Okay.
23      MR. MURPHY: What date would that be?
24      THE CLERK: June 4th at 9:00 a.m.
25      THE COURT: June 4th, and that would be at 9:00 a.m.

1   Thank you.
2         MR. MURPHY: Thank you, your Honor.
3         MR. HARRIS: Thank you, your Honor.
4         MR. FINN: Thank you.
5         (Proceedings concluded.)
6
7
8
9
10               C E R T I F I C A T E
11
12     I certify that the foregoing is a correct transcript
13 from the record of proceedings in the above-entitled matter.
14
15 /s/Krista Burgeson, CSR, RMR, CRR    May 21, 2009
   Federal Official Court Reporter     Date
16
17
18
19
20
21
22
23
24
25