**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERICH SPECHT, et al. | ) | |
| | ) | C.A. No. 09-cv-2572 |
| Plaintiffs, | ) | |
| | ) | Judge Leinenweber |
| v. | ) | |
| | ) | Magistrate Judge Cole |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**GOOGLE'S OPPOSITION TO PLAINTIFFS'**
**MOTION TO STRIKE AND DISMISS COUNTERCLAIMS**

Since Plaintiffs' Motion to Strike and Dismiss Counterclaims ("Motion," Dkt. No. 143) and Memorandum in Support thereof ("Pla. Memo.," Dkt. No. 144), seeking to strike Count V and to dismiss Counts I, II, IV, VI and VII of Google's Counterclaims (Dkt. No. 136), fails to identify any valid basis for the requested striking or dismissal, as discussed below, Plaintiffs' Motion should be denied.

## I. INTRODUCTION

Plaintiffs' Motion is yet another wasteful attempt to increase the cost and burden of this litigation. Rather than deal with the substantive issues Plaintiffs have raised in this litigation, Plaintiffs instead seek to dismiss Google's counterclaims on a variety of bases, including that one count (Counterclaim Count V) is purportedly "redundant" as being the "flip-side" of Plaintiffs' own claims—which Plaintiffs argue should be handled merely as an affirmative defense. This argument ignores the fact that Google's Counterclaims provide different remedies than a mere affirmative defense, including prohibiting Plaintiffs from unilaterally dismissing their claims against Google.

Plaintiffs also argue that several of Google's other counterclaims (Counterclaim Counts I, II and IV) should be dismissed because Plaintiffs' fraud upon the USPTO occurred only after Plaintiffs revived a corporation and hurriedly put up a new website in order to create the appearance that the ANDROID DATA trademark was actually in use and had not been abandoned years earlier. Of course, all of this activity ignores Plaintiffs' own statements and actions, which confirm that Plaintiffs had abandoned any rights they may have had in the asserted marks years earlier,[1] including:

* In an email to a former employee, Plaintiff Erich Specht confirmed that, as of December 31, 2002, Plaintiffs were no longer doing business in association with any of the asserted marks, and that Specht's efforts to sell the company and trademark were not successful.

* Plaintiffs purposefully permitted Android Data Corporation to be dissolved as of May 1, 2004—only to resurrect it mere days before filing this lawsuit.

* Plaintiffs lacked any presence on the Internet for over four years, only to belatedly obtain a new domain name and website days before filing this lawsuit.

* Plaintiff Specht stated, as recently as April 20, 2009, to third party Kenneth Robblee that Plaintiffs had abandoned all rights in the asserted marks.

All of these facts, statements and lack of activity (and others) are identified in Google's Counterclaims. That the factual basis underlying Plaintiffs' fraud is being questioned by Plaintiffs does not provide a basis for dismissal. This Court must accept all of the allegations in Google's Counterclaims as true for purposes of Plaintiffs' Motion, *Bryant v. Gardner*, 545 F.Supp.2d 791, 797 (N.D.Ill. 2008), and may not resolve disputed issues of fact, as Plaintiffs invite the Court to do.

In reality, Plaintiffs' Motion is an attempt to limit their ultimate exposure and monetary liability to Google under the Federal Rules and/or 28 U.S.C. §1927 for having brought this

---

[1] In view of the parties' interim agreement to treat all discovery documents on an Attorney's Eyes Only basis pending entry of a Protective Order, Google has not attached copies of the documents referenced below; however, they are available for filing should the Court desire to review any of them.

frivolous lawsuit in the first place. As such, this Court should deny Plaintiffs' Motion in its entirety.

## II. GOOGLE'S COUNTERCLAIM IN COUNT V SEEKING A DECLARATORY JUDGMENT OF NON-INFRINGEMENT IS NOT REDUNDANT

Plaintiffs first argue that this Court should strike Count V of Google's Counterclaims on the basis that Count V is merely duplicative of claims asserted against Google in Plaintiffs' complaint and therefore redundant (Pla. Memo., p. 2). That Count V is the "flip-side" of Plaintiffs' original claims should not be surprising, as it is a compulsory counterclaim filed pursuant to Fed.R.Civ.P. Rule 13(a), i.e., it arises out of the same transactions or occurrences.

