**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERICH SPECHT, et al., | ) |
|               Plaintiffs, | ) Case No.: 09-cv-2572 |
| v. | ) Hon. Harry D. Leinenweber |
| GOOGLE INC., | ) Magistrate Judge Cole |
|               Defendant. | ) |

**MOTOROLA, INC.'S REPLY IN SUPPORT OF
ITS MOTION TO QUASH NON-PARTY SUBPOENA**

Notwithstanding Plaintiffs' tepid claims of relevance, the Court should recognize the Subpoena to non-party Motorola for exactly what it is – an improper attempt by Plaintiffs to obtain discovery from Motorola in advance of Plaintiffs' looming lawsuit against Motorola. In an effort to camouflage the true purpose of the Subpoena, for the first time, Plaintiffs claim that *Motorola's* highly confidential financial documents are relevant to calculate damages for Plaintiffs' trademark infringement claims against *Google.* Contrary to Plaintiffs' new theory, Motorola's confidential financial documents are not relevant to any issue in *this* case and any marginal relevance the documents may have is outweighed by the burden of requiring non-party Motorola to produce highly confidential information that Motorola zealously protects from its competitors, including Google.

Further, any purported need for the documents requested from Motorola must be weighed against the posture of this case. Here, Google has made a *prima facie* showing that Plaintiffs abandoned the ANDROID DATA mark. Throughout the past seven months of discovery, Plaintiffs have failed to produce a single document showing that Plaintiffs used the ANDROID

DATA mark in commerce during the years before Google first adopted the mark. Therefore, at a minimum, Motorola should not be burdened with responding to the Subpoena until Plaintiffs demonstrate that their case will proceed to the issue of damages.

I.  **Plaintiffs Concede that the Determination Whether to Quash the Subpoena is Based Solely Upon the Unique Facts and Circumstances of this Case.**

Plaintiffs concede that the determination of whether a subpoena imposes an undue burden on a non-party such as Motorola must be made on a case-by-case basis (Response, p. 9.), focusing on "such factors as relevance, the need of the party for the documents, the breadth of the document request and the burden imposed." *The Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service Ctr. of Haverstraw Inc.*, 211 F.R.D. 658, 662 (D. Kansas 2003). At the same time, however, Plaintiffs ask the Court to disregard the authority cited by Motorola, claiming that the facts in the cases cited do not mirror the precise fact pattern of this case. (Response, pp. 7-8.) True, Motorola did not cite any case having the identical posture where, in the context of a trademark infringement case, a plaintiff subpoenaed a former defendant requesting the production of overly broad categories of documents irrelevant to issues in litigation. However, the authority cited by Motorola stands for the well-settled and straightforward propositions that: (i) a primary purpose of Rule 45 is to protect a third-party subpoena recipient from undue burden; (ii) the proponent of the subpoena bears the burden of proving the relevance of the document requests; (iii) the non-party should not be required to produce irrelevant documents; and (iv) the Court should balance any alleged need for the documents against the burden to the non-party respondent. (Initial Motion, pp. 5-6.) In contrast, the single case relied upon by Plaintiffs does not even pertain to either third-party subpoenas or determinations of motions to quash. *See* Response at p. 9, citing *In re Sulfuric Acid Anti Trust Litig.*, 231 F.R.D. 351 (N.D. Ill.

2005) (question of undue burden examined in context of party discovery in anti-trust litigation). By incorrectly relying on *In re Sulfuric Acid*, Plaintiffs ignore the fact that the status of a person as a non-party is a significant factor that, under circumstances such as those here, strongly weighs in favor of finding an undue burden and against disclosure. *See Goodyear Tire & Rubber Co.*, 211 F.R.D. at 663.

## II. The Subpoena is an Improper Attempt by Plaintiffs to Seek Pre-Suit Discovery from Motorola.

As the Court is well aware, Plaintiffs initially sued not only Google, but also Motorola and approximately 50 other persons and entities for trademark infringement. After motion and briefing, the Court dismissed Motorola and all other non-Google defendants from the case, and granted Plaintiffs leave to file a further amended complaint to re-state claims against Motorola and other former defendants. (Dkt. 112.) While Plaintiffs filed an amended complaint omitting Motorola, they have indicated their intent to sue Motorola for trademark infringement in the future. On December 17, 2009, Plaintiffs asked Motorola to enter into an agreement to toll the statute of limitations for any claims Plaintiffs may have against Motorola. (Exhibit 2, attached hereto.) In early January 2010, Plaintiffs repeated their request. Motorola advised that it would not enter into a tolling agreement.

