## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ERICH SPECHT, et al. | ) | |
| | ) | C.A. No. 09-cv-2572 |
| Plaintiffs, | ) | |
| | ) | Judge Leinenweber |
| v. | ) | |
| | ) | Magistrate Judge Cole |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |

### GOOGLE'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

The primary focus of Plaintiffs' Motion to Compel ("Motion," Dkt. No. 172) is Google's alleged refusal "to attempt to locate **all** potential sources of discovery within its control." (Motion, p. 2, emphasis added). In reality, Plaintiffs' Motion is nothing but another attempt to cause Google unnecessary effort and expense in defending this lawsuit.

Google is not required "to leave no stone unturned" in its discovery efforts -- as Plaintiffs appear to suggest. There is simply

> **…no obligation on the part of [Google] to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations**. Rather, [Google] must conduct a diligent search, which involves developing a reasonably comprehensive search strategy. Such a search strategy might, for example, include identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation. Defined search strategies are even more appropriate in cases involving electronic data, where the number of documents may be exponentially greater.

*Treppel v. Bioval Corporation*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006, emphasis added, citations omitted).

That is precisely what Google has done in this case. Google identified sixteen (16) individuals it believed would be most likely to have responsive electronically stored information ("ESI") and were most likely to receive emails potentially relevant to the claims and defenses

asserted in this case, collected e-mails and other ESI from those individuals, and conducted carefully crafted keyword searches to identify documents which were likely to be responsive to Plaintiffs' requests for production (Ex. 1, Brewer Decl., ¶¶4-5).  These custodians include the Google employees who (i) had primary responsibility over the development, distribution and marketing of Google's "Android" mobile operating system ("Android OS"), (ii) were directly involved in Google's process of approving and managing use of the ANDROID trademark, and (iii) directly participated in the pre-acquisition negotiations between Google and Android, Inc. in 2005 (Id., ¶4).

Notably, Plaintiffs are not objecting to the reasonableness of Google's search methodology, which has involved the review of over 130,000 documents identified by Google's keyword searches (Ex. 1, Brewer Decl., ¶5).  Plaintiffs' only objection is that Google should collect and search data from additional custodians, presumably so Plaintiffs can continue their seemingly endless fishing expedition.

However, Plaintiffs' Motion is devoid of any detail on how the requested information would impact any asserted claims and defenses.  This is a trademark infringement case, with Plaintiffs claiming that Google's use of the ANDROID mark in association with its Android OS infringes Plaintiffs' alleged rights in the ANDROID DATA mark for computer e-commerce software (see generally Plaintiffs' Second Amended Complaint ("SAC"), Dkt. No. 134).  The issues arising from Plaintiffs' claims are fairly straightforward -- namely, whether Plaintiffs possess any valid trademark rights in their purported ANDROID DATA mark and, if so, whether Google's use of its ANDROID mark in commerce has created a likelihood of confusion.  If liability is found to exist, then the Court must also determine the measure of damages, if any, to which Plaintiffs are entitled.

The additional documentation that Plaintiffs are asking Google to search for relates primarily to Google's acquisition of Android, Inc and its technology in June 2005 – long before Google ever publicly used the ANDROID trademark in commerce.  To the extent that Google or Android Inc. ascribed any value to any purported "Android trademark" in 2005, documents relating to that issue would certainly have been found in the documents already produced (including Google's hard copy files relating to the acquisition) or within documents from the custodians whose ESI has already been searched.

Despite having searched ESI associated with those custodians most likely to have pertinent information, Plaintiffs now request an order requiring Google to go beyond its well-reasoned search protocol and:

1) search the personal computers of several of its employees -- Andrew Rubin, Nickolas Sears and Richard Miner (three of the four so-called "Android, Inc. Founders")

2) "attempt to secure . . . relevant discovery materials" from a third party, Christopher White, who has not been a Google employee for almost four years, and

3) search ESI associated with four of its most senior executives -- Larry Page and Sergey Brin (Google's co-founders, co-Presidents, and Directors), David Drummond (Google's Senior Vice President, Corporate Development and Chief Legal Officer) and Alan Eustace (Google's Senior Vice President, Engineering & Research) -- who had little to no involvement with any issue related to this case.

