**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ERICH SPECHT, *et al.*,** | |
| **Plaintiffs,** | **Case No. 09 C 2572** |
| **v.** | **Hon. Harry D. Leinenweber** |
| **GOOGLE, INC., *et al.*,** | |
| **Defendants.** | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Google's (hereinafter, "Google") Motion to Compel and for Sanctions regarding the deposition of Martin Murphy; and Plaintiff Erich Specht's (hereinafter, "Specht") Cross-Motion for a Protective Order and for Sanctions. For the reasons stated below, Google's Motions are granted in part and Specht's Motions are denied.

## I. BACKGROUND

Plaintiff Erich Specht brought this lawsuit for trademark infringement on behalf of himself and two software corporations that he owns – Android Data Corporation and Android's Dungeon, Inc. (hereinafter, collectively, the "Plaintiffs"). Plaintiffs, who own a federal trademark using the word "Android," allege that Google has infringed their trademark by using it in connection with Google's software for cellular phones. Google argues that Specht abandoned the trademark in 2004, when he admittedly allowed the

corporation that used the trademark to be involuntarily dissolved. Specht responds that he continued to use the trademark in commerce and did not intend to abandon it.

Google has brought a Motion to Compel and for Sanctions against Plaintiffs in regard to the deposition of Martin Murphy. Specht has filed a Cross-Motion for a Protective Order and for Sanctions. These motions arise out of the exceedingly contentious deposition of Martin Murphy, who wears the dual hats of (1) counsel for Specht and (2) proprietor of Village Realty and Investment Company ("VRI"), a onetime customer of one of Specht's Android software companies. Murphy also happens to be Erich Specht's brother-in-law.

Google argues that Specht's attorney, P. Andrew Fleming, "abused the attorney-client privilege and work-product doctrine to prevent the witness from testifying on clearly non-privileged issues [and] abused the deposition process through the use of speaking objections and outright coaching," among other things. Google seeks an order to compel a second deposition in which Mr. Murphy must answer certain questions that Google considers were left unanswered the first time. Google also seeks sanctions against Mr. Fleming.

Plaintiffs argue that deposing an opponent's attorney is a "discouraged practice" that "disrupts the adversarial system." Plaintiffs argue that Fleming's objections were merely protecting

privileged information from Google's overly aggressive interrogation. Plaintiffs cross-move for a protective order to bar any further deposition of Mr. Murphy and also ask for sanctions against Google.

## II. DISCUSSION

### A. Mr. Fleming's and Mr. Murphy's Actions at the Deposition

#### *1. Speaking Objections and Witness Coaching*

Federal Rule of Civil Procedure 30(c)(2) prescribes the proper form of objections during depositions:

> An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Thus, a party who wishes to object to a question must do so concisely, and the deponent must still answer the question. *Breaux v. Haliburton Energy Servs.*, 2006 WL 2460748, *4 (E.D. La. 2006) ("[O]nce the objection is made, the witness answers the question and the parties move on."). The only exceptions are those stated in the last sentence of Rule 30(c)(2), *i.e.*, preservation of a privilege, enforcing a limitation ordered by the court, or presentation of a motion to terminate or limit the deposition under Rule 30(d)(3).

Objections that are argumentative or that suggest an answer to a witness are called "speaking objections" and are improper under Rule 30(c)(2). *See, e.g., Jadwin v. Abraham*, 2008 WL 4057921, *6-*7 (E.D. Cal. 2008); *Heriaud v. Ryder Transp. Servs.*, 2005 WL 2230199, *2-*9 (N.D. Ill. 2005); *AG Equip. Co. v. AIG Life Ins. Co.*, 2008 WL 5205192, *2-*4 (N.D. Okla. 2008); *Deville v. Givaudan Fragrances Corp.*, 2010 WL 2232718, *6-*8 (D.N.J. 2010).

As soon as Mr. Murphy was sworn for the deposition, Mr. Fleming announced that only two subjects were relevant to any inquiry and that these were (1) services provided by plaintiffs to VRI and (2) statements Mr. Murphy may have made to the media concerning the case. Mr. Fleming cautioned Google's attorney not to stray beyond those subjects or he would "vigorously assert" attorney-client privilege and work-product doctrine.

