IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERICH SPECHT, an individual and doing business as ANDROID DATA CORPORATION, and THE ANDROID'S DUNGEON INCORPORATED, | ) ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) | |
| v. | ) ) | Civil Action No. 09-cv-2572 |
| GOOGLE INC., | ) ) | Judge Harry D. Leinenweber |
| Defendant/Counter-Plaintiff. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR DISQUALIFICATION PURSUANT TO 28 U.S.C. §455**

Plaintiffs, Erich Specht, an individual and doing business as Android Data Corporation, and The Android's Dungeon Incorporated, by their attorneys, Novack and Macey LLP and Martin J. Murphy, respectfully submit this Memorandum in Support of Their Motion for Disqualification Pursuant to 28 U.S.C. §455.

**I.**

**SUMMARY OF ARGUMENT**

The U.S. Code provides that a federal judge "shall" disqualify him or herself if their spouse has: (1) a financial interest in the subject matter in controversy; (2) a financial interest in a party to the proceeding; <u>or</u> (3) any other interest that could be substantially affected by the outcome of the proceeding. 28 U.S.C. §455(b)(4). Likewise, Section 455(b)(5)(iii) requires a judge to disqualify him or herself if the judge knows his or her spouse has "an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. §455(b)(5)(iii). These situations require disqualification regardless of whether the judge is, in fact, biased as a result of the spousal interest.

Here, Plaintiffs contend that AT&T Mobility LLC ("AT&T") is one of the parties that infringed Plaintiffs' trademark. On July 13, 2010, Plaintiffs filed a Third Amended Complaint, which named AT&T and others as additional defendants. Two days later, Plaintiffs filed their Motion for Leave to File Third Amended Complaint (the "Motion to Amend") asking, among other things, that they be granted leave to add AT&T as an additional party defendant. As required by 28 U.S.C. §455(c), the Court determined that his wife is a board member of the parent company of AT&T, and that the Court and his wife hold "many shares" of AT&T's parent company, (See Transcript of Proceedings dated July 20, 2010 (cited as "Tr. at __"), at 4, a copy of which is attached hereto as Exhibit A.) Based on this determination, the Court held that it would have to disqualify itself "immediately" if AT&T becomes a party to this action. (Tr. at 5.) However, the Court asked the parties to provide it with their views of the law as to "whether I should recuse myself now, because you have raised the specter of adding a party which would force me to recuse myself." (Tr. at 14.)

Plaintiffs respectfully believe that the Court must disqualify itself immediately, without taking any further action in this case. The Court already has a financial interest in the subject matter in controversy because the outcome of this case will likely determine the outcome of Plaintiffs' claims against AT&T -- regardless of whether AT&T is named as a party in this action or pursued in a separate proceeding. Even if the Motion to Amend were denied, and Plaintiffs had to file a separate action, AT&T will certainly argue that any rulings against Plaintiffs in this case should be given preclusive effect in favor of AT&T. For instance, if this Court decides that Plaintiffs abandoned their mark -- the primary defense raised by Defendant Google, Inc. ("Google") in this action -- then AT&T would undoubtedly try to use that determination against Plaintiffs in any parallel proceeding under the doctrine of collateral estoppel. Thus, AT&T

already has a direct and substantial interest in the outcome of this action, and the Court's rulings in this case. Accordingly, the Court's financial interest in AT&T is <u>already</u> an issue. Therefore, Plaintiffs respectfully suggest that the Court is required to immediately disqualify itself from further proceedings in this case pursuant to 28 U.S.C. §§455(b)(4) and/or (b)(5)(iii).

Furthermore, if the Court would have to disqualify itself if AT&T <u>became</u> a party, it should also disqualify itself from deciding whether it will allow AT&T <u>to become</u> a party. AT&T, like any potential defendant, has an interest in not being sued, which interest is directly implicated by the Motion to Amend. Essentially, denying the Motion to Amend would give AT&T a victory by staving off an adverse claim -- even if only for days or weeks -- and making it more time-consuming and costly for Plaintiffs to pursue their claims against AT&T. For this additional reason, the Court should disqualify itself.

