**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ERICH SPECHT**, *et al.*, | |
| Plaintiffs, | Case No. 09 C 2572 |
| v. | |
| **GOOGLE, INC.**, | Hon. Harry D. Leinenweber |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is (1) the Motion for Attorneys' Fees and Sanctions from Defendant Google Inc. (hereinafter, "Google"), (2) a Motion to Strike Google's Sanctions Motion from Plaintiffs Erich Specht, Android Data Corporation, and The Android's Dungeon, Inc. (hereinafter, the "Plaintiffs"), and (3) Plaintiffs' and attorney Martin Murphy's Motion to Strike Google's Sanctions Motion. For the reasons stated herein, all three Motions are denied.

## I. INTRODUCTION

The Court previously detailed the facts of this case in its Summary Judgment Memorandum Opinion and Order, so these need not be repeated here. In short, this case involved Plaintiffs' claim that Google's unregistered ANDROID mark infringed its registered ANDROID DATA mark. On December 17, 2010, the Court ruled that Plaintiffs had abandoned their ANDROID DATA mark, and granted summary judgment in favor of Google on all counts of Plaintiffs' Second Amended

Complaint, and Counts I and III of Google's Counterclaim. After the Court denied Plaintiffs' Motion for Reconsideration, Google dismissed without prejudice the remaining counts of its Counterclaim. The Court filed judgment on February 24, 2011, but entered judgment more than two weeks later on March 11, 2011.

On March 22, Google filed its attorneys' fees and sanctions motion. Google moves for attorneys' fees pursuant to 15 U.S.C. § 1117(a), which allows the prevailing party in an "exceptional" trademark case to receive these fees. It also moves for 28 U.S.C. § 1927 sanctions against Plaintiffs' attorneys Martin Murphy ("Murphy") and P. Andrew Fleming ("Fleming"). Plaintiffs first filed two motions to strike Google's motion — one addressing the Lanham Act claim, and the other, which is joined by Murphy, addressing the § 1927 claim. Plaintiffs and Murphy have also filed substantive responses to Google's motion. Fleming and his law firm, Novack and Macey, have also responded to the § 1927 segment of Google's motion.

## II. <u>ANALYSIS</u>

### A. **Plaintiffs' and Martin Murphy's Motions to Strike**

#### *1. 15 U.S.C. § 1117(a) Attorneys' Fees*

Plaintiffs filed two motions to strike on the same day. One motion addresses the Lanham Act attorneys' fees set forth in § 1117(a) that Google seeks. Here, Plaintiffs first argue that Federal Rule of Civil Procedure 59(e), not Rule 54(d)(2), governs

§ 1117(a). According to Plaintiffs' rationale, Google's motion for fees is actually a motion to amend or alter this Court's judgment, and as such Google must "demonstrate a manifest error of law or present newly discovered evidence" for the court to amend its judgment. *Heyde v. Pittenger*, 633 F.3d 512, 521 (7th Cir. 2011). Plaintiffs base this argument on the Seventh Circuit's decision in *Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652 (7th Cir. 1981), which held that the Lanham Act's attorneys' fees provision is tied to the judgment, and therefore governed by Rule 59(e). *Id*. at 660. After *Hairline Creations*, however, the Supreme Court decided *White v. New Hampshire Department of Employment Security*, 455 U.S. 445 (1982). In addressing a post judgment attorneys' fees request under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, the Court held that "federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits." *Id*. at 451 (internal citation omitted). The Court found that a § 1988 attorneys' fees request presented "legal issues collateral to the main cause of action." *Id.*

Since *White*, the Seventh Circuit has walked a tightrope when confronted with the viability of *Hairline Creations*. Its analysis in *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 827–28 (7th Cir. 1984), illustrates this feat of finding narrow grounds to

differentiate Lanham Act attorneys' fees with other statutory attorneys' fees provisions:

> *Hairline Creations* is an outlier. Most cases, under most attorney-fee statutes, follow the Rule 54(d) route. . . . There is a practical reason for this: Especially in substantial litigation, where large fees may reasonably be requested, it is unrealistic to expect the prevailing party's lawyer to be able to get a carefully formulated fee request in within the Rule 59(e) deadline of ten days — a deadline that cannot be extended. The Rule 59(e) route would trap the unwary in some cases and in others cause half-baked fee requests to be submitted that would have to be amended later. If *Hairline Creations* . . . is still good law (a question we need not decide here), it is so only because to allow attorney's fees to be awarded in "exceptional" cases may be thought to imply that such fees are a sanction in the nature of punitive damages; and of course a plaintiff disappointed with a judgment that did not include an award of punitive damages would have to get the judgment amended if he wanted them added. The analogy is imperfect, because 15 U.S.C. § 1117 allows a prevailing defendant as well as a prevailing plaintiff to obtain an award of attorney's fees "in exceptional cases" and a defendant could never get an award of punitive damages.

*Id*. at 827–28; *see also Exch. Nat. Bank of Chicago v. Daniels*, 763 F.2d 286, 294 (7th Cir. 1985)("It is enough to say that *Hairline* states a peculiarity of patent and trademark litigation. We may reexamine *Hairline* if the occasion arises.").

*Hairline Creations* has not been reexamined since 1985, so Plaintiffs are correct in that the Seventh Circuit has not expressly overruled its holding that Rule 59(e) applies to § 1117(a). Rather, the court has disregarded this issue since 1985

- 4 -

when addressing Lanham Act attorneys' fees. The fees motions in many of these cases have emerged through procedures that comply with Rule 54(d)(2), not Rule 59(e). By not barring these motions on procedural grounds, the Seventh Circuit, by implication, no longer appears to consider *Hairline Creations* good law.

For example, the Seventh Circuit affirmed the award of § 1117(a) attorneys' fees in *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 629 (7th Cir. 2001). In this case, Judge George W. Lindberg entered judgment on March 31, 1998, after granting summary judgment in favor of the defendant. *S Indus.*, N.D. Ill. No. 96-C-3524, ECF No. 44. The defendant filed its motion for attorneys' fees on April 13, 1998, which was after the 10 days allowed at the time by Rule 59(e) to file such a motion. *Id*. at ECF No. 46. The defendant had filed the motion in compliance with Rule 54(d)(2). Nevertheless, despite the existence of *Hairline Creations*, the district court ruled on the motion, and the Seventh Circuit affirmed the decision without addressing whether Rule 59(e) or Rule 54(d)(2) applied.

A similar procedure was followed in *Door Systems Inc. v. Pro-Line Door Systems, Inc.*, 126 F.3d 1028 (7th Cir. 1997), when the Seventh Circuit reversed Magistrate Judge Arlander Keys' decision not to award the prevailing plaintiff § 1117(a) attorneys' fees. Judge Keys had entered judgment on October 30, 1995. *Door Sys., Inc. v. Overhead Door Sys., et al.*, N.D. Ill. No. 91-C-8050,

ECF No. 101. The defendant filed its petition for attorneys' fees and costs on November 17, which, again, was after the 10-day period that existed in 1995 to file a Rule 59(e) motion. The Seventh Circuit allowed the petition to proceed, presumably finding that it complied with Rule 54(d)(2).

Finally, the Seventh Circuit in *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958 (7th Cir. 2010), affirmed the Southern District of Indiana court's award of Lanham Act attorneys' fees. District Court Judge Sarah Evans Barker entered judgment in favor of the defendant on May 15, 2009. *Nightingale Home Healthcare,* S.D. Ind. No. 06-CV-1435, ECF No. 138. The defendant's fees motion did not seek to amend the judgment pursuant to Rule 59(e), *id*. at ECF No. 140, which did not make the Seventh Circuit pause in affirming the fees award.