Although many of the proofs associated with Count V may be redundant of those associated with Plaintiffs' Complaint, the procedural posture and potential remedies are different, which weighs against striking Count V. For instance, Google's Counterclaims seek a declaration that this is an "exceptional case" under 15 U.S.C. §1117(a), together with an award to Google of its attorneys' fees and costs pursuant to that statute (see Counterclaims, Dkt. No. 136, at p. 56). *See, e.g., Stickrath v. Globalstar, Inc.*, 2008 WL 2050990, *4 (N.D.Cal. May 13, 2008) (noting that counterclaims which "seek different relief, in addition to raising legal issues that the court may not reach in resolving the complaint," should not be dismissed); *LeMaster v. USAA Life Ins. Co.*, 1995 WL 708656, *3 (M.D.Fla. Nov. 27, 1995) (denying motion to strike where counterclaim at issue sought "affirmative relief of costs and equitable remedies as opposed to mere affirmative defenses which are used to negate liability" and therefore was not "mirror image" of plaintiff's complaint).

Ignoring that the procedural aspects and available remedies of Google's Count V are not redundant, "[c]ourts generally do not grant [Rule 12(f)] motions to strike unless the defect in the pleading causes some prejudice to the party bringing the motion." *Hoffman v. Sumner*, 478

F.Supp.2d 1024, 1028 (N.D.Ill. 2007). Plaintiffs have identified no prejudice to them arising out of Google's request for a declaratory judgment of non-infringement, and indeed cannot do so since they brought the issue of infringement before this Court in the first place. Keeping Count V would not result in any prejudice to Plaintiffs, and therefore this Court should exercise its discretion to entertain Count V. *See Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994) ("The decision of the district court to grant declaratory relief is discretionary.").

Plaintiffs' original Complaint (Dkt. No. 1) asserted trademark infringement claims against a total of 48 separately named defendants. Plaintiffs then filed a First Amended Complaint (Dkt. No. 38), in which they added additional claims and defendants. The Court dismissed Plaintiffs' claims against all defendants other than Google for failure to state a claim against those defendants, and granted Plaintiffs leave to file another amended complaint alleging claims of greater specificity against those defendants (Dkt. No. 112). Plaintiffs then filed their Second Amended Complaint on October 6, 2009 (Dkt. No. 134), alleging claims against only Google. Accordingly, despite having been granted the opportunity to bring claims against those other former defendants by a date certain, Plaintiffs purposefully chose not to.

As Google has repeatedly demonstrated, Plaintiffs' motivation in bringing this lawsuit was not to protect any legitimate rights in a trademark that they had not even used for more than five years. Rather, Plaintiffs are pursuing a proverbial "pot of gold" from Google and a number of other large corporations. However, Plaintiffs' recent actions suggest that they may have intentions of asserting new claims against other previously-dismissed defendants, as

demonstrated by discovery recently served on Google and others.[2] Plaintiffs are clearly fishing for evidence which would enable them to drag additional defendants back into this litigation.

In view of Plaintiffs' "dartboard" approach as described above, it is not unreasonable to believe that Plaintiffs may abandon their claims against Google in favor of claims against Motorola or other defendants, should Plaintiffs deem that approach more likely to lead to a quick settlement rather than to a judgment against them. Because there is no dispute that an actual controversy exists between Plaintiffs and Google, this Court should maintain Count V of Google's Counterclaims so as to preserve Google's right to obtain a finding of non-infringement in the event that Plaintiffs shift their focus to other previously named defendants whom they may come to view as more likely to acquiesce to their shakedown scheme. *See Kvaerner U.S. Inc. v. Kemper Environmental Ltd.*, 2006 WL 3064104, *3 (W.D.Pa. Oct. 26, 2006) (denying motion to dismiss declaratory judgment counterclaim on the basis that the counterclaim gave defendants "the ability to have the Court rule on these issues if, for example, [plaintiff] were to voluntarily dismiss its claim").

Further, Google notes that the authority relied upon by Plaintiffs is largely inapposite, inasmuch as it involves cases in which the declaratory judgment claim at issue was entirely duplicative of an affirmative defense asserted by the same party. That is simply not the case here.