Against this backdrop, and the impending lawsuit Plaintiffs have threatened to file against Motorola, the Subpoena should be viewed for exactly what it is – an attempt to obtain pre-filing discovery from Motorola for purposes of using any information obtained against Motorola in future litigation. It would be patently unfair, however, to allow Plaintiffs to discover Motorola's highly confidential financial information, while Motorola is not afforded the protections and rights normally provided to defendants in a civil case.

### III. Plaintiffs' Requests are Irrelevant to Any Claims Against Google.

Plaintiffs apparently acknowledge that their Subpoena, which seeks 18 broad categories of documents[1] directed primarily at Motorola's own business and sales of Motorola's own products, is overly broad, and they now agree to seek only three (still very broad) categories of documents. (Response, p. 3.) Specifically, Plaintiffs now assert that they only seek documents relating to: (i) agreements concerning the unrelated DROID mark owned by another non-party, LucasFilm; (ii) Motorola's financial documents concerning the sales and projections relative to Motorola's own DROID products (again, a mark not at issue in this case); and (iii) documents concerning Plaintiffs and this litigation. Even as "modified," the Subpoena still seeks Motorola documents that have no relevance to Plaintiffs' claims against Google.[2] (Response, p. 3.)

### A   The Requested Documents Do Not Have "Significant Bearing" on Either Plaintiffs' Direct or Contributory Infringement Claims.

Having attempted to create the illusion of paring down the scope of the Subpoena, Plaintiffs summarily assert that the "Droid Licensing Documents and Droid Financial Documents have significant bearing on Plaintiffs' direct infringement claim against Google…" (Response, p. 5.) Plaintiffs state that to establish direct infringement, they must prove: (a) that Plaintiffs have a protectable mark, and (b) that there is a likelihood of confusion between

---

[1] Plaintiffs overstate their purported narrowing of the scope of their Subpoena. What Plaintiffs re-label as "three categories of documents" constitute nine separate and distinct requests. (Response, p. 2-3).

[2] Plaintiffs contend that Motorola admitted that certain "Plaintiff-Related Documents" (*i.e.*, Request Nos. 12-14) were relevant, and, therefore, Motorola should be required to produce those documents. (Response, p. 4.) Motorola did not admit that such requests seek relevant documents. Indeed, as set forth in footnote six below, Request Nos. 12-14 are overbroad and seek documents not relevant to the litigation between Google and Plaintiffs. Moreover, responsive documents that exist, if any, likely would be privileged and immune from production.

Plaintiffs' mark and Google's Android mark.[3] However, Plaintiffs fail to explain how documents relating to the licensing of an unrelated mark or Motorola's financial documents relating to its own revenues (both gross and net) and expenses prove that either (a) Plaintiffs have a protectable mark, or (b) that a likelihood of confusion exists between the Plaintiffs' and Google's respective marks.

Plaintiffs next argue that these documents "have significant bearing" on Plaintiffs' "…contributory infringement claim against Google for Motorola's infringing activity." (Response, p. 5.) Plaintiffs state that to prove contributory infringement, they "must prove that [Google] 'intentionally induced a third party to infringe'"[4] Plaintiffs' mark. *Id*. As before, nowhere do Plaintiffs explain how documents relating to licenses on a different mark or Motorola's own internal financial documents prove Google's intent to cause infringement.

### B. The Requested Documents are Irrelevant to Plaintiffs' Purported Damages Recoverable from Google.

#### 1. The Documents are Not Relevant to Plaintiffs' Contributory Infringement Claim.

Plaintiffs assert that the documents they seek are necessary to prove damages against Google. Specifically, Plaintiffs argue that Motorola's profits from sales of its Droid phones are relevant to calculate potential damages against Google should Google be found liable for contributory trademark infringement. (Response, p. 6.) Plaintiffs are wrong. Motorola's highly confidential documents relating to its actual or projected sales, revenues, expenses and/or profits from the sales of phones that are not even branded with the ANDROID DATA mark are not

---

[3] For purposes of this Motion only, Motorola does not dispute Plaintiffs' characterization of their required proofs on this issue.

relevant to the calculation of any damages that might be assessed against Google should Google be found liable for contributory trademark infringement. While a first party defendant may be liable for the harm caused by a second party defendant under a theory of contributory infringement, *see e.g., Days Inn Worldwide Inc. v. Lincoln Park Hotels, Inc*., 500 F. Supp. 2d 770 (N.D. Ill. 2007), it is not correct that the measure of damages against the first party defendant can be based on the second party's sales. Instead, the measure of damages is the first party's (*i.e.,* Google's) profit from its contributory infringement. *Id.* at 778.