Plaintiffs have failed to show any justification for their requests, and accordingly their Motion should be denied.

I.  **PLAINTIFFS HAVE FAILED TO MAKE A THRESHOLD SHOWING THAT ESI RELATING TO GOOGLE'S ACQUISITION OF ANDROID, INC. IS EVEN RELEVANT TO ANY ASSERTED CLAIM OR DEFENSE**

As the relevance of the information sought is not apparent on its face, Plaintiffs have the burden of making a threshold showing as to the relevance of the discovery being sought.  *See, e.g., Heartland Surgical Specialty Hospital, LLC v. Mid-West Division, Inc.*, 2007 U.S. Dist.

LEXIS 22090, *15-17 (D.Kan. Mar. 26, 2007) (denying plaintiff's motion to compel where the information sought was not "facially relevant," and the plaintiff failed to articulate any basis for finding that such information was reasonably calculated to lead to the discovery of relevant evidence).  Plaintiffs' Motion is premised on the assumption that they "are entitled to discover what monetary value Google placed on the acquisition of the name 'Android' when it purchased Android, Inc., which may be a partial measure of Plaintiffs' damages" (Motion, pp. 10-11).  However, this case is not about acquisition of a company or its technology -- it is about use of a trademark.

Plaintiffs have failed to identify any facts or evidence showing that Android, Inc. used the "ANDROID" designation in commerce as a trademark prior to being acquired by Google.[1]  Moreover, despite having been provided with all of Google's hard copy files relating to that acquisition, Plaintiffs have not identified any documents or other evidence indicating that either Google or Android, Inc. believed that a purported ANDROID trademark was among the assets being acquired by Google, or that Google's rights in the ANDROID mark are derivative of any rights Android, Inc. may have had prior to the acquisition.

For that reason, neither the supposed "Android, Inc. ESI" nor ESI from Messrs. Page, Brin, Drummond and Eustace bear any relevance to Plaintiffs' trademark infringement claims.  Further, even assuming that such ESI could fall under the broader category of "matter relevant to

---

[1] While Plaintiffs' SAC refers to such activities as soliciting venture capital funding, negotiating a business partnership, and negotiating the sale of its business to Google, the law is clear that such activities do not constitute use in commerce which would give rise to trademark rights.  *See, e.g., Am. Express Co. v. Goetz*, 515 F.3d 156, 161 (2nd Cir. 2008) (noting that trademark rights derive from appropriation and subsequent use in the marketplace, and "there can be no trademark absent goods sold") (citations omitted); *Duffy v. Charles Schwab & Co., Inc.*, 97 F.Supp.2d 592, 597-98 (D.N.J. 2000) (where plaintiff had not sold any product or service using alleged mark to the public and did not advertise his product to potential customers, his delivery of business proposals to a few potential business partners did not constitute a bona fide use in commerce); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F.Supp.2d 1083, 1089 (C.D.Cal. 2003) (noting that, although plaintiff had "goals and dreams" of producing a "Matrix" passenger car, "[t]rademark rights are not established by goals and dreams [but] are established only through prior use of the mark in the marketplace").

the subject matter involved in the action," Plaintiffs have failed to make any showing of good cause for the Court to order such discovery under Fed.R.Civ.P. 26(b)(1).

## II. GOOGLE HAS DETERMINED, THROUGH A REASONABLE INQUIRY, THAT NO "ANDROID, INC. ESI" EXISTS, MAKING PLAINTIFFS' FIRST REQUEST MOOT

As demonstrated by Plaintiffs' own exhibits, Google has already conducted a reasonable inquiry to determine whether any Android, Inc. ESI exists, and has determined that it does not. Google completed its acquisition of Android, Inc. in 2005, years before the events giving rise to this lawsuit. Google was interested in acquiring certain operating system technology then under development by Android, Inc. -- not e-mail servers or purported trademark rights. Thus, far from being the subject of some "mysterious disappearance" as Plaintiffs disingenuously suggest (Motion, p. 5), Android, Inc.'s hardware was simply not assimilated or retained by Google.[2]