Mr. Fleming went on to make numerous, extensive, and repeated speaking objections. To give one example, Google's attorney, Mr. Nelson, asked Mr. Murphy the simple question of whether he understood that he had been designated as a fact witness in the case. The following exchanges then occurred:

> **A.** [Mr. Murphy] No, I wouldn't –
>
> **MR. FLEMING:** Object – stop. You've got to let – you've got to let me object.
>
> Object to the form of that question as calling for material that would constitute work product. It's argumentative.
>
> **BY THE WITNESS:**
>
> **A.** I'm going to refuse to answer that based on attorney-client privilege and work product doctrine.

**BY MR. NELSON [Google's attorney]:**

But do you understand why you're here today as a witness, sir?

**MR. FLEMING:** Yeah. Because he's been subpoenaed. That's why he's here.

You issued a subpoena, and we accepted service of the subpoena. That's why he's here.

**MR. FINN [a Google attorney]:** Mr. Fleming, do you have an objection, rather than just speaking and testifying for the witness?

**MR. FLEMING:** Well, these questions are ridiculous.

Why is he here? He's here pursuant to legal process. That's why he's here, because you guys issued a subpoena, and we accepted service.

That's why we're here.

**MR. FINN:** And we've asked if he understands –

**MR. FLEMING:** He's not here – sorry?

**MR. FINN:** Mr. Fleming –

**MR. FLEMING:** That's the answer.

Okay. Answer the question. Why are you here, Mr. Murphy?

**THE WITNESS:** Pursuant to a subpoena.

This set the pattern for the deposition. Google would ask a simple question, and Mr. Fleming, through extensive, argumentative speaking objections, would take the procedure off on some wild excursion, meanwhile coaching the witness on how to answer.

Mr. Fleming egregiously violated Rule 30(c)(2) by instructing Mr. Murphy not to answer a question because his answer would be a "guess." Google's counsel was pursuing a line of questions that established that Mr. Murphy's law practice had evolved from strictly serving clients to a mixture of serving clients and participating in business ventures:

**Q.** [C]ould you give me an idea from 2001 to the time this case started, what the breakdown would be in terms of time spent on client work and time spent on your own business ventures?

> **A.** I have no idea.
> **Q.** You couldn't – 50/50, 25/30?
> **A.** I would be guessing.
> **Q.** Can you give me your best guess?
> **MR. FLEMING:** Well, don't guess. Don't guess.
> **BY THE WITNESS:**
> **A.** I'm not going to guess.
> **Q.** Well, I'm asking you to give me your best guess, sir.
> **MR. FLEMING:** He's not going to give you a guess. So don't answer the question.
> Asked and answered. Let's move on.
> **MR. NELSON:** Counsel, unless it's privileged matter or work product, you cannot instruct the witness not to answer.
> **MR. FLEMING:** You know, when it becomes abusive, absolutely I can.
> You've asked the question. He's told you he'd have to guess. You asked him to guess. He said he won't guess.

In Plaintiffs' brief, Mr. Fleming argues that his objection was proper because the question called for speculation, which Fleming argues is inadmissible. The Court finds this argument strained, but that is entirely beside the point. Mr. Fleming instructed a witness not to answer a question where none of the exceptions in Rule 30(c)(2) apply. Furthermore, Mr. Fleming voiced his objection in the form of another argumentative speaking objection, which took the deposition off on another tangent. The proper action for Mr. Fleming would have been to state his objection and the grounds for it and allow the witness to answer.

### ***2. Privilege***

Most improper in Mr. Fleming's behavior was his attempt to derail the questioning by claiming an untenable and overly broad definition of attorney-client privilege and work product.

Attorney-client privilege attaches to communications made (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007).

The work-product doctrine protects evidence or testimony that contains "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B).

Both attorney-client privilege and work-product doctrine may be waived when the purportedly privileged information has been communicated to third parties. *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989). Generally, waiver of privilege with respect to one communication waives the privilege as to all other communications relating to the same subject matter. *Blanchard v. EdgeMark Financial Corp.*, 192 F.R.D. 233, 236 (N.D. Ill. 2000).