## II.

## BACKGROUND

Plaintiffs have owned the federally-registered trademark "Android Data" since 2002. Plaintiffs contend that Google is liable for trademark infringement due to its use of the mark "Android" to market and describe software utilized on mobile phones and, more recently, other electronic devices. Earlier this year, AT&T began marketing and selling mobile phones and other electronic devices using the "Android" mark. Plaintiffs contend that AT&T's use of the Android mark also infringes their trademark rights.

On July 13, 2010, Plaintiffs filed their Third Amended Complaint, which included AT&T (and others) as additional Defendants. At the time, Plaintiffs believed that this filing was permitted by the Court's earlier Orders. Nevertheless, on July 15, 2010 -- before the deadline to amend pleadings and add parties expired -- Plaintiffs filed their Motion to Amend, seeking leave to file the Third Amended Complaint.

The Court held a hearing on several motions on July 20, 2010. At that hearing, the Court advised the parties as follows:

> Actually, first, what I should say, and it is not the basis for my ruling, but in full disclosure, if I did allow the amendment, and AT&T came into the case, I would have to recuse myself. My wife is a board member of the parent company, AT&T, and we have an ownership interest. Obviously, we have many shares of AT&T.
>
> *    *    *
>
> Obviously if I let them in, I would have to get out immediately.

(Tr. at 4; see also id. at 11 & 14.) The Court then asked both sides to address the question of whether the Court's financial interest in AT&T precluded it from ruling on a motion that would determine whether Plaintiff could pursue claims against AT&T in this action; or, even if the Court legally could rule, whether it should nevertheless refrain from doing so. (Tr. at 5-6.) In this Memorandum, Plaintiffs respectfully suggest that, because AT&T already has a direct interest in the outcome of this case, the Court is required to immediately disqualify itself from this case and, consequently, cannot rule on the Motion to Amend.

## III.

## ARGUMENT

The question of disqualification in this case is governed by 28 U.S.C. §455.[1] This section was completely re-written in 1974 to contain both a "general, all-inclusive" disqualification standard (in Section 455(a)), as well as "mandatory disqualification of a judge in certain specific circumstances, such as where family or financial interests are involved" (in Section 455(b)). SCA Servs., Inc. v. Morgan, 557 F.2d 110, 113 (7th Cir. 1977). The bright-line rules provide

---

[1] Because Plaintiffs are not moving under 28 U.S.C. §144, any arguments that Google makes in its filing based thereon, or on cases interpreting Section 144, are irrelevant.

certainty for certain cases, while the general standard provides a flexible approach to avoid even the appearance of partiality. Further, in revising Section 455, "Congress also intended to overrule the concept that close cases involving disqualification should be resolved on the ground that a judge 'had a duty to sit.'" Id. (citing H.R.Rep. No. 93-1453, 93d Cong. 2d Sess. 5 (1974)).

Although a federal judge may disqualify him or herself under Section 455 without waiting for a motion by a party, parties are allowed to move for disqualification under that Section. E.g., Morgan, 557 F.2d at 117. Further, because Section 455 is directed to protecting the integrity of the judiciary itself, it does not contain "any time limits within which disqualification must be sought" by a party, even if raised by motion. Id. (noting that Congress considered a time limit, but rejected it).

Turning first to mandatory disqualification, Section 455(b) lists several specific circumstances where recusal is required, including the following that are pertinent to this matter:

> (b) [A federal judge] shall also disqualify himself in the following circumstances:
>
>     \*     \*     \*
>
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
>
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
>     \*     \*     \*
>
> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

28 U.S.C. §455(b). For purposes of these sections, the term "financial interest" means "ownership of a legal or equitable interest, <u>however small</u>, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. §455(d)(4) (emphasis added). Further, these Sections are not limited to financial interests. <u>Morgan</u>, 557 F.2d at 115. Rather, Congress recognized that "non-economic interests may affect a judge's bias or prejudice." <u>Id.</u> at 115-16 (noting that judge's brother's interest in the "reputation and goodwill" of his law firm were potential disqualifying interests). Finally, where Section 455(b) applies, disqualification is mandatory; it may not be waived by the parties. 28 U.S.C. §455(e); <u>see</u> also <u>Morgan</u>, 557 F.2d at 117 ("The provisions are mandatory; they are addressed to the judge and require that he disqualify himself in certain circumstances.")