While *Hairline Creations* may technically still be viable, it appears relegated to the back corner of a locked closet, with the Seventh Circuit disregarding it. Accordingly, this Court finds that Rule 54(d)(2), not Rule 59(e), applies to a motion for attorneys' fees under § 1117(a).

Plaintiffs next argue that even under Rule 54(d)(2), Google's motion was not timely. They are wrong. Plaintiffs for some reason insist that judgment was entered in this case on December 17, 2010 — the date when the Court filed its summary judgment ruling. They do so even after being presented with case law clearly holding that

the date of judgment is the date on the docket on which judgment was entered. *See Ogborn v. United Food & Commercial Workers Union, Local No. 881*, 305 F.3d 763, 769-70 (7th Cir. 2002). In this case, the Court filed its judgment on February 24, 2011, but entered judgment on March 11, 2011. The March 11 date controls. Plaintiffs do not — and cannot — cite any authority holding that the date on which the Court granted summary judgment controls the filing of a Rule 54(d)(2) motion. Google filed its motion on March 22, 2011 — well within the allowable time frame. Therefore, the Court denies Plaintiffs' Motion to Strike Google's motion for Lanham Act attorneys' fees.

### *2. 28 U.S.C. § 1927 Attorneys' Fees*

Plaintiffs' second Motion to Strike, which Murphy joined, addresses Google's motion for 28 U.S.C. § 1927 attorneys' fees. Murphy sets forth a number of baseless reasons why the Court should strike Google's motion. First, Murphy argues that, pursuant to *Nightingale*, § 1927 attorneys' fees are improper in Lanham Act cases because § 1117(a) is the exclusive mechanism for such fees. This is an incorrect reading of this case. Murphy also misreads Google's motion. Google moves for § 1927 sanctions from counsel, not from Plaintiffs. Murphy still needlessly argues that Google moves for these sanctions against Plaintiffs. In addition, Murphy argues that the motion should be stricken because it does not specify the amounts Google seeks under § 1927. He does not cite

any authority that Google is required to do so because, at this point, Google need not provide the Court or Murphy with an accounting of the fees it seeks. Finally, Murphy argues the merits of Google's motion and claims that Google has filed it for improper purposes. Not one of these arguments provides grounds to strike the § 1927 motion. Accordingly, the second motion to strike is also denied.

### B. Google's Motion for Lanham Act Attorneys' Fees

Moving to the merits of Google's motion, the Lanham Act provides that the court has discretion in an "exceptional case" to award the prevailing party reasonable attorneys' fees. 15 U.S.C. § 1117(a). The key issue in this analysis is what constitutes an "exceptional case." The Seventh Circuit recently addressed this question, and held that "a case under the Lanham Act is 'exceptional' . . . if the losing party was the plaintiff and was guilty of abuse of process in suing." *Nightingale Home Healthcare*, 626 F.3d at 963–64. The court addressed the fact that abuse of process is a tort, and a motion for attorneys' fees is not a separate suit. To minimize the proceedings in a § 1117(a) motion so that the tail does not wag the dog, the court wrote:

> [A]n elaborate inquiry into the state of mind of the party from whom reimbursement of attorneys' fees is sought should be avoided. It should be enough to justify the award if the party seeking it can show that his opponent's claim or defense was objectively unreasonable — was a claim or defense that a rational litigant would pursue only because it

> would impose disproportionate costs on his opponent — in other words only because it was extortionate in character if not necessarily in provable intention.

*Id.* at 965.

In focusing on the claims that Plaintiffs made against Google in determining if this is an exceptional case, the Court finds that, overall, this is not an exceptional case. When they filed their Complaint, Plaintiffs had an active and valid registration to the ANDROID DATA mark. They learned that the United States Patent and Trademark Office (the "USPTO") had denied Google's registration of the ANDROID mark on likelihood of confusion grounds. They possessed reasonable grounds to file a likelihood-of-confusion suit against Google.