---

[2] For instance, Plaintiffs recently served additional document requests on Google requesting documents relating to contacts with the State of Illinois of the four individual Google employees whom Plaintiffs previously named as defendants (see Ex. 1 to Google's Reply in Support of its Motion for Entry of Protective Order, Dkt. No. 152, Request Nos. 1-7). Likewise, Plaintiffs have served a subpoena on Motorola, Inc., also previously a named defendant, seeking information regarding, *inter alia*, Motorola's agreements and dealings with third parties not involved in this litigation and its revenues (see Motorola's pending Motion to Quash, Dkt. No. 155). Such requests have no bearing on any actual issues involved in this litigation, and are simply fishing expeditions seeking to determine whether Plaintiffs will attempt to revive their claims against those non-parties.

## III. PLAINTIFFS REQUIRE THE COURT TO ENGAGE IN IMPERMISSIBLE FACT FINDING IN ORDER TO GRANT THEIR MOTION TO DISMISS COUNTS I, II AND IV

In seeking the dismissal of Google's Counterclaim Counts I, II and IV, for Google's purported failure to state a claim that Plaintiffs committed fraud on the USPTO in association with the renewal of Plaintiffs' Trademark Registration (Pla. Memo., pp. 3-5), Plaintiffs require this Court to engage in impermissible fact finding that the ANDROID DATA trademark was in use in commerce and/or that ADI had no intent to mislead the USPTO.

Fraud in procuring the renewal of a trademark registration occurs when a trademark applicant or owner "knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). Plaintiffs incorrectly argue that Google purportedly failed to allege that ADI made a false representation of material fact to the USPTO (Pla. Memo., p. 3). However, Google has expressly alleged that ADI's President, Megan Specht, falsely represented to the USPTO that the ANDROID DATA mark was in use in commerce as of the April 21, 2009 filing of ADI's Section 8 Declaration (Counterclaims, ¶¶39-42), that ADI knew that representation was false (Id. ¶¶43, 54), and that the representation was material inasmuch as the USPTO relied upon it in maintaining the subject Registration on the Principal Register (Id. ¶¶47, 56).

Plaintiffs then argue that this Court should disregard Google's well-pled fraud claim, because Google also alleged that Specht had put up a website at the URL www.android-data.com, the day before ADI filed its Section 8 Declaration (Pla. Memo., pp. 3-4). Plaintiff's argument fails in numerous ways. First, Plaintiffs' argument that ADI's statement in the Section 8 Declaration that the ANDROID DATA trademark was "in use in commerce on or in connection with **all** goods or services listed in the existing registration" was merely a statement of "opinion" is without merit. As Plaintiffs' own cited authority states, "a representation is one

of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a fact." *Cain v. Osman*, 286 Fed. Appx. 934, 937 (7th Cir. 2008) (quoting *Marino v. United Bank of Ill., N.A.*, 484 N.E.2d 935, 937 (Ill.App.Ct. 1985)). Here, the Section 8 Declaration did not state that in ADI's "opinion" or "belief" the ANDROID DATA mark was in use in commerce—it stated that fact unequivocally, under oath. Section 8 of the Trademark Act (15 U.S.C. §1058) requires that a trademark owner submit a sworn affidavit stating that the registered mark is in use in commerce—not that the registrant "believes" the mark to be in use. Whether Ms. Specht's subjective state of mind when making the statement was one of opinion or one of certainty is irrelevant—the statement itself was clearly a factual one, not a statement of opinion as to whether the ANDROID DATA mark was being used in commerce. *See Reis Robotics USA, Inc. v. Concept Industries, Inc.*, 462 F.Supp.2d 897, 911 (N.D.Ill. 2006) (in the context of fraud claims, statements which can be "reasonably understood . . . to be statements of fact in light of the circumstances in which they were made . . . will be treated as statements of fact, regardless of whether they were intended as an opinion").