In addition to citing inapposite authority, Plaintiffs ignore the plain language of the Lanham Act that, consistent with the *Days Inn* opinion, limits Plaintiffs' remedy or "damages" to Google's profits if Plaintiffs are able to prove Google's liability under a contributory trademark infringement theory. 15 U.S.C. § 1117(a). Section 1117(a) of the Lanham Act expressly limits Plaintiffs' potential damages to: "(1) *defendant's* profits, (2) any damages sustained by plaintiffs, and (3) the costs of the action." *Id.* (emphasis added). Section 1117(a) further provides that that "[i]n assessing profits the plaintiff shall be required to prove *defendant's* sales only. . . ." *Id.* (emphasis added). Plaintiffs do not cite any authority that supports, let alone holds, that contrary to the express language of the Lanham Act, their novel proposition that a non-party's (such as Motorola's) sales, revenues and/or profits are relevant to a damages calculation of a defendant (such as Google) in a contributory trademark infringement case. Here, Google is the only defendant in the case. Therefore, Plaintiffs' damages are expressly limited to Google's own profits and/or damages sustained to Plaintiffs' business -- neither of which can be determined from Motorola's sales, revenues or profit margins.

---

[4] For purposes of this Motion only, Motorola does not dispute Plaintiffs' characterization of their required proofs on this issue.

In an attempt to support their argument, Plaintiffs cite to the court's decision in *Days Inn,* 500 F. Supp. 2d 770. However, that decision does not support Plaintiffs' assertion that Motorola's financials are relevant. In *Days Inn*, Defendant Lincoln Park Hotels (LPH) was found to be liable for contributory infringement due to co-Defendant Gold Coast Investors' (GCI) continued use of the plaintiff's trademark after GCI had bought hotels from Defendant LPH. Unlike this case, however, both the direct (GCI) and contributory (LPH) infringers were named defendants. In addition to this crucial distinction, when conducting a damages analysis related to LPH's contributory infringement, the *Days Inn* court focused exclusively on the compensation paid by GCI to LPH due to the purchase of the hotels -- not the sales, revenues or profits of the direct infringer (and co-defendant) GCI. *Id* at 778. In other words, the only information that may be relevant to Plaintiffs' damages as against Google (the sole defendant in this case) is the monies received by Google, if any, for use of the ANDROID DATA mark, not Motorola's highly confidential financial information relating to the sales of its Droid phones.

### 2. The Documents are Not Relevant to Plaintiffs' Direct Infringement Claim.

Plaintiffs' argument that any royalty agreement between LucasFilms concerning the unrelated DROID mark is relevant to a determination of potential damages caused by Google's purported direct infringement of Plaintiffs' ANDROID DATA mark is similarly misplaced. Plaintiffs contend that these agreements, which address an entirely different mark, somehow evidence "a benchmark" of what a reasonable royalty may be as a measure of Plaintiffs' damages in their suit against Google. However, Plaintiffs fail to cite any authority that agreements among unrelated third parties are relevant to deriving a "reasonable royalty" or "benchmark" in a trademark infringement cases.

While it is true that courts will look at several factors, including royalty rates paid for or received for use of other trademarks comparable to the mark at issue, to calculate a "reasonable royalty" or "benchmark," courts do not consider agreements between third parties for unrelated marks as factors in calculating a reasonable royalty rate. At most, the only potentially relevant agreements would be those that the parties (*i.e.,* Plaintiffs and Google) entered into with others relating to the mark at issue or other similar marks. *See e.g., Sands, Taylor & Woods Co. v. Quaker Oats Co.*, No. 84-C-8075, 1993 WL 204092, at *4 (N.D. Ill. June 8, 1993*), aff'd in part by Sands, Taylor & Woods Co. v. Quaker Oats Co*., 34 F.3d 1340, 1345 (7th Cir. 1994) (affirming reasonable royalty calculation). Indeed, in *Sands, Taylor* – a case relied upon by Plaintiffs – the only licenses considered in reaching the reasonable royalty rate were those the plaintiff previously had entered into with others. *Id.* at * 5.[5] This point is made even clearer in the patent cases Plaintiffs *do* cite. In both *Glenayre Elecs. Inc v. Jackson,* 443 F.3d 851 (Fed Cir. 2006), and *Snellman v. Ricoh Co.,* 862 F.2d 283 (Fed. Cir. 1988), the courts looked to royalty agreements that had been entered into by the *actual parties* to the lawsuit concerning the *actual patents* at issue – not any unrelated third parties. As such, any agreements between LucasFilm and another non-party concerning the unrelated DROID mark have no relevance to Plaintiffs' damages.[6]

---

[5] Even though the requested information is not relevant to Motorola's direct infringement claim, the request is moot because there are no agreements between Motorola and LucasFilm related to the DROID mark and Motorola has not paid any amounts to LucasFilm for use of the DROID mark.