Plaintiffs, fully aware of these facts, now assert that "Google refuses to ask the Android, Inc. Founders whether they have any Android, Inc. ESI on their home computers" (Motion, p. 4). That is simply not correct and Plaintiffs know it. Google did ask Mr. Rubin, the former CEO of Android, Inc. and the person most likely to know if any "Android, Inc. ESI" was retained by Google or anyone else, whether he had any knowledge of any "Android, Inc. ESI" that may exist today. He did not (Ex. 1, Brewer Decl., ¶6). Likewise, with regard to Messrs. Sears and Miner, Google has confirmed that neither of them have any knowledge of any "Android, Inc. ESI" in existence today. Google advised Plaintiffs on several occasions that it conducted a reasonable inquiry and determined that no potential sources of ESI acquired from Android, Inc. remain in existence:

---

[2] Google investigated whether it currently possesses any potential sources of ESI (e.g., e-mail servers) which it acquired from Android, Inc. in 2005, including inquiries posed to (i) Google's acquisitions integration team and (ii) Google's Android division, which is led by Mr. Rubin, the former CEO of Android, Inc. None of the Google employees consulted were able to identify any sources of "Android, Inc. ESI" currently within Google's possession, custody or control (Ex. 1, Brewer Decl., ¶6).

> With respect to the "Android, Inc. servers or data," your question presumes that the "Android, Inc. servers or data" were in existence prior to the filing of this case and remain in existence now – which according to our investigation does not appear to be the case. **As we have already advised you, our investigation of this issue, which included consulting with both Google's information technology personnel as well as former staff of Android, Inc., including Mr. Rubin, determined that neither any Android, Inc. server(s) nor any data from such server(s) appear to have been retained by Google.** Simply put, we have spoken to the individuals who should know if such server(s) and/or data existed, and have been told that they do not.

(Motion Ex. 3, p. 1, emphasis added).

Apparently not happy with these answers, Plaintiffs now ask this Court to order Google to do something it has already done -- investigate whether any potential sources of "Android, Inc. ESI" are within its possession, custody or control. In so doing, Plaintiffs simply ignore the fact that they were advised prior to filing this Motion that such an investigation had already been conducted and nothing was found.

Plaintiffs cite to a number of cases purportedly standing for the proposition that a corporation should be deemed to have control over relevant documents in the possession of its employees, where those documents were created "within the scope of employment" (Motion, p. 4), but those cases are not controlling here. Google's investigation determined that the "Android, Inc. ESI" no longer exists, which ends the inquiry.[3]

---

[3] If Plaintiffs truly have concerns about whether Google's representations regarding the non-existence of "Android, Inc. ESI" are accurate, then Plaintiffs should ask the individuals themselves about that issue before running into Court. See *Stallings-Daniel v. Northern Trust Co.*, 2002 WL 385566, *1 (N.D.Ill. Mar. 12, 2002) (denying plaintiffs' motion to compel additional electronic discovery where plaintiff did not address concerns regarding certain documents during deposition of the witness responsible for those documents). Notably, when Plaintiffs deposed Mr. Sears, they failed to ask him whether he had any "Android, Inc. ESI" on his personal computer(s).

### III. GOOGLE HAS NO OBLIGATION TO REQUEST UNSPECIFIED DOCUMENTATION FROM MR. WHITE, A FORMER EMPLOYEE WHO LEFT OVER THREE YEARS AGO

Plaintiffs next argue that Google should be required to "attempt to gather relevant discovery materials" from Christopher White merely because: 1) Mr. White was formerly employed by Google, 2) Google may or may not owe Mr. White additional compensation under the Android, Inc. Stock Purchase Agreement, and 3) Plaintiffs speculate that that Mr. White might have retained some responsive documents after leaving Google (Motion, pp. 6-7). In so doing, Plaintiffs wish to force Google to seek discovery, on Plaintiffs' behalf, from an individual who left Google in October 2006[4].

None of the cases cited by Plaintiffs stand for the proposition that a party served with document requests must contact every former employee who may have had some involvement with the issues in the case and inquire whether he/she has any responsive documents in his/her possession -- a rule which would be untenable.[5] Indeed, the Seventh Circuit has expressly rejected Plaintiffs' position, noting that "the fact that a party could obtain a document [from a third party] if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody or control; in fact it means the opposite." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993).

Plaintiffs have not pointed to any specific, relevant documents that they believe are in Mr. White's possession. Rather, Plaintiffs simply would prefer to avoid serving a subpoena on Mr. White to confirm what they already should know -- that he is unlikely to have any additional materials relevant to this action.