During Mr. Murphy's deposition, Google's attorney attempted to clarify a phrase in Plaintiffs' original complaint. The attorney began by attempting to establish that Mr. Murphy was the attorney responsible for filing the complaint. This turned out to be more difficult than might be expected:

> **Q.** And you are the one who filed that [the complaint] with the Court, correct, sir?
> **A.** Correct.

**Q.** And so you are the one who gathered and attached the exhibits, correct?

**MR. FLEMING:** Well, I would object to the extent that calls for the witness to reveal attorney-client privilege and attorney work-product material. I instruct you not to answer to the extent that it requires you to do so.

**BY THE WITNESS:**

**A.** I'll refuse to answer based on attorney-client work product.

**BY MR. NELSON:**

**Q.** You certainly carefully reviewed all the pages of this complaint and the exhibits before you filed it with the Court, correct, sir?

**A.** I refuse to answer –

**MR. FLEMING:** Well, hang on. You're asking this witness what he did to prepare this complaint? Is that what you're trying to find out?

. . . . .

**Q.** The question was simply, as an attorney filing the complaint, surely you reviewed all the pages of the things that you filed, correct, sir?

**MR. FLEMING:** I'm going to object and instruct the witness not to answer to the extent it would require the witness to reveal any information protected by the attorney-client privilege or work product doctrine.

**A.** I refuse based on attorney-client work product.

It appears that Google's counsel was simply trying to establish that Mr. Murphy, as counsel of record, was aware of, and stood by, the statements and exhibits he submitted to the Court. There is nothing in the question that required him to reveal privileged communications or divulge his mental impressions, conclusions, opinions, or legal theories about the case. Yet Fleming and Murphy used the privilege exception as a way of evading the question.

Mr. Murphy even refused to explain terms that he used in documents he filed with the Court. Google asked him to explain the

phrase, "custom software solutions" in the plaintiffs' answers to a set of interrogatories. After five transcript pages of evasive answers from Mr. Murphy, Google's attorney asked:

> **Q.** Your signature is on the end of this document, correct, sir?
> **A.** Correct.
> **Q.** And you can't tell me what "custom software solution" means with respect to Villageinvestments.com?
> **A.** I can't tell you what you mean when you say "custom" – if you're asking to define the term as it's used in this document, I'm going to refuse to answer based on work product and attorney-client privilege. . . .
> **Q.** . . . . . .
> I think I've told you several times . . . I'm asking you to clarify the discovery response.
> Now, in order to qualify as privileged information, it has to be confidential. This is information you have disclosed in a written discovery response.
> In light of that, you are going to claim that what you meant by the response is privileged?
> **MR. FLEMING:** Well, I'm going to object and instruct him not to answer this question.
> You are not entitled to ask the lawyer how answers to discovery were prepared.
> . . . . .
> **A.** I refuse to answer it based on attorney-client work product.

Google's attorney, however, was not asking for Mr. Murphy's legal opinions or privileged communications. He was asking about the phrase "custom software solutions" as it applied to Mr. Murphy's own company, VRI, about which Mr. Murphy was a designated fact witness. Furthermore, the phrase in question appeared in a discovery response, which is a public document. The factual bases for representations in a declaration are not privileged and must be

disclosed. *WMH Tool Group, Inc. v. Woodstock Intern., Inc.*, 2009 WL 1940024, *10 (N.D. Ill. 2009).

Mr. Fleming and/or Mr. Murphy also claimed privilege regarding:

(1) Whether Mr. Murphy had a financial interest in the outcome of the case.

(2) Whether VRI paid Android data for computer and web services.

(3) Whether Erich Specht owned another company at the time he was delivering computer services to VRI.

(4) Whether statements Mr. Murphy reportedly made in a Forbes.com interview were accurate and correctly attributed to him.

(5) Whether Specht's Android Data Corporation had been dissolved at the time the complaint was filed.

In many cases, Mr. Fleming instructed Mr. Murphy not to answer these questions "to the extent" they "reveal privileged information." Mr. Murphy then refused to answer at all. Fleming and Murphy do not appear to understand the narrowness of the attorney-client privilege. The privilege protects communications, not facts. *Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475, 479 (E.D. Tex. 2000). If Mr. Murphy knew of certain facts based on his study of non-privileged, pre-existing business documents – even if Mr. Murphy did not see the documents until after he was retained – the information would not be privileged. Or, if the

information was contained in public documents or documents that had been revealed to a third party, any privilege would be waived. Mr. Murphy would be justified in invoking privilege for not answering a relevant factual question only if answering the question would force him, directly or indirectly, to reveal a communication made to him in confidence by a client during the course of his rendering legal services to that client. *In re Intel Corp. Microprocessor Antitrust Litigation*, 2009 WL 2030967, *2 (D. Del. 2009). Even then, the privilege would be waived if the communication has been disclosed to a third party.