Section 455(a) also provides that a federal judge should also disqualify himself "in <u>any</u> proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a) (emphasis added).[2] "The goal of section 455(a) is to avoid even the appearance of partiality." <u>Liljeberg v. Health Serv. Acquisition Corp.</u>, 486 U.S. 847, 860 (1988). Thus, even if recusal is not mandated under any part of Section 455(b), disqualification is nevertheless required "when a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than on the merits." <u>In re United States</u>, 572 F.3d 301, 308 (7th Cir. 2009) (citations omitted).

**A.　The Court Is Disqualified By Sections 455(b)(4) and 455(b)(5)(iii)**

As required by 28 U.S.C. §455(c), this Court has determined that he and his spouse have financial and other interests in AT&T. Specifically, the Court disclosed that he has "an ownership interest" in AT&T's parent entity. (Tr. at 4.) The Court further disclosed that he and

---

[2] Section 455(b)(5)(i) also provides that a federal judge must disqualify himself if he or his spouse is "an officer, director, or trustee of a party." Because AT&T is not yet a party to this case, this section is not yet applicable.

his wife "have many shares of AT&T." (Id.) Thus, the Court has a "financial interest" in the outcome of Plaintiffs' claims against AT&T, as defined in Section 455(b)(4). 28 U.S.C. § 455(b)(4). Additionally, the Court disclosed that his wife "is a board member of the parent company, AT&T." (Tr. at 4.) Thus, the Court's spouse has an additional "interest that could be substantially affected" by the outcome of Plaintiffs' claims against AT&T, as those terms are used in Section 455(b)(4) and 455(b)(5)(iii).

This Court already found that it would need to recuse itself if AT&T was a party to this action. (Tr. at 4, 5 & 6.) Although the Court did not specify the basis for its recusal, presumably it would come under Section 455(b)(4) and/or Section 455(b)(5)(iii). However, disqualification under these Sections is required even if the disqualifying interest does not relate to a present party in the case. See, e.g., In re Aetna Casualty & Surety Co., 919 F.2d 1136, 1143 (6th Cir. 1990) (interest in related litigation where rulings in the case *sub judice* could have preclusive effect required disqualification); Gordon v. Reliant Energy, Inc., 141 F.Supp.2d 1041, 1043 (S.D. Cal. 2001) (same; and an interest in putative member of uncertified class required disqualification) (citing Tramonte v. Chrysler Corp., 136 F.3d 1025 (5th Cir. 1998)). Rather, Section 455(b)(4) identifies three separate types of disqualifying interests: (1) a "financial interest in the subject matter in controversy"; (2) a financial interest "in a party to the proceeding," or (3) "any other interest that could be substantially affected by the outcome of the proceeding". 28 U.S.C. § 455(b)(4). Similarly, Section 455(b)(5)(iii) defines the disqualifying interest without any reference to parties; it includes any "interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(iii). In sum, the issue of disqualification does not turn solely on whether AT&T is a party. Instead, the Court must disqualify itself if it or its spouse has any financial interest in the subject matter of the

7

controversy, or any other interest that could be substantially affected by the outcome of this proceeding.

Plaintiffs are actively pursuing claims against AT&T for infringement of Plaintiffs' "Android Data" mark. (See Third Amended Complaint (Docket 216), ¶¶ 76-77, 82, 91-98121-137.) Even if the Court ultimately denies the Motion to Amend, the claims against AT&T will proceed in a parallel action. (Tr. at 5-6.) Plaintiffs' claims against AT&T rest largely on the same facts and circumstances as the claims Plaintiffs are asserting in this case against Google. More importantly, the defenses raised by Google in this action -- particularly, the defense of abandonment -- are equally applicable to Plaintiffs' claims against AT&T. Indeed, "Google intends to file a motion for summary judgment in short order, on the basis that Plaintiffs possess no trademark rights whatsoever." (See Google's Response to Plaintiffs' Motion for Leave to File Their Third Amended Complaint and Memorandum in Support of Its Motion to Strike Same (Docket No. 222), p. 12.)