Further, whether Plaintiffs had abandoned the ANDROID DATA mark was not a cut-and-dry issue. In ruling on summary judgment, the Court had before it evidence that Plaintiffs had used the ANDROID DATA mark in some manner from its inception through April 2005, as well as resumed using the mark in late 2007. A dispositive issue that emerged was whether Plaintiffs' use of the ANDROID DATA mark on what was essentially a "ghost" web site for their dormant business was a use in commerce as defined in 15 U.S.C. § 1127. The Court ruled that it was not, and granted summary judgment in favor of Google on the abandonment issue. The Court would not expect Plaintiffs to refrain from pursuing their

trademark infringement claims against Google on the basis of this narrow use-in-commerce issue.

Google also alleges that Plaintiffs resurrected their use of the ANDROID DATA mark simply for purposes of this lawsuit, and engaged in fraud before the USPTO in renewing their mark. The Court, however, is not in a position to rule on these issues, and will not engage in what would be essentially separate cases on to themselves to determine if these provide grounds to sanction Plaintiffs.

Google has identified three primary litigation tactics by Plaintiffs — in addition to various other smaller issues — that it claims invoke § 1117(a): (1) moving for a temporary restraining order and preliminary injunction to enjoin Google from using the ANDROID mark; (2) naming 48 defendants in their Complaint and First Amended Complaint; and (3) inserting allegations of counterfeiting in their Complaint and First Amended Complaint.

The Court agrees that an objectively reasonable attorney who conducted the proper due diligence into the law and facts of this case would not have pursued these tactics. Further, the Court does not accept Plaintiffs' explanation that their attorney Murphy is not a specialist in the area of trademark litigation, and therefore the counterfeit claim emerged from a "literal reading" of the USPTO's ruling to deny registration of Google's ANDROID mark. A counterfeit mark is defined in the Lanham Act as "a counterfeit of

a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(I). Absolutely no evidence exists that Google was using a counterfeit of the ANDROID DATA mark in connection with the sale or distribution of its Android mobile device operating system. Plaintiffs may have included this allegation in their pleadings because they were enticed by the treble and statutory damages associated with it. *See id*. at § 1117(b)-(c).

Understanding the elements of a trademark counterfeit cause of action does not require being a specialist in trademark law. It requires only a reasonable statutory reading. Plaintiffs did not do this, and in their response to Google's motion, seem to admit that Murphy violated Rule 11(b) with this counterfeit charge. Pls.' Resp. to Google's Mot. for Attorneys' Fees at 8-9, May 19, 2011 ("Specht's attorney is, in the words of Judge Easterbrook, a generalist and not a specialist in the area of trademark litigation. Plaintiffs applied the PTO's finding, *i.e.,* that the marks are 'identical,' literally to the counterfeiting statute and reasoned that the contemporaneous use of an 'identical' mark belonging to someone else is a counterfeit."). Perhaps Murphy should take heed of his own admission that he is not well-versed in

trademark law and make the appropriate decisions in the future when presented with the opportunity to represent a client in a trademark case.

However, while there were significant deficiencies in Plaintiffs' pleadings and in their effort to enjoin Google's use of its ANDROID mark, these do not move a case which at its core had a colorable claim of trademark infringement into an exceptional case that warrants § 1117(a) attorneys' fees. Google's allegations also appear to seek Rule 11 sanctions. Google, however, does not expressly seek Rule 11 sanctions, nor has it complied with the procedures required for these. The Court has the inherent power to invoke sanctions. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1058–59 (7th Cir. 1998). Such sanctions, however, "must be invoked with the utmost caution." *Id.* at 1059. Here, the Court will not invoke either § 1117(a) or Rule 11 sanctions against Plaintiffs.

**C. Google's Motion for 28 U.S.C. § 1927 Sanctions**

Google also seeks sanctions against Plaintiffs' attorneys Murphy and Fleming pursuant to 28 U.S.C. § 1927. Under § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Seventh Circuit has established standards to impose such sanctions:

> [A] court has discretion to impose § 1927 sanctions when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice; pursued a claim that is without plausible legal or factual basis and lacking in justification; or pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound.

*Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006)(quotations and internal citations omitted). Counsel must act unreasonably and vexatiously to warrant sanctions. *See Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992). Vexatious conduct requires either subjective or objective bad faith. *See id*. The moving party must show subjective bad faith "only if the conduct under consideration had an objectively colorable basis." *Dal Pozzo v. Basic Mach. Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006). Objective bad faith requires only reckless indifference to the law, not malice or ill will. *See id.*

The Court first addresses Google's allegations against Fleming, which contend that he was responsible for sanctionable conduct in signing on to the case and then proceeding to prosecute it during discovery and through summary judgment. As an initial matter, Fleming is not subject to sanctions for filing his appearance, as Plaintiffs' claims of trademark infringement had some merit. Plus, simply filing an appearance does not multiply the proceedings. With Fleming on board, this case became more contentious. For example, Fleming should have been more

forthcoming in responding to Google's interrogatories and document requests. The fact that Google had to file three motions to compel to receive the discovery it rightfully sought shows the extent of the gamesmanship that transpired during discovery. However, rather than illustrating sanctionable conduct, Fleming's responses to Google's discovery requests — as well as the other allegations of sanctionable conduct that Google alleges against Fleming — illustrate aggressive litigation behavior that was unreasonable but not vexatious. Discovery in this case was fraught with pitfalls. The case, however, did not take a slow boat to summary judgment. Rather, it progressed at a reasonably stable pace, coming to a resolution in about 22 months. Accordingly, Fleming is not liable for § 1927 sanctions.

On the other hand, Murphy's conduct during the course of this litigation comes closer to warranting sanctions. The Court, however, exercises its discretion and does not sanction Murphy under § 1927. The counterfeiting claim discussed above is just one example of Murphy's unreasonable conduct. Google, however, does not show that this baseless maneuver, or Murphy adding the multiple defendants from the Open Handset Alliance (the "OHA") and seeking a temporary restraining order and preliminary injunction, multiplied the proceedings significantly. Despite Murphy's tactics, Google still had to defend itself against the underlying infringement charge. For example, Google represented all 48

defendants when it moved to dismiss the First Amended Complaint. ECF No. 73, June 22, 2009. It did not file a separate motion that addressed the improperly joined OHA defendants. While Google's briefing increased by addressing the OHA defendants, its work was not multiplied excessively. The Court dismissed the claims against all defendants except Google, which alleviated the need for Google to further defend the claims against the OHA defendants. ECF No. 112, Aug. 3, 2009. Likewise, Murphy's inclusion of a counterfeiting charge was so absurd and frivolous that it warranted little work by Google, and was also easily dismissed. *See id*.

Murphy's motion seeking injunctive relief presents a different scenario, as Google had to expend resources at the onset of this case to fend off this motion. Murphy's motion was not a model in artful pleading, as, for example, it failed to set forth clearly the irreparable harm that Plaintiffs would suffer without injunctive relief. Such a motion, however, is not subject to heightened Rule 9(b) pleading standards. *See United States ex rel. Walner v. NorthShore Univ. Healthsystem*, 660 F.Supp.2d 891, 899 (N.D. Ill. 2009). While Murphy eventually withdrew the overbroad motion for injunctive relief, he had at least some basis for filing the motion — he claims that he merely sought the relief provided for in § 1116 of the Lanham Act once he learned of Google's use of the ANDROID mark in commerce. Such relief is standard in trademark infringement cases. *See* J. Thomas McCarthy,

*McCarthy on Trademarks and Unfair Competition* § 30:1 (4th ed. 2011). This motion, just like the other actions that Google alleges subject Murphy to § 1927 sanctions, was unreasonable but not vexatious. Therefore, Murphy is not subject to such sanctions.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs' Motions to Strike are denied. Google's Motion for Attorneys' Fees and Sanctions is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge  
United States District Court

**DATE:** 7/27/2011