Second, in order for the Court to find that Google failed to state a claim of fraud before the USPTO, it would have to engage in impermissible fact finding on at least two issues: (i) whether the ANDROID DATA trademark was in fact being used in commerce at the time that ADI filed the Section 8 Declaration, and (ii) whether ADI intended to mislead the USPTO in making the false statement that its mark was in use. Plaintiffs wrongly presume that the mere fact they had activated a new website at the URL www.android-data.com one day before submitting the Section 8 Declaration conclusively establishes that they were using the ANDROID DATA mark in commerce. Plaintiffs are wrong. The law is clear that merely registering or using a URL which contains a trademark does not, in itself, constitute use of that

trademark in commerce. *See, e.g., Guichard v. Universal City Studios, LLLP*, 2007 WL 1750216, *2-3 (N.D.Cal. June 15, 2007) (finding that merely launching a website associated with a domain name comprising an alleged trademark does not establish use of that trademark in the actual sale or advertising of services in commerce); *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, 2004 WL 2474317, *3 (N.D.Ill. Sep. 30, 2004) ("The law is clear that the mere registration of a domain name does not constitute the use of the domain name as a trademark."). In order to conclude that the mark was in fact in use in commerce, and therefore the Section 8 Declaration was truthful, the Court would have to engage in fact finding based on a full factual record establishing, for example, whether such use was a *bona fide* use in commerce or merely a token use—an issue not properly considered in the context of a motion under Rule 12(b)(6). *See Equity Builders and Contractors, Inc. v. Russell*, 406 F.Supp.2d 882, 890 (N.D.Ill. 2005) (finding that determination of whether statements were false "require[d] development of the full factual record, which is not necessary at the pleading stage").

Finally, Plaintiffs' argument that an "erroneous legal conclusion" as to what constitutes use in commerce cannot serve as the basis of a fraud claim misreads Google's actual allegations. Google does not allege that ADI's false statement to the USPTO was based on an "erroneous legal conclusion"—rather, it asserts that the statement was made with the knowledge that it was false and with the intent to mislead the USPTO (Counterclaim, ¶¶43, 55). Plaintiffs invite the Court to rewrite those allegations to find that ADI's false statement was simply an innocent "misinterpretation" of the law. However, the Court cannot make findings regarding intent at this stage. *See Int'l Marketing Limited v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 729-30 (7th Cir. 1999) ("identifying the parties' intent requires fact-finding, a judicial function that has no part" in resolving a Rule 12(b)(6) motion); *Jenkins v. Mercantile Mortgage Co.*, 231

F.Supp.2d 737, 752 (N.D.Ill. 2002) ("Intent is a question of fact not appropriate in a motion to dismiss."). For purposes of this Motion, the Court must accept Google's allegations with respect to ADI's intent as true.

## IV. GOOGLE'S COUNT I STATES A VALID CLAIM FOR CANCELLATION OF PLAINTIFFS' REGISTRATION BASED ON AN INVALID ASSIGNMENT

Plaintiffs' arguments that Google failed to state a claim for cancellation of Plaintiffs' Trademark Registration, due to the fact that the purported 2002 assignment of that Registration from ADC to ADI was invalid (Pla. Memo., pp. 5-6), are likewise without merit. First, the law is clear that Plaintiffs may not rely on a purported assignment document attached to their Memorandum to show that the supposed assignment was not an invalid assignment in gross, in the absence of evidence authenticating that document. *See Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002) (a party may not rely on a document submitted in support of a Rule 12(b)(6) motion that requires discovery to authenticate or disambiguate); *Guaranty Residential Lending, Inc. v. Int'l Mortgage Center, Inc.*, 305 F.Supp.2d 846, 852 (N.D.Ill. 2004) ("[W]here a dispute exists as to whether a document provided by the moving party is authentic or complete, the document will not be considered on a motion to dismiss even if the document was referenced in the complaint and central to a claim.").

It is apparent from the face of Google's Counterclaims that there are serious questions regarding the authenticity of the purported assignment document. On April 21, 2009, ADI recorded at the USPTO a purported assignment of its trademark rights from ADC to ADI dated April 28, 2004—years after Erich Specht announced that the business had closed and three days before ADC was dissolved for failure to file an annual report—which appears to have been fraudulent (Counterclaims, ¶¶35-36). Months later, on August 5, 2009, Plaintiffs recorded at the USPTO a ***second*** purported "corrective" assignment from ADC to ADI dated December 26,

2002. Plaintiffs have offered no explanation for why they recorded two separate assignments between the same companies dated eighteen months apart, nor have they provided any evidence which would serve to authenticate the second assignment on which they now attempt to rely.[3] Accordingly, even if the Court agrees that the purported assignment is "central to Google's claim" (a point which Google does not concede), this Court cannot consider that unauthenticated document in the context of a Rule 12(b)(6) motion. *Tierney*, 304 F.3d at 739.