[6] Plaintiffs do not discuss the relevance of their request for Motorola's documents relating to Plaintiffs and the ANDRIOD DATA mark. The omission is likely because no legitimate argument can be made as to why those documents are relevant to a case solely between Plaintiffs and Google. Indeed, documents relating to what Motorola's personnel had to say about Plaintiffs and the ANDRIOD DATA mark are only germane to a dispute between Plaintiffs and Motorola. The fact that Plaintiffs requested this information is further proof that they are abusing discovery in this case to gather evidence for a future suit against Motorola.

## IV. The Court Should Not Require Motorola to Produce Its Highly Confidential Financial Documents.

Even if the Court were to conclude that the entirety of the Subpoena is not an improper attempt to obtain pre-suit discovery from Motorola *and* that the documents sought were relevant to Plaintiffs' claims against Google, the Court still should quash the Subpoena because it seeks the disclosure of Motorola's highly confidential financial information. Rule 45(c)(3)(B)(i) expressly safeguards non-parties from disclosing confidential and other trade information when it is not necessary to the requesting party's case. Indeed, "if the information sought is confidential and its disclosure might be harmful, then the burden shifts to the party seeking discovery to establish that disclosure of . . . confidential information is relevant and necessary to its case." *Mannington Mills, Inc. v. Armstrong World Industries, Inc*. 206 F.R.D.525, 528 (D. Del. 2002) (third-party subpoena quashed where potential hardship to non-party in producing confidential information clearly outweighed any tangential need by requesting party for its case); *see also Insulate America v. Masco Corp.,* 227 F.R.D. 427, 434 (W.D.N.C. 2005) (subpoena seeking confidential financial and trade information from non-party quashed where requesting party failed to establish need in its case). Furthermore, protective orders often are not sufficient to protect a non-party's confidential information, especially when the subpoena requires the non-party to disclose information to a competitor. *See, e.g., Mannington Mills, Inc.,* 206 F.R.D. at 530-31 (recognizing protective orders do not prevent parties from disclosing non-party competitor's confidential information during trial). This is especially true in this case because Motorola is not a party to the lawsuit and is not able to police the protective order, especially

9

where both Plaintiffs and Google[7] would be interested in using Motorola's highly confidential documents.

Here, the requested financial information is highly confidential and its disclosure would be harmful to Motorola.  Motorola does not disclose information relating to its profits from the sales of particular cell phones and zealously guards such information from its competitors.  (Exhibit 3, Declaration of Edward G. Tharp, ¶¶ 4-7.)  Specifically, the requested financial information is marked and treated under Motorola's iProtect Policy as "Motorola Confidential Restricted Information."  (*Id.* at ¶ 4.)  As a condition of employment, Motorola employees must adhere to the iProtect Policy for the marking and treatment of confidential information.  Employees are required to take training regarding the policy every two years.  (*Id.* at ¶ 5.)

The confidential financial information sought by the Subpoena that relates specifically to Motorola's phone models, including the Droid phone, is never disclosed or reported to any third party and is circulated within Motorola on a limited or need-to-know basis.  Motorola will be harmed because any disclosure of Motorola's pricing and cost structure data by phone would give Motorola's customers, distributors and competitors a competitive advantage by allowing them to undercut Motorola's prices, affect its profitabilit*y and* take away market share.  That concern is even greater in this case because Google, as a result of the sale and marketing of the Nexus One phone, is a direct competitor of Motorola.  Indeed, the Google phone competes directly with the Motorola Droid.  Additionally, Motorola manufactures phones on behalf of other entities and has disclosed that it *will* manufacture a phone for Google.  Disclosure of

---

[7] As noted below, while Motorola uses Google's Android operating platform on some of its phones, Motorola and Google also are competitors in the highly competitive cell phone market.  Motorola would never voluntarily disclose the requested financial information to Google.

Motorola's pricing and cost structure, as well as its profit margins, would potentially harm Motorola in its price negotiations related to the Google project. (*Id.* at ¶¶ 6-7.)