---

[4] Mr. White was a software engineer who had no managerial position at Google. See Mr. White's Declaration submitted as an exhibit to his Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 75-5).

[5] Those cases, at best, simply stand for the proposition that, where a party has knowledge that a former employee has specific, relevant documents in his/her possession, it should attempt to obtain them. Here, that is not the case.

IV. **PLAINTIFFS HAVE FAILED TO SHOW THAT ANY OF THE "DISPUTED CUSTODIANS" HAD ANY INVOLVEMENT WITH ANY <u>RELEVANT</u> ACTIONS OR EVENTS**

Plaintiffs next argue that Google should be required to conduct searches of all e-mail and other ESI associated with four of its most senior ranking individuals, the so-called "Disputed Custodians": (i) Google's co-founders, co-Presidents and members of its Board of Directors (Larry Page and Sergey Brin); (ii) its Senior Vice President, Corporate Development and Chief Legal Officer (David Drummond); and (iii) its Senior Vice President, Engineering & Research (Alan Eustace). However, Plaintiffs make no showing as to how any of these individuals were actually involved with any actions or events that are relevant to the claims or defenses asserted. Nor have Plaintiffs articulated any basis for their apparent belief that Google's search of the other sixteen (16) custodians who were directly involved with the events at issue was not sufficient.

As another District Court has noted:

[t]he mere prospect of discovery of high ranking corporate executives or board members confers substantial leverage upon the plaintiff. Therefore, **the court should be hesitant to allow such freewheeling discovery absent a sufficient threshold showing by plaintiff that he is entitled to it**.

*Froid v. Berner,* 649 F.Supp. 1418, 1420 (D.N.J. 1986) (emphasis added). Plaintiffs' request to search all ESI associated with four of Google's highest ranking executives has nothing to do with finding unique documents relevant to this action, and everything to do with attempting to obtain some perceived leverage in the conduct of their case. Having failed to make any threshold showing that any of the requested discovery bears any relevance to any asserted claims or defenses and/or is not otherwise redundant, Plaintiffs' request should be denied.

### A. Plaintiffs Have Failed to Make a Threshold Showing of Relevance of Any Information Which May Exist in the ESI of the "Disputed Custodians"[6]

Plaintiffs' argument that Google must search ESI associated with Messrs. Page, Brin, and Drummond merely because those individuals may have had some limited "involve[ment] in negotiating the terms of and/or approving the acquisition of Android, Inc." (Motion, p. 10) completely misses the mark. Even if that were the case (a conclusion not supported by any evidence relied upon by Plaintiffs), Google's acquisition of Android, Inc. bears no relevance to Plaintiffs' trademark infringement claims or purported damages.

Google has already produced the entirety of its hard copy files relating to the acquisition (Ex. 1, Brewer Decl., ¶7), a fact that Plaintiffs do not dispute. Yet, Plaintiffs have not identified a single document suggesting that Google ascribed any value to the acquisition of any purported trademark rights in "ANDROID," or that Android, Inc. believed that it was receiving value for the alleged conveyance of such trademark rights. Thus, Plaintiffs already have all of the evidence they need to determine "what monetary value Google placed on the acquisition of the name 'Android' when it purchased Android, Inc."

Even assuming that any aspect of Google's acquisition of Android, Inc. is relevant to an asserted claim or defense, Google has already searched the ESI of those employees who had direct responsibility for negotiating the terms of that acquisition – namely, Google's two in-house lawyers who were directly involved in its negotiations with Android, Inc., David Sobota

---

[6] Additionally, Plaintiffs' Motion should be denied because Plaintiffs have never served requests for production directed to ESI associated with the "Disputed Custodians." *Alvariza v. Home Depot,* 240 F.R.D. 586, 590 (D.Col. 2007) (noting that Rule 37 does not apply where information in dispute was not sought by a formal discovery request). Informal requests made in correspondence by counsel are not a substitute for a proper request under Rule 34. *See James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693, 695 (S.D.Fla. 2006) (noting that "[i]nformal requests for production lie outside the boundary of the discovery rules" and "[t]o treat correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery"). Plaintiffs have not made a Rule 34 request for ESI in the possession of Messrs. Page, Brin, Drummond or Eustace. Had Plaintiffs done so, Google would have had the opportunity to lodge proper objections in accordance with the Federal Rules. Rather, Plaintiffs' counsel simply requested through correspondence that Google consider searching ESI associated with those individuals.

and Matthew Suchermann, along with their assistants, Liz Eraker and Diane Passaro -- and has produced all responsive, non-privileged documents identified through those searches (Ex. 1, Brewer Decl., ¶8). Plaintiffs have not identified a single document from among those produced that supports their contention that Messrs. Page, Brin, or Drummond had any actual involvement in negotiating the terms of that acquisition.