Mr. Murphy can have no claim of privilege regarding: his interest in the outcome of the case (which goes to his credibility as a fact witness); whether VRI paid Android Data Corporation for computer and web services (a fact question addressed to him as the head of VRI, not as an attorney); and whether statements Mr. Murphy reportedly made in a Forbes.com interview were accurate and correctly attributed to him (public statements about which any privilege has been waived).

Considering that Mr. Murphy handled the application for reinstatement of Android Data Corporation by filing public documents with the Secretary of State of Illinois in April 2009, it is absurd for him to claim privilege when asked if Android Data Corporation was dissolved at the time the lawsuit was filed. Clearly it was dissolved, or Mr. Murphy would not have been trying

to have it reinstated, and clearly Mr. Murphy *knew* it had been dissolved. And since this was all a matter of public record, any claim of privilege is frivolous. Mr. Murphy even invoked privilege in refusing to say whether Erich Specht had actually signed the reinstatement papers on the date specified in those documents.

This opinion, lengthy as it is, barely touches upon the many, many improper speaking objections made by Mr. Fleming and inappropriate invocations of privilege made by both Mr. Fleming and Mr. Murphy in the course of the 240-page deposition. The behavior of Mr. Fleming and Mr. Murphy appears deliberately evasive and calculated to thwart discovery.

**B. Actions of Google's Counsel**

Plaintiffs criticize Google for deposing Mr. Murphy at all, citing the Eighth Circuit's admonition that deposing trial counsel is a "discouraged" practice that "disrupts the adversarial system," "lowers the standards of the profession," and "adds to the already burdensome time and costs of litigation." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). The *Shelton* court went on to hold that deposition of opposing counsel should be allowed to proceed only to the extent that the party seeking discovery can show that (1) no other means exists to obtain the information; (2) the information is relevant and non-

privileged; and (3) the information is crucial to the preparation of the case. *Id.*

The Court recognizes the difficulties inherent in deposing counsel. Mr. Murphy, however, was not merely acting as counsel but also had a previous business relationship with Plaintiffs. Therefore, some limited deposition of him was in order. Plaintiffs' best argument for limiting the scope of Mr. Murphy's deposition would have been that Google could have gotten much of the information from other witnesses or sources. Plaintiffs' attorneys could have come to the Court and requested a limiting order under Rule 26(c)(1)(D) when Mr. Murphy was subpoenaed, or, alternatively, objected during the deposition that the information was available from other sources. *See Miyano Machinery USA, Inc. v. MiyanoHitec Machinery, Inc.*, 257 F.R.D. 456, 464 (N.D. Ill. 2008). Plaintiffs' attorneys did not ask for a limiting order. At the deposition, Mr. Fleming and Mr. Murphy relied largely on their questionable privilege claims, rather than objecting that Google could get the information elsewhere. Plaintiffs did not make use of the argument that Google could have gotten the information from other sources until they filed their response to Google's motion to compel, well after the contentious deposition was done.

As for Google, it would have been well-advised to heed the warnings of *Shelton* and limit its inquiries to those questions

that could not be answered by other sources. This does not necessarily mean limiting the interrogation to the two areas of inquiry that Mr. Fleming laid out when the deposition began, but questions about Android's business activity, or lack thereof, for example, would have been better addressed to Mr. Specht, who would be expected to know, than to Mr. Murphy.

Google argues that attorney-client privilege is inapplicable here because the communications were in furtherance of a fraudulent scheme. *See BDO Seidman*, 492 F.3d at 818. Google argues that it has presented a *prima facie* case that Specht committed fraud on the Patent and Trademark Office (the "PTO") and that Specht must now come forth with an explanation. *See id.* But whatever the merits of Google's fraud claims may be, Google may not abrogate the attorney-client privilege until such time as the Court has determined that Google has a factual basis to claim fraud and that Specht's explanation is unsatisfactory. *See Medallion Products, Inc. v. McAlister*, 2008 WL 4542997, *10 (N.D. Ill. 2008). At this time, the Court has not made such a determination, nor has it been asked to do so.