Due to the relatedness of Plaintiffs' claims against Google and AT&T, it is extremely likely that any ruling the Court enters in this case that is adverse to Plaintiffs could be asserted by AT&T as a collateral estoppel against Plaintiffs. Or, at the very least, such rulings would be persuasive precedent in any parallel action. For instance, if Google were to prevail in this Court on its abandonment defense (we do not think it should), AT&T would certainly argue that this determination is binding on Plaintiffs under the doctrine of collateral estoppel in any case against AT&T for infringement of the same mark. Thus, by virtue of its ownership of AT&T's parent company, the Court has a "financial interest in the subject matter of this controversy" because the resolution of the key issues in this case will directly impact the success or failure of Plaintiffs' claims against AT&T. For the same reason, Plaintiffs' claims against AT&T will be

"substantially affected by the outcome of this proceeding" -- and the Court's interests in AT&T will be substantially affected thereby. This is true regardless of whether AT&T is made a direct party to this action.

A close parallel in the case law is Aetna. Aetna, 919 F.2d at 1136. There, seven actions were filed by the Federal Deposit Insurance Corporation ("FDIC") against Aetna to recover money under a "Bankers Blanket Bond, Standard Form No. 24," which Aetna issued for each of the failed banks. Id. at 1138. The subject judge's daughter worked at a law firm involved in four of the seven suits. Id. at 1137-38. When the seven suits were consolidated for trial, the judge recused himself. Id. But, when the suits were later severed, the judge took over the three in which his daughter's firm had not appeared. Id. The Sixth Circuit issued a writ of mandamus, compelling the judge to again recuse himself from those three cases. Id. at 1146.

The Aetna court held that the judge should be disqualified from all seven cases, even though his disqualifying interest related directly only to four. Id. at 1143-44. The court reasoned as follows:

> A decision on the merits of any important issue in any of the seven cases . . . could or might constitute the law of the case in all of them, or involve collateral estoppel, or might be highly persuasive as a precedent. Thus, even if [his daughter's] firm were not counsel of record for FDIC in all of the seven cases but only some of them, and was not of counsel in the three cases reassigned by Judge Hall to himself, we would find that the circumstances would indicate to a reasonable party, such as Aetna, that his partiality might be implicated, and/or that §455 would apply.

Id. at 1143. The court further noted that the judge's daughter's association with a firm on some of the related cases "involves appearance of partiality [under Section 455(a)] and also conflict of interest principles under §455(b)(4) and (b)(5)(ii)," even though she was not associated with the firms handling the cases that were actually before the judge. Id. at 1144.

9

Moreover, because the Court must recuse itself if AT&T were made a party, it likewise should recuse itself form deciding whether AT&T may be made a party to the case. Acting on the Motion to Amend will directly affect AT&T's interests. If the Court denies the Motion to Amend, then AT&T will benefit because requiring Plaintiffs to initiate and pursue a separate action will make the prosecution of those claims against AT&T more difficult, time-consuming and expensive for Plaintiffs. Denying the Motion to Amend would also give AT&T an advantage over Plaintiffs in any parallel litigation; AT&T would argue that it should get the benefit of any rulings in this case <u>against</u> Plaintiffs as a result of the doctrine of collateral estoppel, but would conversely argue that it cannot be bound by any decisions in Plaintiffs' favor. For this additional reason, the ruling on the Motion to Amend directly implicates the Court's and its spouse's interests in AT&T under Section 455(b)(4) and 455(b)(5)(iii).

In sum, no matter how the Motion to Amend is decided, the Court still has a disqualifying interest <u>in this case</u> because: (1) the Motion to Amend itself directly implicates the interests of AT&T; and (2) "[a] decision on the merits of any important issue" in this case could be "collateral estoppel, or might be highly persuasive as a precedent," in any other case against AT&T. <u>Id.</u> at 1043; <u>see also</u> <u>Gordon</u>, 141 F.Supp.2d at 1043 (finding disqualification appropriate if rulings in the case could be collateral estoppel in another case where judge had a disqualifying interest). Accordingly, the Court should immediately disqualify itself pursuant to Section 455(b)(4) and 455(b)(5)(iii).

### B. <u>Alternatively, The Court Must Disqualify Itself Pursuant to Section 455(a)</u>

For the reasons discussed above, the Court is required to disqualify itself from further action in this case pursuant to Section 455(b)(4) and 455(b)(5)(iii). However, even if the Court determines that it is not disqualified pursuant to those provisions, the Court should still disqualify itself pursuant to Section 455(a).