Nor is the purported assignment document even dispositive of the issue whether the alleged assignment was invalid as an assignment in gross. An assignment can be invalid even where the assignment document recites that the assignment was accompanied by goodwill and other assets, if the assignee had no intention of actually using the subject trademark in commerce. *See Archer Daniels Midland Co. v. Narula*, 2001 WL 804025, *6-7 (N.D.Ill. July 12, 2001) (noting that "the mere fact that the assignment document recites that good will was assigned along with the mark is not dispositive; courts look to the reality of the transaction to determine if good will has passed," including whether the assignee "continues to produce goods of the same nature and quality previously associated with the mark"); *R & R Partners, Inc. v. Tovar*, 447 F.Supp.2d 1141, 1149 (D.Nev. 2006) ("In determining whether good will has been transferred, the focus is on 'whether the assignee's use in fact so uses the mark as to continue the reality symbolized by the assigned mark.'") (citing *McCarthy on Trademarks and Unfair Competition* §18:4 (4th ed. 2006)). The question of whether ADI (the purported assignee) actually used or had any actual intention of using the ANDROID DATA trademark at the time of

[3] Moreover, in the event that Plaintiffs attempt to offer authentication evidence with their reply brief, this Court should decline to consider any such evidence. As Plaintiffs recently reminded this Court in its Response to Motion for Entry of Protective Order (Dkt. No. 149, p. 4 n.3), a reply is not the place to raise new issues or submit new evidence (citing *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 437 (N.D.Ill. 2006)).

the purported assignment requires development of a full factual record and cannot be resolved at the pleading stage.

Additionally, Plaintiffs' "consideration" argument misrepresents the law, and is easily disposed of. Plaintiffs claim, based solely on two unpublished opinions from 1989, that "the law does not require a valid assignment of a trademark to be supported by consideration" (Pla. Memo., p. 6). Plaintiffs are wrong. The law is clear that assignments are governed by contract law and are subject to the same requisites for validity as are other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration. *Gen'l Citrus Int'l Inc. v. Remien*, 2009 WL 483855, *14 (N.D.Ill. Feb. 26, 2009) (citing *Northwest Diversified, Inc. v. Desai*, 818 N.E.2d 753, 761 (Ill.App.Ct. 2004)); *Cincinnati Ins. Co. v. Am. Hardware Manufacturers Ass'n*, 898 N.E.2d 216, 230 (Ill.App.Ct. 2008). Courts have found assignments lacking any consideration to be invalid. *See, e.g., Mimica v. Area Interstate Trucking, Inc.*, 620 N.E.2d 1328, 1335 (Ill.App.Ct. 1993) (finding patent assignment invalid for lack of consideration). Of the two unpublished opinions cited by Plaintiffs, one is clearly inapposite[4] and the other simply got it wrong.[5] Thus, Plaintiffs' argument lacks merit.

[4] The issue before the court in *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 1989 WL 51062 (N.D.Ill. May 8, 1989) was whether the parties had intended an agreement to function as an assignment of all rights in a trademark, not whether the agreement was supported by valid consideration. *Id.* at *2.

[5] Notably, the opinion in *Shima Am. Corp. v. S.M. Arnold, Inc.*, 1989 WL 65014 (N.D.Ill. June 7, 1989) does not cite a single opinion from another court to support its statement that "a signed written assignment is irrevocable and therefore unenforceable even if unsupported by consideration." *Id.* at *2. That court was likely referring to the standard for a gratuitous assignment (such as a gift or inheritance), which does not require consideration, rather than an assignment for value, which does require consideration. *Gen'l Citrus*, 2009 WL 483855 at *14. Where, as here, nothing in the record before the Court suggests that the assignment was a gratuitous one, it must be supported by valuable consideration. *Id.*