The documents are irrelevant to Plaintiffs' theoretical damage claim. However, *even if* Plaintiffs could make such a showing, any consideration of an award of damages merely is speculative and, therefore, production of this information from Motorola at this point in the case is premature at best. *See Fadalla v. Life Automotive Products, Inc.*, 258 F.R.D. 501, 508 (M.D. Fla. 2007) (third-party subpoena request for confidential financial and trade information quashed where party's request for documents concerning damages was premature).

**V.     At a Minimum, Given the Highly Confidential Nature of the Documents Sought By Plaintiffs, the Court Should Quash the Subpoena Until Plaintiffs Show that they Did Not Abandon the ANDROID DATA Mark.**

Finally, even if Plaintiffs could show that: (i) the Subpoena was for a legitimate purpose, (ii) the Subpoena seeks relevant documents, and (iii) Motorola's financial documents were essential to a determination of their claim for damages against Google, the Court nevertheless should quash the Subpoena until such a time that Plaintiffs rebut Google's claims that Plaintiffs did not abandon the ANDROID DATA mark. Rather than respond to this issue in their Response, Plaintiffs try to deflect from their failure to produce any documentary evidence that they did not abandon the ANDROID DATA mark, claiming that they do not have the burden of showing that they did not abandon the mark. (Response, p. 10.)

Plaintiffs' sleight of hand misses the mark. Google has made a *prima facie* case that Plaintiffs abandoned the ANDROID DATA mark. Google already has shown that it found no uses by Plaintiffs of the ANDROID DATA mark in commerce for the three years prior to

11

Google's use.[8] To set up its summary judgment motion, Google served discovery requesting Plaintiffs to produce documents showing their uses of the mark during the relevant time periods. If Plaintiffs had not abandoned the mark, it would be simple for them to produce some document to prove their use of the mark. A single invoice between Plaintiffs and an independent third-party would suffice. Yet, for the last seven months, Plaintiffs have delayed their responses and have not a produced a single document showing that Plaintiffs used ANDROID DATA and asserted marks in commerce over the last three years. In light of Plaintiffs' failure to rebut Google's evidence of abandonment, it would be unreasonable and inequitable for the Court to require non-party Motorola, at this early stage, to produce its most confidential financial information.

## CONCLUSION

Based on the foregoing, the Court should quash the Subpoena and grant such other relief as it deems just and proper.

*Signature block contained on the following page.*

---

[8] To prove that Plaintiffs abandoned the mark, absent an express statement of abandonment by Plaintiffs, Google must prove a negative – that Plaintiffs did not use the mark in commerce and had no intent to resume any such use. Of course, three consecutive years of non-use, such as here, is presumed abandonment. Nonetheless, Google's proof will inherently be the absence of documents from Plaintiffs' own files showing use of the mark.

Date:   February 8, 2010                              Respectfully submitted,

                                                      MOTOROLA, INC.


                                                      By:  /s/    Jonathan M. Cyrluk
                                                              One of Its Attorneys

Jonathan M. Cyrluk
 *cyrlukj@stetleranduffy.com*
Mariah E. Moran
 *mmoran@stetleranduffy.com*
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois  60603
Tel.:   312.338.0200

## CERTIFICATE OF SERVICE

I, Jonathan M. Cyrluk, an attorney, certify that I caused copies of the foregoing **MOTOROLA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO QUASH NON-PARTY SUBPOENA** to be filed with the Clerk of Court and served on the persons listed on the attached service list via the Court's CM/ECF system this 8th day of February, 2010.

/s/ Jonathan M. Cyrluk
Jonathan M. Cyrluk

**SERVICE LIST**

| | |
|---|---|
| Richard Daniel Harris<br>Herbert H. Finn<br>Jeffrey P. Dunning<br>Greenberg Traurig, LLP<br>77 West Wacker Drive, Suite 2500<br>Chicago, IL 60601<br>harrisr@gtlaw.com<br>finnh@gtlaw.com<br>dunningj@gtlaw.com | P. Andrew Fleming<br>John F. Shonkwiler<br>John B. Haarlow, Jr.<br>Novack & Macey, LLP<br>100 North Riverside Plaza<br>Chicago, IL 60606<br>andrewf@novackandmacey.com<br>jfs@novackandmacey.com<br>jhaarlow@novackandmacey.com |
| Martin Joseph Murphy<br>Martin J. Murphy Attorney at Law<br>2811 RFD<br>Long Grove, IL 60047<br>martym@villageinvestments.com | |