Nor does the testimony of Mr. Sears -- who merely testified that Messrs. Page and Brin attended one or two preliminary meetings with Mr. Sears and Mr. Rubin in 2005, months before the acquisition, where they generally discussed Android, Inc.'s business plan -- lend any support to Plaintiffs' request. Indeed, with regard to Mr. Brin, that testimony shows only that Mr. Brin attended one meeting, at which the possibility of an acquisition was not even discussed (Motion Ex. 6, 62:14 – 64:11). While Mr. Sears testified that Mr. Page attended a subsequent meeting at which a potential acquisition was discussed, **"[t]he specifics of the terms of the acquisition weren't discussed"** and there was no discussion of any price that would be paid for such an acquisition (Motion Ex. 6, 72:6-18, emphasis added). Thus, Plaintiffs' claim that Messrs. Page and Brin were "involved in negotiating the terms of" that acquisition -- even if that fact were sufficient to make a threshold showing of relevance -- is directly contradicted by the very testimony upon which Plaintiffs rely.

Plaintiffs' position with regard to Messrs. Drummond and Eustace is even more tenuous. With respect to Mr. Drummond, Plaintiffs' only evidence involves Mr. Drummond's signature on a term sheet and Stock Purchase Agreement, and the fact that he was present at a Board of Directors meeting where the acquisition of Android, Inc. was approved (Motion, p. 10). Notably, neither of those documents make any reference to any acquisition of a purported "Android trademark," which is the linchpin of Plaintiffs' argument. Moreover, Mr. Drummond

was not a member of Google's Board of Directors at the time of said meeting (at which, again, there was no discussion of any purported ANDROID trademark), and attended merely in his capacity as Corporate Secretary to record the minutes of the meeting (Motion Ex. 9, p. 1).

With regard to Mr. Eustace, Plaintiffs rely upon only Mr. Sears' testimony that Mr. Rubin reports to Mr. Eustace, and a single e-mail which shows that Mr. Eustace was part of an e-mail chain discussion regarding the server that several of Google's domain names should be directed to (Motion Ex. 10). Indeed, the fact that Plaintiffs have that email confirms that any potentially relevant emails are likely to be found within the ESI of other custodians already searched by Google, and that searching of additional ESI associated with Google's highest-ranking executives is simply unwarranted[7].

Simply put, Plaintiffs have not identified a single fact or piece of evidence suggesting that any ESI associated with any of the "Disputed Custodians" is likely to contain any information that is relevant to any claim or defense that has not already been identified through Google's searching of ESI from other custodians. Nor have Plaintiffs shown good cause to subject Google to the additional burden of having to conduct the requested searches, which is not negligible, as Plaintiffs suggest. Google would be forced to incur the considerable expense associated with paying its electronic discovery vendor to search and process the data, as well as paying its attorneys to review any documents identified by such searches for responsiveness and privilege. As this Court no doubt appreciates, such costs are anything but negligible.

---

[7] Notably, Plaintiffs have not identified any authority supporting the proposition that a party must search for documents or ESI from every high-level executive who oversees a division involved in a lawsuit, regardless of that executive's involvement (or lack thereof) with the particular product at issue.

11

## V. CONCLUSION

For the reasons set forth in hereinabove, Google respectfully requests that this Court deny Plaintiffs' Motion to Compel in its entirety.

Respectfully submitted,

Dated: March 9, 2010

/s Herbert H. Finn
Herbert H. Finn
Richard D. Harris
Jeffrey P. Dunning
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
(312) 456-8400

Counsel for Google Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing GOOGLE INC.'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

Dated: March 9, 2010            /s Herbert H. Finn