Plaintiffs argue that Google's behavior at the deposition was abusive and harassing. Except for the overly broad scope of Google's inquiry, the Court finds little fault with Google's attorneys. Most of the time, Mr. Nelson was patiently trying to get simple questions answered in the face of Fleming's and

Murphy’s resistance. While Mr. Nelson may have been flustered at times, the Court does not find that he behaved unprofessionally.

**C. Motion to Compel and Motion for Protective Order.**

Google has moved to compel Mr. Murphy to be available for a second deposition of no more than seven hours, with all costs and reasonable attorneys’ fees to be paid by Plaintiffs. The motion is granted in part, under the following conditions:

(1) Google may inquire into Mr. Murphy’s potential bias as a fact witness, including whether he expects to receive money depending on the outcome of this case and whether he is currently receiving fees for this lawsuit.

(2) Google may inquire into Mr. Murphy’s factual basis for public statements he made to Forbes.com, including any knowledge he had of information contradicting his statements. While Plaintiffs insist that Mr. Murphy honestly couldn’t remember the conversation with the Forbes.com reporter, Mr. Murphy still improperly refused to answer questions about his statements to the press that did not depend on whether he remembered the conversation with the reporter.

(3) Google requests that it be allowed to inquire as to the facts and circumstances of Mr. Murphy’s pre-filing investigation and preparation of the complaint, based on what Google characterizes as substantial evidence that Mr. Murphy and Plaintiffs engaged in fraud before filing the complaint. As

explained above, however, the Court has not made the necessary determination that would allow Google to pierce attorney-client privilege.

Nevertheless, the factual bases for allegations in the complaint are not privileged and must be divulged. *See Wright v. Firestone Tire & Rubber Co.*, 93 F.R.D. 491, 493 (W.D. Ky. 1982) (finding that appropriate questions are not designed to answer the question, "What did you tell your lawyer?" but rather to answer the question, "What are you telling the Court?"). Therefore, Google may inquire into the factual bases of any documents Mr. Murphy has filed with the Court in this case, as long as Google does not seek to invade attorney-client privilege.

The Court has taken into consideration that Google might be able to obtain this information elsewhere, particularly from Mr. Specht. If Plaintiffs had asked for a limiting order before the deposition, the Court might well have granted it based on *Shelton*. The Court finds, however, that, under the circumstances, Plaintiffs have waived the objection by not making it either before or during the deposition.

(4) Google may question Mr. Murphy regarding his document production and retention relating to this lawsuit and to the subpoena served on him, including whether he discarded any documents relating to the lawsuit after the suit was filed.

(5) Google may ask reasonable follow-up questions in the subject areas delineated above, but it may not question Mr. Murphy on any other matters.

Additionally, if he has not already done so, Mr. Murphy is ordered to provide a complete production of documents in his possession, custody, and control, and a privilege log for all withheld materials dating on or before April 30, 2009.

Plaintiffs' Cross-Motion for a Protective Order is denied.

**D. Sanctions**

Google's Motion for Sanctions is granted in part. Mr. Fleming must pay a court fine of $1,000 for repeated, blatant violations of Rule 30(c)(2), particularly extensive speaking objections and inappropriate instructions to the witness not to answer questions.

If Mr. Fleming should continue his inappropriate behavior in any future depositions, the Court will impose more severe penalties, to be determined according to the seriousness of the offense.

Plaintiffs' Cross-Motion for Sanctions is denied.

## III. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Google's Motion to Compel is granted in part. Mr. Murphy must be available for a second deposition of no more than seven hours, with all costs and reasonable attorneys' fees to be

paid by Plaintiffs, under the conditions described in this opinion.

2. Plaintiffs' Cross-Motion for a Protective Order is denied.

3. Google's Motion for Sanctions is granted in part. Plaintiffs' attorney Mr. Fleming is ordered to pay a court fine of $1,000.

4. Plaintiffs' Cross-Motion for Sanctions is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 6/25/2010