"The goal of section 455(a) is to avoid even the appearance of partiality." Liljeberg, 486 U.S. at 860. As such, "[s]cienter is not an element of a violation of §455(a)." Id. at 859. "If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation, then an appearance of partiality is created . . . ." Id. at 860. The question to be answered is "whether a reasonable, well-informed observer could question the Judge's impartiality. In re United States, 572 F.3d at 310.

Here, a reasonable, well-informed person would know that Plaintiffs are pursuing claims against AT&T (either in this case or in a separate case). That observer would also know that AT&T would benefit from the Court's denial of the Motion to Amend because it would make it more costly and time-consuming for Plaintiffs to pursue their claims for money damages against AT&T. The well-informed observer would further know that, if the Motion to Amend is denied, any rulings made by the Court in this case that are adverse to Plaintiffs could be used by AT&T to its benefit in any separate case filed against it by Plaintiffs. Conversely, the observer would know that rulings in Plaintiffs favor in this case could not be used against AT&T -- i.e., AT&T would get a second bite at the apple to re-litigate any issues Plaintiffs wins in this case.

In these circumstances, "[a] reasonable, well-informed observer well may" conclude that any decision in this case that is adverse to Plaintiffs -- and beneficial to AT&T -- was not made by the Court "acting as a neutral arbiter," but was the result of partiality in favor of AT&T. In re United States, 572 F.3d at 311. So, even if the Court concludes that disqualification is not mandated under Sections 455(b)(4) and 455(b)(5)(iii), the Court should still disqualify itself under Section 455(a) to avoid even the appearance of partiality.[3]

---

[3] If the Court denies the Motion to Disqualify, Plaintiffs must immediately seek a writ of mandamus so that they do not waive their right to appeal the issue of disqualification under Section 455(a). E.g., In re United States, 572 F.3d 301, 307 (7th Cir. 2009).

11

**C.     In Any Event, the Court Should Not Rule on the Motion to Amend**

Once a basis for disqualification arises, the Court should not issue any further orders in a case except those necessary to recuse itself and transfer the case. See, e.g., In re United States, 572 F.3d at 312 (holding "all orders entered by the Judge after the motion for recusal was filed must be vacated.")  As described above, because Plaintiffs are pursing claims against AT&T (preferably, in this case), the Court already has a disqualifying interest under Section 455(b)(4) and (b)(5)(iii) and must disqualify itself pursuant to those Sections or, alternatively, under Section 455(a).  As such, the Court is not permitted to make any further decisions in this matter, including a decision on the Motion to Amend.

Furthermore, the Motion to Amend itself relates directly to the interests of AT&T.  As noted above, the ruling will decide where, when and how the Plaintiffs' claims against AT&T are decided.  If the Court denies the Motion to Amend, AT&T will benefit; it would be harder and more expensive for Plaintiffs to pursue their claims against AT&T, and AT&T would gain a strategic advantage over Plaintiffs because of the doctrine of collateral estoppel.  For this additional reason, the ruling on the Motion to Amend directly implicates the Court's and its spouse's interests in AT&T under Section 455(b)(4) and 455(b)(5)(iii).  As such, the Court should disqualify itself immediately, and leave the Motion to Amend to the successor judge.

**IV.**

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Disqualify, enter an Order to transfer this case to another Judge of the District Court, and award Plaintiffs any such other and further relief as is appropriate.

Respectfully submitted,

ERICH SPECHT, individually and doing business as ANDROID DATA CORPORATION, and THE ANDROID'S DUNGEON INCORPORATED

By: /s/ P. Andrew Fleming
      One of Their Attorneys

P. Andrew Fleming
John F. Shonkwiler
John B. Haarlow, Jr.
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Doc. #374085v2

Martin Murphy
2811 RFD
Long Grove, IL 60047
(312) 933-3200

## **CERTIFICATE OF SERVICE**

P. Andrew Fleming, an attorney, certifies that he caused copies of the foregoing Memorandum in Support of Plaintiffs' Motion to Disqualify Pursuant to 28 U.S.C. §455 to be served by electronically filing the document with the Clerk of Court using the ECF system this 23rd day of July, 2010.

                                                            /s/ P. Andrew Fleming