## V. GOOGLE'S COUNT VI STATES A CLAIM FOR LANHAM ACT UNFAIR COMPETITION BASED ON PLAINTIFFS' PUBLIC MISREPRESENTATIONS REGARDING THEIR PURPORTED RIGHTS

Plaintiffs argue that Google fails to state a claim for unfair competition under §43(a) of the Lanham Act, 15 U.S.C. §1125(a), simply because Plaintiffs own a federal trademark registration (Pla. Memo., pp. 7-8). Plaintiffs contend that their assertions of purported rights, and the purported infringement of those rights by others (including Google), were made in "good faith," and that Google has failed to allege that Plaintiffs' actions were taken in bad faith.

However, a fair reading of Google's Counterclaims illustrates that Google has adequately alleged that Plaintiffs' actions were in fact undertaken in bad faith. As alleged in Google's Counterclaims, after Plaintiffs learned from a third party (Robblee) that their about-to-expire trademark registration could serve as a vehicle to shake down Google for a large settlement, they undertook a fraudulent scheme to maintain their federal trademark registration when they knew and understood that the registered mark was not in use and had been abandoned years earlier (Counterclaims, ¶¶26-49). Plaintiffs' wrongful acts taken in furtherance of that scheme include (i) recording not one, but two likely fraudulent assignment documents with the USPTO in order to fabricate a chain of title for that Registration (Counterclaims, ¶¶35-38, 48-49); (ii) falsely asserting to the USPTO under oath that the ANDROID DATA trademark was in use in commerce (Id., ¶¶39-43); (iii) reinstating a defunct corporate entity (ADC) which had been inactive and dissolved for at least five years, in furtherance of Plaintiffs' efforts to fabricate a valid chain of title (Id., ¶¶18-21, 44); (iv) filing a trademark infringement lawsuit naming nearly fifty defendants without any good faith basis for doing so (Id., ¶¶45-46); and (v) representing publicly that they had the exclusive right to use the asserted marks they had admittedly abandoned years earlier (Id., ¶¶93-94). Certainly Google is not claiming that these actions were taken by Plaintiffs in good faith.

Under any reasonable reading of Google's Counterclaims, Plaintiffs' actions were intentional and in bad faith, regardless of whether the words "bad faith" were recited. The law is clear that a party may assert an unfair competition claim under §43(a) of the Lanham Act against an owner of trademark or other intellectual property rights where the trademark owner's efforts to enforce its purported rights involve false representations or were undertaken in bad faith. *See Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.Supp.2d 704, 708 (N.D.Ill. 2006) (noting that "a trademark owner may not send infringement letters which contain false statements or which are issued in bad faith," which may cause the trademark owner to lose the protection otherwise afforded to enforce its rights); *DCI Marketing, Inc. v. Justrite Mfg. Co.*, 213 F.Supp.2d 971, 972 (E.D.Wis. 2002) ("[A] party violates the Lanham Act . . . if it asserts in the marketplace rights to patents and other intellectual property in bad faith."). Indeed, other cases have found that a party's representations that exaggerate the scope of a patent or other legal right violate §43(a) of the Lanham Act, even without any allegation of bad faith. *See Am. Broadcasting Co. v. Maljack Productions, Inc.*, 34 F.Supp.2d 665, 677-78 (N.D.Ill. 1998) (noting that, unlike common law tortious interference and unfair competition claims, bad faith is not an element of a §43(a) claim, because "there is no requirement under the Lanham Act that a false representation be made willfully or with the intent to deceive"). Thus, the *Am. Broadcasting* court found that an action under §43(a) exists where a party makes false representations in the marketplace that a party enjoys exclusive property rights (such as copyright or trademark rights), even in the absence of bad faith. *Id.* at 678-79.

As described above, Google has adequately alleged that Plaintiffs' representations in the marketplace regarding its purported trademark rights were both false and made in bad faith, thus adequately supporting Google's claim for unfair competition under §43(a). *See id.* (denying

motion to dismiss unfair competition claims where counterclaims alleged that plaintiff had sent letters in bad faith).

## VI. GOOGLE'S COUNT VII STATES A CLAIM FOR COMMON LAW UNFAIR COMPETITION

Plaintiffs also argue that Google's claim of common law unfair competition in Count VII fails for the same reasons as Count VI since the elements of the claims are identical (Pla. Memo., pp. 8-9). At the outset, Google notes that the cases cited by Plaintiffs on this issue do not actually stand for the proposition which Plaintiffs ascribe to them.[6] Putting Plaintiffs' mischaracterization of the law aside, other Courts in this District have found that the elements of those claims are not identical, inasmuch as a §43(a) claim does not require an assertion of bad faith. *Am. Broadcasting*, 34 F.Supp.2d at 678. However, to the extent that a common law unfair competition claim does require an allegation of bad faith, as noted above, a fair reading of Google's counterclaims shows that Plaintiffs' actions were in fact undertaken in bad faith.

Plaintiffs further argue (relying once again on a single unpublished opinion that fails to cite any other authority on point) that Google's common law unfair competition claim should be dismissed, because Google has not specified which state's common law governs its claim (Pla. Memo., p. 9). Ignoring that Plaintiffs' position here would be equally applicable to their own common law counts in their Second Amended Complaint, which also fail to specify a particular state's common law (see Count IV in Plaintiffs' Second Amended Complaint, Dkt. No. 134), Plaintiffs' argument fails because "it is well established that [parties] are under no obligation to

---

[6] For instance, the decision in *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 1997 WL 34618437 (E.D.Wis. Nov. 26, 1997) held only that the basis for an unfair competition claim under federal law is under §43(a) of the Lanham Act, but did not address the elements of a state law unfair competition claim. *Id.* at *6. Moreover, the decision in *Art Line, Inc. v. Universal Design Collections, Inc.*, 966 F.Supp. 737 (N.D.Ill. 1997) found simply that federal and common law unfair competition claims both required an analysis of whether certain statements were made in bad faith, but did not expressly state that the elements of such claims were identical. *Id.* at 743-44. Similarly, *Informix Software, Inc. v. Oracle Corp.,* 927 F.Supp. 1283 (N.D.Cal. 1996) did not even involve a claim of common law unfair competition, but rather involved federal and state statutory causes of action. *Id.* at 1287.

plead legal theories." *McCullah v. Gadert*, 344 F.3d 655, 659 (7th Cir. 2003). *See also Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) (noting that a plaintiff "doesn't have to specify the statute or common law principle that the defendant has violated").

Moreover, unless there is a genuine conflict of law, Illinois law applies as the law of the forum. *Fararo v. Sink LLC*, 2004 WL 635062, *3 (N.D.Ill. Mar. 30, 2004) (citing *Dearborn Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 719 N.E.2d 1092, 1096 (Ill.App.Ct. 1999)). *See also Reyna Capital Corp. v. LML Technologies, Inc.*, 2007 WL 1029099, *4 (N.D.Ill. Mar. 30, 2007) ("Federal district courts in a diversity matter apply the substantive law of the forum state which, in this case, is Illinois law."). Plaintiffs' argument that they have not been provided with "fair notice of the claim against them" (Pla. Memo., p. 9) lacks merit, inasmuch as Plaintiffs have failed to identify any reason why Illinois' common law of unfair competition would not apply to Count VII. Even if there were an actual conflict of law, the determination of which state's law should apply would be governed by applicable choice of law principles, not by Google's pleadings. *See, e.g., Abbott Laboratories v. Nutramax Products, Inc.*, 844 F.Supp. 443, 446 (N.D.Ill. 1994) (finding that Illinois law applied to trade dress dilution claim, notwithstanding plaintiff's invocation of Massachusetts law in its complaint). Accordingly, there is no basis for this Court to dismiss Count VII.

## VII. CONCLUSION

For the reasons set forth in hereinabove, Google respectfully requests that this Court deny Plaintiffs' Motion to Strike or Dismiss Counterclaims.

Respectfully submitted,

Dated: January 4, 2010

/s Herbert H. Finn
Herbert H. Finn
Richard D. Harris
Jeffrey P. Dunning
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
(312) 456-8400

Counsel for Google Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I electronically filed the foregoing GOOGLE INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND DISMISS COUNTERCLAIMS with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated: January 4, 2010 /s Herbert H. Finn